**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION**

| | | |
|---|---|---|
| JOHNNY McCLURG, | ) | |
| on Behalf of Himself and All | ) | |
| Others Similarly-Situated, | ) | **PROPOSED COLLECTIVE ACTION** |
| | ) | **UNDER FLSA AND CLASS ACTION** |
| *Plaintiff,* | ) | **UNDER KWHA** |
| | ) | |
| | ) | CASE NO.   4:20-cv-201-JHM |
| v. | ) | |
| | ) | |
| DALLAS JONES ENTERPRISES | ) | **JURY DEMANDED** |
| INC, d/b/a CLAY'S TRUCKING | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**

Comes Plaintiff Johnny McClurg, by and through counsel, and, for his Collective and Class Action Complaint against Defendant Dallas Jones Enterprises, Inc. d/b/a Clay's Trucking, states as follows:

**Summary of the Action**

1.      Plaintiff was employed by Defendant as a truck driver.  Plaintiff worked overtime in many workweeks but was not paid overtime compensation for his overtime work.  Instead, Defendant would pay Plaintiff at the same rate for work performed beyond forty hours per week as Defendant paid Plaintiff for work during the first forty hours of each work week.  There is a Motor Carrier Act exemption to the Fair Labor Standards Act ("FLSA") for drivers of certain vehicles weighing more than ten thousand pounds (29 U.S.C. § 213(b)(1)), and the vehicle Plaintiff drove weighed more than ten thousand pounds.  However, the exemption did not apply to Plaintiff, and Plaintiff was therefore entitled to overtime pay, because Plaintiff did not drive his truck in "interstate commerce" as defined under the Motor Carrier Act.  Like Plaintiff, other workers

similarly performed work for Defendant that was not exempt under the FLSA (including not being exempt under the Motor Carrier Act exemption to the FLSA) and were similarly not paid overtime compensation as required by the FLSA for their overtime work.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the claims of Plaintiff and those similarly situated pursuant to 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b).

3.     This Court has and should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims under the Kentucky Wages and Hours Act ("KWHA") because they are so related to Plaintiff's claims under the FLSA that they form part of the same case or controversy and arise from the same set of operative facts as Plaintiff's claims under the FLSA.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant conducted business within the District and, from its principal place of business in Muhlenberg County, Kentucky (within the District of this Court), employed Plaintiff (who resides in Hopkins County, Kentucky, within the District of this Court) and other similarly-situated employees who worked within the District of this Court and, specifically, employed truck drivers delivering coal from a coal mine in Ohio County, Kentucky (within the District of this Court) to a power plant located in Ohio County, Kentucky (within the District of this Court).

## PARTIES

5.      Plaintiff Johnny McClurg is a resident of Hopkins County, Kentucky.

6.     During the three (3) year period prior to the filing of Plaintiff's initial Complaint in this matter, Plaintiff was employed by Defendant as a truck driver performing work that was not exempt from the requirements of the FLSA, and during the five (5) year period prior to the filing

of the initial Complaint in this matter, Plaintiff was employed by Defendant as a truck driver performing work that was not exempt from the requirements of the KWHA.

7.     Pursuant to 29 U.S.C. § 216(b), Plaintiff McClurg has consented in writing to serving as a Plaintiff in this action, and Plaintiff's consent was attached to Plaintiff's initial Complaint filed in this action (Ct. Doc. 1) as Exhibit 1.

8.     Defendant Dallas Jones Enterprises, Inc. is a Kentucky for-profit corporation which operates under the assumed name of Clay's Trucking, has a principal place of business at 3326 Merle Travis Highway, Beechmont, KY, and may be served by service of process on its registered agent, Dallas Jones, at 3326 Merle Travis Highway, Beechmont, KY 42323.

9.     The FLSA contains a different definition of "interstate commerce" than that contained in the MCA, and applies that definition differently.  *See* American Bar Association, Section of Labor and Employment, Fair Labor Standards Legislation Committee, Ch. 6.III.A.3.c (i) . ("[t]he definition of 'interstate or foreign commerce' under the MCA is not identical to the definition of 'interstate or foreign commerce' ending under the FLSA….   Consequently, transportation by motor vehicle that is in 'interstate commerce' under the FLSA may not constitute transportation over which the DOL has the power to exercise control and upon which the Section 13(b)(1) exemption is based").

10.     Indeed, 29 C.F.R. § 782.7 provides that:

section 13(b)(1) of the Fair Labor Standards Act does not exempt an employee of a carrier from the act's overtime provisions unless it appears, among other things, that his activities as a driver, driver's helper, loader, or mechanic directly affect the safety of operation of motor vehicles in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act. What constitutes such transportation in interstate or foreign commerce, sufficient to bring such an employee within the regulatory power of the Secretary of Transportation under section 204 of that act, is determined by definitions contained in the Motor Carrier Act itself. These definitions are, however, not identical with the definitions in the Fair Labor Standards Act which determine whether an employee is within the

general coverage of the wage and hours provisions as an employee "engaged in (interstate or foreign) commerce." For this reason, the interstate commerce requirements of the section 13(b)(1) exemption are not necessarily met by establishing that an employee is "engaged in commerce" within the meaning of the Fair Labor Standards Act when performing activities as a driver, driver's helper, loader, or mechanic, where these activities are sufficient in other respects to bring him within the exemption.

11.     Accordingly, at a given times, a truck driver employee of an employer may be covered by the FLSA, but not covered by the MCA exemption because the employee's work driving trucks is solely intrastate; this is true even if other drivers of the same employer perform interstate work and are covered by the exemption. *See, e.g.*, *Chaohui Tang v. Wing Keung Enters., Inc.*, 210 F. Supp. 3d 376 (E.D.N.Y. 2016) (finding that, even though other drivers of defendant-employer with out-of-New-York routes were exempt under MCA exemption to FLSA, certain truck drivers with solely-New-York routes were not covered by MCA exemption where "drivers… were not randomly assigned to the out of state routes as it was beneficial for each driver... to be familiar with the routes, and once trained for the routes was kept on that route").

12.     This Court has long recognized these principles *Reynolds v. Rogers Cartage Co.*, 71 F.Supp. 870 (W.D. Ky. 1947) ("Under the Fair Labor Standards Act, an employee engaged in the production of goods for commerce, though driving entirely within the State of Kentucky, might, without violating the provisions of the Fair Labor Standards Act, work twenty consecutive hours out of a period of twenty-four and might continue this practice over several days during a work week, so long as the driver was compensated by payment of time and one-half of his regular pay, for all hours in excess of forty hours. But should the occasion arise, that the same driver on some day in that week should make a trip in interstate commerce, the employer would thereby put himself within the terms of the Motor Carrier Act for the entire week").

13.     The Sixth Circuit has also recognized these principles.  *Baird v. Wagoner Transportation Co.*, 425 F. 2d. 407, 412 (6th Circuit 1970) (drivers who moved products solely-intrastate commerce were involved in interstate commerce for the purpose of the FLSA and therefore covered employees under the FLSA but not involved in interstate commerce for the purposes of Motor Carrier Act, and therefore not subject to the Motor Carrier Act exemption to FLSA; noting that "[w]hile the parties have stipulated that they are engaged in 'interstate commerce' for the purposes of the FLSA, such stipulation does not necessarily require a conclusion that their activities were in 'interstate commerce' for the purposes of the MCA").

14.     In addition to containing a different definition of interstate commerce than that utilized in the Motor Carrier Act, the FLSA provides "enterprise coverage" under which all employees of an enterprise engaged in interstate commerce are covered by the FLSA, whether or not each individual employee is involved in work in interstate commerce.  29 U.S.C. § 203 (r), (s).

15.     Defendant's annual sales have, at all relevant times to this Complaint, exceeded $500,000.00.

16.     Defendant is an enterprise engaged in commerce or in the production of goods for commerce, as defined in 29 U.S.C. § 203.

17.     In the alternative, if Defendant in and of itself is not an enterprise engaged in commerce or in the production of goods for commerce, as defined in 29 U.S.C. § 203, Defendant is operated under common control, for a common business purpose, and, upon information and belief, under common ownership with a related trucking company, DC Trucking, Inc. ("DC Trucking"); Defendant together with DC Trucking constitute an enterprise engaged in commerce or in the production of goods for commerce, as defined in 29 U.S.C. § 203, and Defendant's

employees therefore qualify as employees of an enterprise engaged in commerce or in the production of goods for commerce, as defined in 29 U.S.C. § 203.

18.     The Kentucky Secretary of State listing for DC Trucking is attached hereto as Exhibit 1.

## Factual Allegations

19.     Plaintiff has worked as a truck driver for many years.

20.     Around the year 2007, Plaintiff was diagnosed with diabetes.

21.     After Plaintiff was diagnosed by diabetes, for which Plaintiff was prescribed insulin administered by an insulin pump, Plaintiff approached Defendant.

22.     As a result of Plaintiff's diabetes diagnosis and insulin prescription, Plaintiff was legally prohibited from driving a vehicle requiring a commercial driver's license unless Plaintiff obtained one or more medical waivers.

23.     Specifically, Plaintiff could apply, and did apply, for a waiver from the Commonwealth of Kentucky to authorize Plaintiff to operate vehicles requiring a commercial driver's license solely in intrastate commerce (i.e., not in interstate commerce as defined in the federal Motor Carrier Act).

24.     Plaintiff applied for a medical waiver and received such waiver; attached hereto as Exhibit 2 are cards Plaintiff received from the Kentucky Transportation Cabinet noting that Plaintiff's medical waiver was granted.

25.     Each of the cards specifically notes in all-capital, bold font that **"THIS WAIVER VALID DURING INTRASTATE COMMERCE ONLY."**

26.     There is a process for persons with diabetes to seek a medical waiver from the federal Department of Transportation to obtain the right to operate a vehicle requiring a

commercial driver's license in interstate commerce (as defined in the federal Motor Carrier Act); however, Plaintiff did not obtain such a waiver from the federal government, either before or during his employment with Defendant.

27.     When Plaintiff discussed with Defendant's management the possibility of Plaintiff being employed by Defendant prior to Plaintiff's employment, Plaintiff and Defendant's management specifically discussed Plaintiff's diabetes diagnosis, Plaintiff's insulin use, Plaintiff's medical waiver from the Commnwealth of Kentucky, and that Plaintiff did not have any medical waiver from the federal government.

28.     Prior to Plaintiff beginning to perform work, and throughout Plaintiff's employment with Defendant, Defendant received and maintained copies of Plaintiff's medical waiver cards from the Kentucky Transportation Cabinet (attached as Exhibit 2, or the equivalent predecessor or successor card(s)), and was aware that Plaintiff was not legally permitted to drive commercial trucks in interstate commerce (as defined in the Motor Carrier Act).

29.     Plaintiff and Defendant agreed during these discussions that Defendant could hire Plaintiff only to operate vehicles requiring a commercial driver's license in intrastate commerce, and that Plaintiff was not legally authorized to operate vehicles requiring a commercial driver's license in intrastate commerce (as defined in the Motor Carrier Act).

30.     Plaintiff and Defendant agreed that Plaintiff would be hired to drive trucks solely in intrastate commerce (not interstate commerce as defined in the Motor Carrier Act).

31.     In other words, although Defendant sometimes had drivers perform truck driving in interstate commerce (as defined in the Motor Carrier Act), Plaintiff and Defendant agreed that those assignments would not be indiscriminately shared by Plaintiff and Defendant's other drivers, but instead that Plaintiff and other drivers legally prohibited from driving in interstate commerce

(as defined by the Motor Carrier Act) (Defendant has employed in intrastate commerce other drivers who, like Plaintiff, were prohibited from driving in interstate commerce) would only be assigned work that did not involve interstate commerce and that Defendant's other drivers who were not legally prohibited from driving in interstate commerce (as defined in the Motor Carrier Act) would conduct all of the work involving interstate commerce.

32.     Plaintiff, during the three years preceding the filing of this Complaint, was, for a period of time, regularly and exclusively assigned by Defendant to deliver coal from the Genesis Coal Mine near Centertown, Kentucky to the Big Rivers Wilson Power Plant near Island, Kentucky.  Plaintiff's work for Defendant during this period of time is referred to herein as the Big Rivers Run Period.

33.     During the Big Rivers Run Period, Plaintiff was exclusively delivering coal that was mined in Kentucky, transported solely within Kentucky, and delivered to a Kentucky power plant facility which, at the time of the delivery, intended to use the coal solely within the Commonwealth of Kentucky; the coal ultimately was in fact used solely within the Commonwealth of Kentucky by the power plant burning the coal in the Commonwealth of Kentucky for electric power production.

34.     Because Plaintiff was driving the truck solely within the Commonwealth of Kentucky to deliver coal from a Kentucky mine (where it was removed from the earth in the Commonwealth of Kentucky) to another location within the Commonwealth of Kentucky where it would be burned and sent into the atmosphere, Plaintiff's work driving said truck was not work "interstate commerce" as defined under the Motor Carrier Act.

35.     Both during the Big Rivers Run Period, and after that period, Defendant, for its own part, categorized Plaintiff as being involved in intrastate trucking (that is, as not being engaged interstate commerce as defined in the Motor Carrier Act).

36.     Upon information and belief, Defendants represented to third parties, including the Kentucky Transportation Cabinet and the federal Department of Transportation, that Plaintiff was not driving vehicles requiring a commercial driver's license in interstate commerce (as defined by the Motor Carrier Act).

37.     Throughout Plaintiff's employment, Plaintiff had a reasonable expectation that he would not be assigned to perform truck driving in interstate commerce (as defined in the Motor Carrier Act), including because Plaintiff and Defendant were both aware that Defendant was legally prohibited from assigning Plaintiff to perform truck driving in interstate commerce because Plaintiff was not legally permitted to drive trucks in interstate commerce because he had not received the federal waiver legally necessary for persons with diabetes who receive insulin to operate trucks in interstate commerce.

38.     Further, upon information and belief, Defendant categorized Plaintiff as intrastate (and categorized Plaintiff as not being involved in interstate commerce as defined in the Motor Carrier Act) specifically because Defendant sought to avoid complying with the provisions of the Motor Carrier Act applying to interstate trucking.

39.     After the Big Rivers Run Period, Plaintiff was assigned different duties.

40.     During this later period after the Big Rivers Run Period, Plaintiff continued to deliver coal to the Big Rivers Wilson Power Plant, but also in some weeks delivered coal from the Genesis Coal Mine to one of two coal loadout facilities.

41.     The coal being delivered to these facilities was then loaded onto to a different mode of transportation (one of the facilities was a rail loadout facility that loaded the coal onto train cars, and the other was a barge loadout facility that loaded the coal onto barges).

42.     Many of the deliveries to these loadout facilities were of coal intended by all parties to remain in Kentucky, and which ultimately did remain in Kentucky until it was consumed in Kentucky.

43.     For instance, Big Rivers often requested that coal be loaded onto barges at the barge load out facility, which was located near the Big Rivers Wilson Power Plant, so that Big Rivers could later convey the coal directly into the Big Rivers Wilson Power Plant using equipment it had to unload coal from barges; when this occurred, all parties were aware that the coal, which originated in the Genesis mine in Kentucky, despite being loaded onto a barge in Kentucky, would not be transported out of Kentucky but would instead be moved a short distance on the river (entirely within the Commonwealth of Kentucky) to Big Rivers's barge intake equipment to be burned in Kentucky.

44.     Plaintiff also delivered coal to loadout facilities to be stored in piles at the loadout facilities to dry or otherwise be stored; when coal was stored in this method, it was segregated into piles based on the intended ultimate destination of the coal.

45.     For example, if coal was wet due to rain, Big Rivers would, in order to avoid paying for the excess moisture (most purchasers of coal buy by the ton), sometimes direct that coal not be delivered.

46.     On these days, Defendant would have Plaintiff move coal ultimately destined to the Big Rivers Wilson Power Plant to a storage pile at a loadout facility; one or more particular piles were "set aside" for storage of such coal destined to the Big Rivers Wilson Power Plant and, despite

being stored at a loadout facility from which the coal, as a practical matter, could be shipped out of state, such coal in the set aside would never be shipped out of state but instead would be delivered (presumably after it dried) by truck on another day to the Big Rivers Wilson Power Plant.

47.     In other words, Plaintiff delivered coal to loadout facilities which was not actually "loaded out" to a barge or rail form of transportation, but instead simply stored in a pile at the loadout facility before being later delivered in Kentucky for use in Kentucky.

48.     Upon information and belief, in many workweeks after the Big Run Period Plaintiff delivered coal which was intended to be destined, and ultimately was delivered to, the Big Rivers Wilson Power Plant or delivered coal which was sent to other Kentucky power plants, such as Owensboro Municipal Utilities to be consumed in Kentucky, or otherwise drove trucks solely in intrastate commerce (not interstate commerce as defined in the Motor Carrier Act).

49.     To the extent that, in any workweek, Plaintiff performed work that would otherwise be within interstate commerce as defined in the Motor Carrier Act (and thus potentially subject to the Motor Carrier Act exemption to the FLSA because even though the loadout facilities to which Plaintiff delivered the coal were within the Commonwealth of Kentucky, some of the coal was destined for out-of-state delivery), Defendant should be estopped from asserting that Plaintiff worked in interstate commerce as (1) Defendant hired and employed Plaintiff knowing that Plaintiff (A) was legally permitted to work in "**INTRASTATE COMMERCE ONLY**" (i.e., in trucking that does not constitute interstate commerce under the Motor Carrier Act) and (B) was legally prohibited from driving a truck in interstate commerce as defined in the Motor Carrier Act and (2) Defendant represented to third parties, including the Kentucky Transportation Cabinet and/or the federal Department of Transportation, that Defendant was not employing Plaintiff in interstate commerce (as defined in the Motor Carrier Act).

50.     Defendant paid Plaintiff based on a formula that supposedly paid Plaintiff a percentage of the amount Defendant earned from delivering the coal driven by Plaintiff.

51.     The amount paid by Defendant thus corresponded with the amount received by Defendant for the coal being delivered.

52.     Defendant was paid for the coal being delivered on a per ton basis, and, therefore, Defendant paid Plaintiff on a per-ton basis for delivering coal.

53.     Defendant did not pay Plaintiff a higher per-ton rate for deliveries performed during times when Plaintiff was working in excess of forty hours in a particular workweek.

54.     To the contrary, when Plaintiff would work more than forty hours in a workweek, which he frequently did, he would continue to be paid at the same per-ton rate for deliveries made after having worked more than forty hours in the workweek as he had been paid for deliveries made during the first forty hours in the workweek.

55.     After Plaintiff filed his initial Complaint in this action, Defendant, without providing any supporting documentation for its assertion, made a filing with the Court asserting that "for Mr. McClurg's consideration, his haul records do not show any discrete intrastate-only period of time, as alleged.  Instead, the records show his consistently making drops at railway and waterway depots."

56.     This filing was made in connection with a motion Defendant filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure in which the Defendant did not ask the Court to consider facts outside of Plaintiff's initial complaint, and to assume for purposes of analysis that the facts included in Plaintiff's initial complaint were true; therefore, the inclusion of the factual assertion about the haul records "for Mr. McClurg's consideration" was both irrelevant to the issue Defendant asked the Court to decide and gratuitous (Defendant could have conveyed, but chose

not to convey, its assertion about the haul records to Plaintiff by email without involving the Court).

57.     As described in more detail below, stops at railway or barge loadout facilities would not demonstrate, as Defendant argued in its assertion, that there was "not … any discrete intrastate-only period of time."

58.     Nevertheless, Plaintiff requested that Defendant provide Plaintiff with the haul records so that Plaintiff could consider them, as Defendant had indicated in its unsupported statement that Defendant believed Plaintiff should do (Plaintiff did not have copies of the haul records and noted in the request that Plaintiff could not consider what the records said unless Defendant produced them).

59.     However, Defendant responded to Plaintiff's request by refusing to provide Plaintiff with Defendant's haul records, stating that "we are under no obligation to produce records to you at this point in the litigation."

60.     Upon information and belief, the reason Defendant refused to provide Plaintiff with the haul records after making an unsupported assertion to the Court and Plaintiff that Plaintiff should consider the contents of those records was that Defendant knew that the content of the haul records would be adverse to Defendant; upon information and belief, the content of the haul records will establish that Plaintiff engaged in substantial overtime work and that the Motor Carrier Act exemption did not apply to Plaintiff's work.

## PROPOSED COLLECTIVE AND CLASS DEFINITIONS

61.     Plaintiff brings Count I of this lawsuit pursuant to FLSA, 29 U.S.C. § 216(b) as a collective action, individually, and on behalf of himself and the following collective:

> All current and former truck driver employees of Dallas Jones Enterprises, Inc., doing business as Clay's Trucking, who were not paid at an overtime rate of pay for such

employee's work in excess of forty hours in one or more workweeks since December 7, 2017, despite the employee qualifying for overtime compensation because the employee was not engaged in "interstate commerce" truck driving as defined in the federal Motor Carrier Act (the "FLSA Collective").

62.     Plaintiff brings Counts II of this lawsuit as a class action pursuant to Fed. R. Civ.

P. 23, individually, and on behalf of himself and the following class:

All current and former truck driver employees of Dallas Jones Enterprises, Inc., doing business as Clay's Trucking, who were not paid at an overtime rate of pay for such employee's work in excess of forty hours in one or more workweeks since December 7, 2015, despite the employee qualifying for overtime compensation because the employee was not engaged in "interstate commerce" truck driving as defined in the federal Motor Carrier Act (the "Kentucky Class").

63.     The FLSA Collective and the Kentucky Class are together referred to as the "Classes."

64.     Plaintiff reserves the right to redefine the Classes prior to notice, and thereafter, as necessary.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

65.     Plaintiff brings this action under the FLSA on behalf of himself and all similarly-situated current and former employees of Defendant who worked for Defendant and were not fully-paid for their overtime work which Defendant should have paid within the last three years, as defined in paragraph 61.

66.     Plaintiff desires to pursue his FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

67.     Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendant's previously described common pay practices (of not paying overtime rates of pay to truck drivers, even if they qualified for overtime pay) and, as a result of such practices, were not paid the full

and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, inter alia, Defendant's common compensation, time-keeping and payroll practices.

68.    Specifically, the employment policies, practices and agreements of Defendant raise questions of fact common to the proposed collective group including:

    a.    whether Defendant has engaged in a pattern or practice of permitting or requiring Plaintiff and members of the proposed collective to work in excess of forty hours per workweek for the benefit of Defendant and without appropriate compensation, in violation of the FLSA;

    b.    whether Defendant has engaged in a pattern or practice of failing to keep accurate records showing all hours worked by Plaintiff and members of the proposed collective, in violation of the FLSA;

    c.    whether the conduct of Defendant was willful; and

    d.    whether Plaintiff and members of the proposed collective group are entitled to lost wages, liquidated damages and the other relief requested.

69.    Plaintiff's claims are similar to those of the FLSA Collective in that Plaintiff has been subject to the same conduct as FLSA Collective Members and Plaintiff's claims are based on the same legal theory as FLSA Collective Members.

70.    The similarly situated employees are known to Defendant and are readily identifiable and may be located through Defendant's business records and the records of any payroll companies Defendant uses.

71.    Plaintiff's FLSA claims are maintainable as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

72.    The similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages, interest, and

attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS PURSUANT TO FED. R. CIV. P. 23 FOR DEFENDANT'S VIOLATIONS OF THE KWHA

73.     Plaintiff brings this action under the KWHA on behalf of himself and all similarly-situated current and former employees of Defendant who worked for Defendant and were not fully-paid for their overtime work for which for Defendant which Defendant should have paid within the last five years, as defined in paragraph 62.

74.     Plaintiff is a member of the class he seeks to represent.

75.     Defendant failed to pay Plaintiff and the members of the class he seeks to represent wages for work performed, as described herein, in violation of the KWHA.

76.     Under the KWHA, employers are required to pay overtime compensation to non-exempt employees for overtime work performed by such employees.

77.     As Plaintiff and the similarly-situated employees were non-exempt, Defendant's refusal to pay Plaintiff and Class Members overtime compensation for overtime hours worked violated the KWHA.

78.     Upon information and belief, the Rule 23 Class is sufficiently numerous that joinder of all members is impractical, satisfying Fed. R. Civ. P. 23(a)(1).

79.     All members of the Rule 23 Class share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2). Namely, all members of the Rule 23 Class share common questions, including: (1) whether Defendant paid them overtime compensation for all overtime worked; and (2) whether Defendant failed to pay them the full amount of overtime compensation earned.

80.     Plaintiff's claims are typical of the claims of the Rule 23 Class, thus satisfying Fed. R. Civ. P. 23(a)(3) typicality.  Defendant's failure to pay Plaintiff overtime compensation was not

the result of any circumstances specific to the Plaintiff.  Rather, it arose from Defendant's common

pay policies of not paying overtime pay, which Defendant applied generally to their employees,

despite the fact that Plaintiff and the similarly-situated employees were non-exempt and entitled

to overtime pay.

81.     Plaintiff will fairly and adequately represent and protect the interests of the Rule 23

Class.

82.     Plaintiff has retained competent counsel experienced in representing classes of

employees in lawsuits against their employers alleging failure to pay statutorily required overtime

compensation, thus satisfying Fed. R. Civ. P. 23(a)(4).

83.     By failing to pay Plaintiff and Class Members for all hours worked, and failing to

pay employees the full amount of overtime compensation earned, Defendant has created the

circumstance under which questions of law and fact common to the Rule 23 Class members

predominate over any questions affecting only individual members. Thus, a class action is superior

to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiff

should be permitted to pursue the claims alleged herein as a class action, pursuant to Fed. R. Civ.

P. 23(b)(3).

## COUNT I

### VIOLATION OF FLSA
### <u>NONPAYMENT OF OVERTIME COMPENSATION</u>

84.     Plaintiff incorporates by reference all preceding paragraphs as if the same were set

forth again fully at this point.

85.     Defendant is subject to the wage requirements of the FLSA because Defendant is

an "employer" under 29 U.S.C. § 203(d).

86.     During all relevant times, the members of FLSA Collective, including Plaintiff, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

87.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed.  See 29 U.S.C. § 207(a)(1).

88.     Plaintiff and the FLSA Collective are not exempt from the requirements of the FLSA.

89.     Plaintiff and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

90.     Defendant knowingly failed to compensate Plaintiff and the FLSA Collective at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

91.     Indeed, Defendant made no effort to pay overtime compensation at all to Plaintiff and the FLSA Collective, paying them on the same per-ton basis for work performed beyond forty hours per week as it paid them for work performed in the first forty hours of the workweek.

92.     Defendant has willfully violated the FLSA by engaging in a pattern or practice (or patterns or practices) of:

> a.  failing to keep accurate records showing all the time it permitted and/or required Plaintiff and members of the proposed collective to work, from the first compensable act to the last compensable act;
>
> b.  permitting and/or requiring Plaintiff and FLSA Collective to perform integral and indispensable activities (*i.e.*, work) in excess of forty hours in a work week, for the benefit of Defendant and without compensation at the applicable federal overtime rates; and

c.   failing to pay employees overtime compensation earned.

93.    Pursuant to 29 U.S.C. § 216(b), employers, such as Defendant, who fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for the unpaid minimum and overtime wages, an additional equal amount as liquidated damages, reasonable attorney's fees, and costs of the action.

## COUNT II

### VIOLATION OF KY. REV. STAT. ANN. §§ 337.275, *ET SEQ*. BY NONPAYMENT OF WAGES.

94.    All previous paragraphs are incorporated as though fully set forth herein.

95.    Plaintiff bring this claim on behalf of all members of the proposed Rule 23 Class.

96.    Kentucky state law requires that covered employees be compensated for every hour worked in a workweek. *See* KY. REV. STAT. ANN. §§ 337.275, *et seq*.

97.    KY. REV. STAT. ANN. § 337.285 requires that employees receive overtime compensation "not less than one and one-half (1-1/2) times" the employee's regular rate of pay for all hours worked over forty in one workweek. *See also* 803 Ky. Admin. Regs. 1:060.

98.    During all times material to this complaint, Defendant was a covered employer required to comply with KY. REV. STAT. ANN. § 337.010(1)(d).

99.    During all times material to this complaint Plaintiff and the Rule 23 Class were covered employees entitled to the protections of the KWHA. *See* KY. REV. STAT. ANN. § 337.010(1)(e).

100.   Plaintiff and Class Members are not exempt from receiving the KWHA's overtime benefits because they do not fall within any of the exemptions set forth therein. *See* KY. REV. STAT. ANN. § 337.285(2).

101.    Defendant has violated the KWHA with respect to Plaintiff and the Rule 23 Class by, *inter alia*, failing to compensate them for all hours worked in excess of forty per workweek at one and one-half their "regular rate" of pay.

102.    In violating the KWHA, Defendant acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

103.    Pursuant to KY. REV. STAT. ANN. § 337.385, Defendant, because it failed to pay employees the required amount of wages and overtime at the statutory rate, must reimburse the employees not only for the unpaid wages, but also for liquidated damages in an amount equal to the amount of unpaid wages.

104.    Pursuant to KY. REV. STAT. ANN. § 337.385, Plaintiff and Class Members are entitled to reimbursement of the litigation costs and attorney's fees expended if they are successful in prosecuting an action for unpaid wages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that the Court:

A.    Issue process and bring Defendant before the Court;

B.    Authorize notice to issue to members of the proposed collective action and permitting similarly-situated persons a reasonable opportunity to join this litigation with respect to claims under the FLSA;

C.    Certify a class of similarly-situated employees whose rights were violated by Defendant under Kentucky law, and grant relief available under Kentucky law, including unpaid wages, liquidated damages, and attorney's fees and other litigation expenses, to the class;

D.    Empanel a jury for the trial of all issues of fact;

E.      Enter a judgment awarding Plaintiff and the Classes damages in the amount of the unpaid overtime compensation, plus liquidated damages in a like amount, in amounts to be proven at trial;

F.      Award Plaintiff and similarly-situated persons joining this litigation all costs of litigation, including expert fees and attorneys' fees;

G.      Grant Plaintiff and similarly-situated persons joining this litigation all costs of litigation and such other further and/or general, legal and/or equitable relief to which they are entitled or which the Court otherwise deems appropriate.


Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
Mfoster@MarkNFoster.com
*Counsel for Plaintiff*