UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:20-CV-00201-JHM

JOHNNY MCCLURG                                                                        PLAINTIFF

V.

DALLAS JONES ENTERPRISES INC.
d/b/a Clay's Trucking                                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint. [DN 14]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion to Dismiss Plaintiff's Amended Complaint is **DENIED**.

## I. BACKGROUND

According to his Amended Complaint, Plaintiff Johnny McClurg is a commercial truck driver. [DN 7 ¶ 19]. He was diagnosed with diabetes in 2007. [*Id*. at ¶ 20]. Federal and state regulations prevent individuals with diabetes from driving commercial motor vehicles unless they obtain a medical waiver. *See* 49 C.F.R. § 391.41(b)(3); 601 Ky. Admin. Regs. 1:005. McClurg obtained a medical waiver from the Commonwealth of Kentucky but did not obtain a medical waiver from the federal Department of Transportation. [DN 7 ¶¶ 23, 26]. McClurg's Kentucky medical waiver states that it is valid in "Intrastate Commerce only." [*Id*. at ¶ 25; DN 7-2]. Because that is the only medical waiver he obtained, McClurg could only drive in "intrastate commerce."[1]

---

[1] McClurg asserts that his medical waiver's "intrastate commerce only" command means that he could only transport goods in intrastate commerce "as defined in the Motor Carrier Act." [DN 7 ¶¶ 26, 28–31]. But McClurg provides no legal basis for this statement—he simply appears to draw a legal conclusion based on the language of the medical waiver. The Court does not credit this legal conclusion. The phrase "intrastate commerce" means different things in different legal contexts. *See Foreman v. Five Star Food Serv., Inc*., 950 F. Supp. 2d 958, 965

1

After McClurg's diabetes diagnosis, Defendant Dallas Jones Enterprises, a Kentucky-based trucking company, hired McClurg. [DN 7 ¶¶ 8, 30]. Dallas Jones hired McClurg fully aware of his medical restrictions and that he could only drive in "intrastate commerce." [*Id*. at ¶¶ 27–31]. Although Dallas Jones's business sometimes requires drivers to drive in interstate commerce, it agreed that McClurg would not "indiscriminately share[ ]" job assignments with the other drivers. [*Id*. at ¶ 31]. Instead, Dallas Jones only assigned McClurg to routes within the state of Kentucky. [*Id*. at ¶¶ 32–48]. McClurg performed this work along with Dallas Jones's "other drivers who . . . were prohibited from driving in interstate commerce." [*Id*. at ¶ 31].

Throughout McClurg's employment, Dallas Jones paid him on a "per-ton basis"—a flat fee for every ton of coal transported. [*Id*. at ¶¶ 50–52]. But McClurg would sometimes work more than forty hours in a week, and Dallas Jones did not increase his fee on those deliveries. [*Id*. at ¶¶ 53–54]. Believing he was entitled to overtime when he worked more than forty hours in a week, McClurg sued. His Amended Complaint asserts two causes of action: a federal claim for unpaid overtime under the Fair Labor Standards Act ("FLSA") and a state law claim under the Kentucky Wage and Hour Act ("KWHA"). [*Id*. at ¶¶ 84–104]. He also seeks to represent a collective (for the FLSA) and class (for the KWHA) of similarly situated plaintiffs.

Dallas Jones moves to dismiss McClurg's Amended Complaint for failure to state a claim. [DN 14-1]; *see* FED. R. CIV. P. 12(b)(6).

---

(M.D. Tenn. 2013) ("The meaning of 'interstate commerce' within the MCA is narrower than the scope of 'interstate commerce' under the Commerce Clause and different from the definition of 'interstate commerce' under the FLSA."). And it is not immediately clear that Kentucky's medical exemption regulation, *see* 601 Ky. Admin. Regs. 11:040, tracks the Department of Transportation's definition of "intrastate commerce." In any event, McClurg's actions, not regulatory categorizations, determine the MCA exemption's scope. *Timberline South*, 925 F.3d at 850 ("[T]he dispositive inquiry is whether [defendant]'s drivers transport goods in interstate commerce . . . ."); *Finn v. Dean Transp., Inc.*, 53 F. Supp. 3d 1043, 1057–58 (M.D. Tenn. 2014).

## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[ ]," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint states a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for his or her entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when he or she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "'merely consistent with' a defendant's liability," *id.* at 678 (quoting *Twombly*, 550 U.S. at 557), or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct," *id.* at 679. Instead, the allegations must "show[ ] that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## III. DISCUSSION

Some of McClurg's claims, and all of this Court's subject-matter jurisdiction, sound in the FLSA. The FLSA, which applies to employees engaged in interstate commerce, requires employers to pay time-and-a-half whenever an employee works more than forty hours in a week. 29 U.S.C. § 207(a)(1). Here, Dallas Jones's motion does not challenge the substantive FLSA allegations. Instead, Dallas Jones contends the FLSA does not apply at all because the Motor Carrier Act ("MCA") exemption to the FLSA indisputably applies to McClurg. If the MCA exemption applies, McClurg cannot avail himself of FLSA protections. Alternatively, Dallas

Jones asks the Court to deny McClurg's proposed collective and class action and force the case to proceed on an individual level only. The Court will address each argument in turn.

### A. Motor Carrier Act Exemption

The FLSA does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1). This exemption is known as the MCA exemption. The Secretary of Transportation possesses the power to regulate an employee if (1) the employee works for a motor private carrier that transports property in interstate commerce and (2) the employee's work activities "affect the safety of operation of motor vehicles" in interstate commerce. *Sec'y of Labor v. Timberline South, LLC*, 925 F.3d 838, 850 (6th Cir. 2019); 29 C.F.R. § 782.2(a); *see* 49 U.S.C. §§ 31502(b)(2); 13102(15). If the Secretary of Transportation possesses this regulatory power over a particular employee, whether or not it actually exercises the power, the Secretary of Labor lacks jurisdiction and the FLSA (and its overtime provisions) do not apply. *See Barlow v. Logos Logistics, Inc.*, 34 F. Supp. 3d 686, 690 (E.D. Mich. 2014) ("The FLSA language setting forth the motor carrier exemption is . . . an acknowledgment that the Department of Labor's jurisdiction yields to that of the [Department of Transportation]."); *see also White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021) ("The Secretary of Transportation need only possess the power to regulate the employees at issue; it need not actually exercise that power.") (quotation omitted). FLSA exemptions receive a fair reading, and the defendant bears the burden of proving the MCA exemption applies. *Timberline South*, 925 F.3d at 850.

McClurg acknowledges that his employment satisfies many prerequisites for Department of Transportation jurisdiction: Dallas Jones is a "motor private carrier" that transports property in interstate commerce. [*See* DN 7 ¶ 31]. And McClurg's duties as a truck driver "affect the safety

4

of operation of motor vehicles." *See Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920, 926 (W.D. Pa. 2011) ("Generally, the duties of drivers affect safety of operation . . . .") (quotation and citation omitted). But McClurg maintains his driving did not occur in interstate commerce, as defined by the MCA, so the Secretary of Transportation lacks jurisdiction and McClurg should receive the FLSA's overtime protections. *See Baird v. Wagoner Transp. Co.*, 425 F.2d 407, 410 (6th Cir. 1970) ("While the parties have stipulated that they are engaged in 'interstate commerce' for the purposes of the FLSA, such stipulation does not necessarily require a conclusion that their activities were in 'interstate commerce' for the purposes of the MCA."). The parties' sole dispute on this Motion to Dismiss is whether McClurg drove in interstate commerce.

There are three distinct ways a driver's transportation occurs in "interstate commerce" under the MCA: (1) the driver transports goods across state lines; (2) the driver transports goods within a state, but that purely intrastate transportation is part of a "practical continuity of movement" across state lines; or (3) the driver has never transported goods in interstate commerce (under either of the first two methods) but has a reasonable expectation that he could be called to do so. *Timberline South*, 925 F.3d at 850; *Jones v. L&G Trucking, LLC*, No. 15-cv-40, 2017 WL 1173937, at *5 (E.D. Ky. Mar. 29, 2017); *Finney v. Free Enter. Sys., Inc.*, No. 3:08-cv-383, 2012 WL 5462971, at *4 (W.D. Ky. Nov. 8, 2012).[2] McClurg does not qualify under the first method: he pled that he never transported goods across state lines because his medical restrictions prevented him from driving outside Kentucky. [DN 7 ¶ 30]. Dallas Jones's motion focuses on the second method of establishing "interstate commerce": practical continuity of movement.

---

[2] In *Timberline South*, the Sixth Circuit only mentioned the first two methods: interstate travel or practical continuity of movement. 925 F.3d at 850. But this Court's review of precedents indicates that a "reasonable expectation" of transporting goods in interstate commerce is a third, if infrequently used, method of satisfying the MCA exemption. *See Morris v. McComb*, 332 U.S. 422 (1947); *Jones*, 2017 WL 1173937, at *5–7; *Finney*, 2012 WL 5462971, at *4–8.

It is well established that "purely intrastate transportation can constitute part of interstate commerce" under the MCA "if it is part of a continuous stream of interstate travel." *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1229 (11th Cir. 2009) (citation omitted). "For this to be the case, there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow." *Id*.

This "practical continuity of movement" test derives from the Supreme Court decision in *Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943). In *Jacksonville Paper*, the Court considered whether seven paper warehouses engaged in interstate commerce. The warehouses never shipped or delivered paper across state lines but "constantly receiv[ed] merchandise in interstate shipments." *Id*. at 565–66.³ The Court held that, because the paper moved across state lines without a significant pause, employees who completed an intrastate step of that interstate process engaged in interstate commerce. *Id.* at 568. Although the warehouses stored the paper for a short period of time, that "temporary pause" did not disrupt the "practical continuity of movement of the goods until they reach the customers for whom they are intended." *Id*.

Lower courts interpreting *Jacksonville Paper* have developed a robust body of law surrounding what type of pauses or alterations disrupt a product's interstate continuity of movement. *See, e.g.*, *Musarra v. Digit. Dish, Inc.*, 454 F. Supp. 2d 692, 711 (S.D. Ohio 2006) (determining that the ultimate question is whether the shipper's "fixed and persisting intent" is for the goods to continue in interstate commerce). This motion does not test the boundaries of those decisions—here, it is enough to note that a short pause in a warehouse or transportation facility does not disrupt interstate continuity of movement, *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 224 (2d Cir. 2002), but changing a product's composition before the product

---

³ *Jacksonville Paper* arose under the FLSA. But subsequent lower court decisions have consistently applied it to the MCA exemption. *See, e.g.*, *Walters*, 575 F.3d at 1229.

crosses state lines does. *Timberline South*, 925 F.3d at 851 (suggesting that there was no interstate continuity of movement of timber because "even if the timber was used . . . to make other products, such as paper, the fact that the timber was altered before crossing state lines weighs against finding the MCA exemption applicable").

Here, McClurg transported coal. [DN 7 ¶¶ 34, 40]. Dallas Jones argues that McClurg's driving, although it occurred only in Kentucky, was a small step in the coal's interstate journey. The parties contest two points, one general and one specific. Generally, they dispute which of Dallas Jones's business operations are relevant in the "practical continuity of movement" inquiry. Specifically, they argue whether the coal's "practical continuity of movement" occurred in interstate commerce.

### 1. Practical Continuity of Movement: Relevant Operations

First, the parties dispute what operations are relevant in the "practical continuity of movement" test. Dallas Jones asserts that "practical continuity of movement" requires the Court to look at all Dallas Jones's business operations and consider Dallas Jones's drivers collectively. [DN 14-1 at 6–7]. McClurg's response sharply contests the relevance of any operations that McClurg himself did not participate in—his response attempts to narrow the focus to an "employee-by-employee" question. [DN 16 at 6].

Although the parties debate this issue, it appears that both parties agree on the key points. McClurg correctly states that the practical continuity of movement test looks to the driver's actions; any employer actions unrelated to the driver's actions are not relevant. *See Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 433 (6th Cir. 2006) (identifying that a key issue was "whether plaintiff, in the course of performing services for defendants, engaged in interstate transportation"). This conclusion is consistent with lower court opinions interpreting

*Jacksonville Paper*, which look at the work a specific employee performed, not the company's transportation as a whole, when determining whether intrastate transportation is part of an interstate continuity of movement. *See, e.g.*, *Burlaka v. Cont. Transp. Servs. LLC*, 971 F.3d 718, 721 (7th Cir. 2020) ("The question is whether the *plaintiffs*' spotting duties were part of the interstate journey of the goods.") (emphasis added); *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1158 (10th Cir. 2016) ("[T]he crucial inquiry is whether the essential character of *Plaintiffs*' shipments was interstate in nature . . . .") (emphasis added); *Bilyou*, 300 F.3d at 224 (asserting that the MCA exemption applied because "*Bilyou*'s involvement in the process was part of a continuous movement of goods in interstate commerce") (emphasis added). The Department of Transportation's MCA regulations also support this interpretation: "In determining whether an employee falls within . . . an exempt category [for the MCA], neither the name given to his position nor that given to the work that he does is controlling; what is controlling is the character of the *activities involved in the performance of his job*." 29 C.F.R. § 782.2(b)(2) (emphasis added).[4]

---

[4] A company's overall business operations are relevant only for the third method of establishing intestate commerce under the MCA: whether a driver had a "reasonable expectation" that he could be called to drive in interstate commerce. *Morris v. McComb*, 332 U.S. 422 (1947); *Jones*, 2017 WL 1173937, at *5–7; *Finney*, 2012 WL 5462971, at *4–8; *see* 29 C.F.R. § 782.2(b)(3). Unlike the "practical continuity of movement" test, the "reasonable expectation" test considers an employer's overall operations to determine whether a driver should expect to drive in interstate commerce. The more interstate trips an employer has, the more an employee should have a reasonable expectation of taking one of those trips. *Compare Songer v. Dillon Res., Inc.*, 618 F.3d 467, 475–76 (5th Cir. 2010) (truck drivers who had not driven in interstate commerce had a reasonable expectation of doing so because the company had thousands of interstate trips each year that it randomly assigned to drivers), *with Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1156–57 (9th Cir. 1994) (MCA exemption did not apply against a group of drivers because the company had no interstate commerce trips for "several months," and solely intrastate business did not establish a "reasonable expectation" of interstate travel for its drivers).

But here, even if Dallas Jones sought dismissal based on the reasonable expectation test, the Court is not convinced Dallas Jones's overall business operations would be relevant. McClurg pled that his medical restrictions, not Dallas Jones's overall business operations, dictated his "reasonable expectation" that he would not travel in interstate commerce. [DN 7 ¶ 31]. So, because overall business operations are relevant only to the extent they delineate a plaintiff's "reasonable expectation" of interstate driving, Dallas Jones's overall business operations are not relevant if other factors created McClurg's reasonable expectations. *See Sturm v. CB Transp., Inc.*, 943 F. Supp. 2d 1102, 1110–15 (D. Idaho 2013) (denying summary judgment based on "reasonable expectation" theory because evidence indicated the company scheduled drivers to regular routes and only certain drivers drove interstate, so other drivers had no reasonable expectation of interstate travel); *Chaohui Tang v. Wing Keung Enters., Inc.*, 210 F. Supp.

But Dallas Jones's contention is also correct: "practical continuity of movement" follows the product from origin to destination, not just the stretch McClurg transported it. *See* 29 C.F.R. § 782.7(b)(1) ("Transportation within a single State is in interstate commerce . . . where it forms a part of a 'practical continuity of movement' across State lines from the point of origin to the point of destination.").

These two legal principles are not in tension: the "practical continuity of movement" inquiry centers around the coal McClurg transported, but the inquiry must follow this coal from origin to destination. Any of Dallas Jones's trips that McClurg did not participate in are not relevant, but the Court must follow each of McClurg's trips along any step that is part of the coal's "practical continuity of movement."

### 2. Practical Continuity of Movement: Application

Next, the Court turns to Dallas Jones's specific argument in favor of dismissal: McClurg's Amended Complaint fails because his own allegations and public records confirm that McClurg transported coal that traveled in interstate commerce. [DN 14-1 at 6–7]. This argument requires the Court to follow the coal's journey along any step that forms part of its "practical continuity of movement."

McClurg's Amended Complaint describes two types of routes that he drove during the relevant statutory period. Both routes originated at a coal mine in Centertown, Kentucky. [DN 7 ¶¶ 34, 40]. In the first route McClurg describes, he transported coal from the Centertown mine to a power plant in Island, Kentucky. [*Id*. at ¶ 32]. He asserts that he drove this route exclusively for an undefined period of time. [*Id*.]. The second type of route, which McClurg drove after the exclusive power plant route ended, involved transporting coal from the mine to various "coal

---

3d 376, 404 (E.D.N.Y. 2016) (no reasonable expectation of interstate travel when drivers were "kept on the same [intrastate] route for certain periods of time" and were "not likely to be called upon" for interstate commerce during that time period).

loadout facilities" in Kentucky, where a third party transferred the coal to train cars or barges for further transportation. [*Id.* at ¶¶ 40–41].

The first question is whether the coal originated in Kentucky. At this stage, drawing inferences in McClurg's favor, the Court assumes the coal was mined at the Centertown mine and thus originated in Kentucky. So, the second question is whether the coal's destination was in Kentucky or out of state. Here, it is helpful to consider each of McClurg's routes separately. For McClurg's first route, where he exclusively delivered coal to the power plant, it is plausible that the coal stayed in Kentucky. *See Twombly*, 550 U.S. at 556 (stating that the plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" facts proving illegal action). Although the Court does not credit McClurg's speculative conclusions that the power plant burned the coal on-site, that conclusion is plausible nonetheless. And if the power plant burned the coal on-site (in Kentucky), that probably ends the "practical continuity of movement" inquiry. *See Timberline South*, 925 F.3d at 851 (stating that the MCA exemption likely would not apply if a transported product was "altered before crossing state lines").

For McClurg's second type of route, where he delivered coal to the various loadout facilities, it seems less likely that all coal remained in Kentucky. But Dallas Jones bears the burden of proving the MCA exemption applies. *Timberline South*, 925 F.3d at 850. And at this early stage, neither party knows where the coal delivered to the loadout facilities ended up.

Dallas Jones attempts to use public records to show that the coal loadout facilities shipped the coal out-of-state.[5] It cites bankruptcy court filings from the company that owned the Centertown mine between 2018 and 2019. [DN 14-1 at 2–4]; *In re W. Ky. Consol. Res., LLC*, No. 2:19-bk-56965, DN 6 (Bankr. S.D. Ohio Dec. 14, 2019). These filings apparently show that

---

[5] The Court assumes without deciding that it can consider these public records on a motion to dismiss.

10

the Centertown mine had coal delivery contracts with several companies, including companies in Tennessee and Ohio. [DN 14-1 at 3]. Dallas Jones suggests these out-of-state contracts conclusively show that the coal delivered to loadout facilities left Kentucky, so McClurg's driving was part of the interstate transportation of coal. [*Id*. at 7].

There are several issues with this chain of inferences. First, Dallas Jones is a trucking company, not a coal mine. So, it is irrelevant that the coal mine shipped coal to Tennessee and Ohio absent evidence that it hired Dallas Jones to transport that coal for at least one step of the journey. Dallas Jones cites no conclusive evidence of this in the bankruptcy filings, nor does McClurg include such allegations in his Amended Complaint. Second, *even if* the mine hired Dallas Jones to transport the coal that ended up in Tennessee or Ohio, that fact is not sufficient absent evidence that *McClurg himself* transported that coal at one step of the journey. There is certainly no such evidence in the bankruptcy filings. In fact, the bankruptcy filings indicate that the mine also had coal delivery contracts with Kentucky companies. So, it is also possible that McClurg's transportation of coal went to in-state companies.

Third, the Department of Transportation uses a four-month rule for interstate commerce, so Dallas Jones must establish that McClurg transported goods in interstate commerce (or had a reasonable expectation that he would be called to do so) at least once every four months to meet the MCA exemption as a matter of law. *Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 782–83 (N.D. Ill. 2007) ("[T]he Department of Labor and Department of Transportation have applied a rule that an employee will be considered to be engaging in transportation in interstate commerce for four months after each proven incident of transporting a shipment in interstate commerce."). McClurg's Amended Complaint does not mention how often he drove to the loadout facilities. Because his allegations and public records do not compel a conclusion that

11

McClurg transported goods in a continuous stream of interstate commerce, Dallas Jones cannot meet its burden of proving the MCA exemption applies. *See Nieves v. Ins. Care Direct, Inc.*, No. 09-cv-61330, 2010 WL 376279, at *2 (S.D. Fla. Jan. 25, 2010) (a deficiency in plaintiff's complaint must be "apparent from the face of the complaint" for a court to grant a motion to dismiss) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).[6]

## B. Collective & Class Action

As an alternative to dismissal, Dallas Jones seeks to trim the Amended Complaint by preventing McClurg from representing any "similarly situated" drivers. [DN 14-1 at 8–9].

Dallas Jones's motion is premature. District courts typically do not consider whether potential plaintiffs are "similarly situated" for the FLSA, *see* 29 U.S.C. § 216(b), until a plaintiff moves for conditional certification. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546–47 (6th Cir. 2006) (recognizing that district courts consider whether plaintiffs are "similarly situated" when plaintiffs move for conditional certification at the start of discovery). Courts typically make class action determinations even later. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013) (a court must conduct a "rigorous analysis" before granting class certification). The Court does not believe the motion to dismiss stage is the proper time to consider the question in this case.[7]

---

[6] The "practical continuity of movement" inquiry is usually quite fact-intensive. *See, e.g.*, *Timberline South*, 920 F.3d at 851 (affirming a denial of summary judgment because defendants "presented no evidence that their timber was eventually shipped in interstate commerce"); *Mazzarella v. Fast Rig Support, LLC*, 823 F.3d 786, 792–93 (3d Cir. 2016) (affirming a judgment for plaintiffs because defendants "present[ed] only bare assertions, without evidentiary support in the record, about the . . . transportation in interstate commerce"); *Jones*, 2017 WL 1173937, at *5 ("Defendants have offered no evidence to support their contention that any of the products Jones transported were ever moved out of Kentucky."); *Finney*, 2012 WL 5462971, at *10 (denying summary judgment because "defendants point[ed] to no evidence concerning the numbers of persons for whom the shuttle service constituted a part of an interstate trip"). This fact-specific inquiry often makes the MCA exemption a poor fit for a motion to dismiss.

[7] In the same vein, the Court will not limit the timeframe of McClurg's potential relief merely based on his pleadings. "[F]or better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995).

12

With that said, the Court notes some concern about McClurg's ability to represent a collective of "similarly situated" employees. FLSA collective actions implicating the MCA exemption typically involve a collective of truck drivers among whom the employer indiscriminately assigned job duties. *See, e.g.*, *Finney*, 2012 WL 5462971, at *1–2 (describing the interchangeable jobs performed by the drivers). In those situations, judges can consider the MCA exemption collectively because all drivers performed the same work. Here, however, McClurg premises his allegations on the fact that "Plaintiff and Defendant agreed that [interstate] assignments would not be indiscriminately shared by Plaintiff and Defendant's other drivers." [DN 7 ¶ 31]. This individualized assignment system seems inconsistent with a collective action because it will require a case-by-case inquiry into the drivers' routes. Even if other drivers had similar medical exemption cards, McClurg must show the drivers all performed similar work to be "similarly situated" for the FLSA. At this stage, however, the Court will credit McClurg's assertions that he will "tailor his motions for conditional and class certification . . . to the group of employees who were similarly situated to Plaintiff" and save this decision for a later date. [DN 16 at 20].

## IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint [DN 14] is **DENIED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

June 7, 2021

cc: Counsel of Record