**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| JOHNNY McCLURG, | ) | |
| on Behalf of Himself and All | ) | |
| Others Similarly-Situated, | ) | **PROPOSED COLLECTIVE ACTION** |
| | ) | **UNDER FLSA AND CLASS ACTION** |
| *Plaintiff,* | ) | **UNDER KWHA** |
| | ) | |
| v. | ) | CASE NO.    4:20-CV-201-JHM |
| | ) | |
| DALLAS JONES ENTERPRISES | ) | **JURY DEMANDED** |
| INC, d/b/a CLAY'S TRUCKING | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**MOTION TO FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(b)
(MOTION FOR CONDITIONAL CERTIFICATION)**

Comes Plaintiff, Johnny McClurg, by and through counsel, and moves the Court to approve

notice pursuant to 29 U.S.C. § 216(b) to persons similarly situated to Plaintiff Johnny McClurg

with respect to his allegations that the Motor Carrier's Act ("MCA") exemption to the Fair Labor

Standards Act ("FLSA") does not apply and that Defendant therefore violated the FLSA in failing

to pay overtime compensation.  Specifically, Plaintiff requests that the Court approve the sending

of notice to the following collective:

> All persons who were employed by Dallas Jones Enterprises, Inc. (which has done
> business as "Clay's Trucking") as a truck driver and were not paid overtime
> compensation for work performed in excess of forty hours in one or more
> workweeks within the three years preceding this notice.

In the alternative, Plaintiff moves that the Court approve the sending of notice to the following

collective, which is a sub-group of the preceding proposed collective:

> All persons who were employed by Dallas Jones Enterprises, Inc. (which has done
> business as "Clay's Trucking") as a truck driver and were not paid overtime
> compensation for work performed in excess of forty hours in one or more
> workweeks within the three years preceding this notice and who did not drive in
> interstate commerce but instead operated solely in intrastate commerce pursuant to

a medical waiver from the Kentucky Transportation Cabinet (and/or under a "K" intrastate-only restriction on his or her commercial driver's license).

## I.    Summary

Having been accused by Defendant of missing the forest for the trees,[1] and occasionally through counsel having been guilty of this problem,[2] Plaintiff stepped back and conducted a detailed legal and factual investigation relating to (A) the fundamental issue that is the subject of this motion – "whether potential plaintiffs are 'similarly situated' for the FLSA"[3] such that the Court should direct that a notice be sent to those employees of this lawsuit and the employees' right to join and (B) the fundamental question in this case: whether Defendant may benefit from the Motor Carrier's Act exemption to the FLSA with respect to its truck driver employees.

In doing so, and after consulting another of Defendant's drivers, Plaintiff realized[4] he had previously missed the most important reason why *all* of Defendant's employees are similarly-situated to Plaintiff: not only was Plaintiff (one of Defendant's drivers) not legally permitted to drive in interstate commerce, *Defendant itself is not an interstate carrier, Defendant itself is not authorized to operate in interstate commerce, and Defendant has affirmatively represented to the federal government that it is **not** operating in interstate commerce*.  Instead, Defendant holds itself (and *all* of its employees) out to the federal government as operating "intrastate only"; an entity with common ownership with Defendant but which Plaintiff has not sued, DC Transport, Inc., by

---

[1]     Ct. Doc. 19 at 6-7.

[2]     See, e.g., Ct. Doc. 15.

[3]     Ct. Doc. 22 at 12.

[4]     Plaintiff had not previously comprehended that Defendant's management divided possible business between Defendant and the related (not defendants in this action) entities authorized by the federal Department of Transportation to transport goods in interstate commerce, and that therefore all of Defendant's drivers drove solely in intrastate commerce and all interstate commerce conducted out of the same headquarters was conducted solely by employees of entities separate from (although under common ownership and management with) Defendant.  See Ct. Doc. 31 at 3-4 (noting that requested amendment seeks to correct Plaintiff's previous allegations in Amended Complaint, Ct. Doc. 7, at ¶ 31), Plaintiff's Dec at ¶¶ 21-24.

contrast, is authorized to operate in interstate commerce, and Defendant's management directs interstate commerce business to that sister company.  Therefore, unlike the sister company, Defendant is legally prohibited from having any of its employees operate in interstate commerce; it is not an interstate "carrier" eligible to benefit under the MCA exemption to the FLSA.

Further, setting aside what Defendant is legally prohibited from doing, Defendant and its employees actually in fact did not operate in interstate commerce.  Instead, they drove loads solely in Kentucky, and the trips were not part of interstate commerce.  For the most part, the loads driven were coal being driven from a Kentucky mine to a Kentucky power plant for electricity production in Kentucky, but in any event, all loads were Kentucky-originating, driven exclusively in Kentucky, and bound for an ultimate destination in Kentucky, and thus not part of interstate commerce.

Finally, in the alternative, to the extent the Court does not grant conditional certification for all of Defendant's drivers for the reasons above, Plaintiff would show that, as alleged in Plaintiff's Amended Complaint, Plaintiff himself was not legally authorized to operate in interstate commerce, but was only legally authorized to operate (under a Kentucky medical waiver) in "intrastate commerce only" (and thus Defendant and any other employer of Plaintiff would be legally prohibited from having Plaintiff drive in interstate commerce); other employees of Defendant also had medical waivers with similar restrictions and also for that reason alone could expect not to operate in interstate commerce, conditional certification should be granted as to these drivers even if the Court rejects conditional certification of all of Defendant's drivers.  These points are addressed in turn in Sections IV through VI below.

## II.       The Conditional Certification Standard

However, as an initial matter, before discussion of the specific reasons it appears Defendant engaged in a common scheme of violating the FLSA, it is important to remember the standards applicable to motions for approval of notices to similarly-situated employees under 29 U.S.C. § 216(b).   The Supreme Court has approved of granting such relief,[5] commonly referred to as "conditional certification," while at the same time noting that "[t]he *sole consequence* of conditional certification is the sending of court-approved written notice to employees, ... who in turn become parties to a collective action only by filing written consent with the court, § 216(b)." *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1530 (2013) (emphasis added).

Since this relief is appropriately granted early in the case at the beginning of discovery,[6] the standard that Plaintiff must meet under the FLSA for such relief is "fairly lenient" and "typically results in conditional certification of a representative class." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (quoting *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)).   At this early stage before discovery has been completed, the Court merely determines whether Defendant's employees were "allegedly subject to a common practice which may have resulted in FLSA overtime violations." *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011). "The proper inquiry is simply whether plaintiffs are similarly situated *with respect to their allegations that the law has been violated*." *Id.* (emphasis in original; citations omitted).

---

[5]       The Supreme Court has observed that the benefits of a Section 216(b) collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989).   Under 29 U.S.C. § 216(b), a district court may "facilitat[e] notice to potential plaintiffs." *Id.* at 169.

[6]       This Court has appropriately rejected the approach of the Fifth Circuit in *Swales v. KLLM Transport Service, L.L.C.*, 985 F.3d 430 (5th Cir. 2021).   *See Branson v. Alliance Coal, et al.*, Doc. 167 in No. 4:19-cv-155 (April 20, 2021).

### III.     Plaintiff Alleges a Common Policy of Defendant Violating the FLSA Because Defendant Relies on the MCA Exemption in Not Paying All Its Drivers Overtime, and Plaintiff Alleges All Drivers (Or, In The Alternative, Kentucky Medical Waiver Drivers) Were Not Subject to the MCA Exemption.

As a description of even the basics facts known so far (at the outset of the case and without the benefit of discovery) makes clear, Defendant engaged in a common policy of violating the FLSA by employing truck drivers on an "intrastate only" basis, working them overtime, and failing to pay them overtime compensation in reliance on the inapplicable MCA exemption.  Indeed, Defendant admits in this action "that Plaintiff was employed by Defendant as a truck driver, worked overtime, but was not paid overtime compensation."  Answer to Amended Complaint (Ct. Doc. 23), at response to ¶ 1 of Amended Complaint (Ct Doc. 7).  Defendant contends that the MCA exemption applied to Plaintiff's work, *id.*, and, indeed, to the work of all of its drivers.  Ct. Doc. 14-1 at 6 ("Defendant's drivers qualify for the MCA exemption as a matter of law").

Not only has Defendant admitted these facts, Plaintiff has made his own showing that other drivers were also, like Plaintiff, employed by Defendant as truck drivers, worked overtime, but not paid overtime compensation (based on the Defendant's common policy of not paying overtime compensation to truck drivers because Defendant asserted the MCA exemption applied to the work of Defendant's truck drivers).  See Declaration of Plaintiff, attached hereto as Exhibit 1 ("Plaintiff Dec.") at ¶¶ 11, 13-15; Declaration of Albert Skinner, previously filed as an Exhibit to Plaintiff's Motion for Leave to File Second Amended Complaint ("Skinner Dec."), at ¶¶ 17-18.

Where an employer subject to the FLSA[7] makes a company-wide decision to not pay an entire class of employees overtime compensation based on its assertion that a specific FLSA

---

[7]     Defendant was subject to the FLSA under "enterprise coverage" as it employed two or more employees who worked with or handled goods or materials that had moved in interstate commerce.  See 29 U.S.C. § 203(s); Amended Complaint, Ct. Doc. 7 at ¶¶ 14-16, proposed Second Amended Complaint, Ct. Doc. 31-1 at ¶¶ 12-15 (Defendant's employees handle materials that have moved in interstate commerce, such as the fuel used in the trucks they drive, and the trucks themselves); *See also Sec. of Labor v. Timberline South, LLC*, 925 F.3d 838 (6th Cir. 2019) (logging machinery used by employees constituted materials handled that had moved in interstate commerce and thus logging

exemption applies, but the plaintiff asserts that the exemption did not apply to those employees, then the plaintiff sufficiently alleges that those employees are similarly-situated to Plaintiff such that conditional certification should issue.  For instance, in an analogous situation (albeit with a different exemption), one court noted that:

> First and foremost, Plaintiffs have argued, and Defendants do not dispute, that Defendants had a custom, policy, or practice of classifying all sales representatives as exempt without performing any individualized analysis of their job duties.  Thus, Defendants have found sufficient similarity in the job duties of their sales representatives that they treat them as one homogenous group for purposes of the FLSA.  It is somewhat disingenuous, then, for Defendants to argue that they should be permitted to treat all sales representatives as one group for purposes of classifying them as exempt, but that this Court can only determine the validity of that classification [at the conditional certification stage] by looking to the specific job duties of each individual sales representative.

*Delgado v. Ortho-McNeil, Inc.*, 2007 WL 2847238 at *2 (C.D. Cal. 2007).  Courts in the Sixth Circuit similarly have found conditional certification warranted where the Defendant relies on an exemption for all the employees in question, but the Plaintiff's "modest factual showing" suggests the exemption is inapplicable.  *See Larson v. Rush Fitness*, 2012 U.S. Dist. LEXIS 189211 (E.D. Tenn. Oct. 17, 2012); *Swigart v. Fifth Third Bank*, 276. F.R.D. 210, 213 (S.D. Ohio 2011) (granting conditional certification where "all persons in the proposed collective class were subject to the same employment classification that Plaintiffs allege violates the FLSA. Fifth Third does not

---

company subject to enterprise coverage); *see also Bautista Hernandez v. Tadala's Nursery, Inc.,* 34 F. Supp. 3d 1229 (S.D. Fla. 2014) (finding trucks are "materials" for purposes of the FLSA because they were tools or article used by employer in performance of nursery business); *Burman v. Everkept, Inc.,* 2017 WL 1150664 (W.D. Mich. Mar. 27, 2017) (finding trucks and component parts used by waste collection company were "materials" for purposes of §203(s) because they were essential to employer's collection operations).  Notably, this question (of whether goods and materials used by certain of the employer's employees were moved at any time by any person in interstate commerce) is a different "interstate commerce" question than that arising under the Motor Carrier's Act, which focuses on whether the *freight* moved by the company moves in interstate commerce, and was so moved by the employee to whom the MCA exemption is alleged to apply.  *See* Ct. Doc. 22 at 4-8.  Further, even if Defendant denies that it was subject to enterprise coverage, since it applies, by definition, to Defendant's entire enterprise, Plaintiff's allegation that it applies is a sufficient allegation of a common violation of the FLSA at the conditional certification stage. *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011) ("[t]he proper inquiry [at the conditional certification stage] is simply whether plaintiffs are similarly situated **with respect to their allegations that the law has been violated**")

dispute that, prior to January 3, 2011, it classified its MLOs as exempt from the FLSA's overtime requirements").

Here, plaintiff not only has established a modest factual showing that Defendant classified all of its drivers as exempt under the MCA exemption to the FLSA, but Plaintiff also, in the following sections, makes a modest factual showing that that classification was incorrect. Defendant's blanket assertion of the MCA exemption violated the FLSA because the MCA exemption (A) is not available to Defendant (which is not an interstate carrier), (B) is factually inapposite as Defendant and Defendant's drivers did not operate in interstate commerce, and (C) is in any event is not applicable to Plaintiff and other employees legally prohibited (due to their medical status) from operating in interstate commerce.

## IV.     All of Defendant's Truck Driver Employees are Similarly-Situated to Plaintiff Because Defendant Relied on the MCA Exemption in Not Paying Employees Overtime Compensation, But the MCA Exemption Is Not Available to Defendant Because Defendant is Not an Interstate Carrier.

Specifically, Defendant's President and owner Dallas Jones, recruited truck drivers for both Defendant and a separate company, DC Transport, Inc.  Skinner Dec. at ¶¶ 1-6.  Some employees work for both Defendant and DC Transport, Inc.  *Id.*.  Defendant was known as an employer for whom truck drivers could work if they did not need a federal medical card or waiver.  Declaration of Plaintiff at ¶¶ 17-19.  However, if a driver did have a federal medical card, the driver was told that he could perform intrastate only work for Defendant, and separately drive interstate commerce trips for DC Transport, Inc.  Skinner Dec. at ¶¶ 5-6.

All of Defendant's truck driver employees are similarly-situated to Plaintiff because whether the work of *any* of Defendant's drivers could possibly be exempt under the MCA exemption turns on the threshold question of whether Defendant was an interstate carrier.  *See Sec'y of Labor v. Timberline South, LLC*, 925 F.3d 838, 850 (6th Cir. 2019) (the Secretary of

Transportation possesses the power to regulate an employee if the employee "(1) … works *for a motor private carrier that transports property in interstate commerce* and (2) [the employee's] work activities affect the safety of operation of that motor carrier"; "the dispositive inquiry is whether Timberline's drivers transport goods in interstate commerce, thus rendering Timberline a private motor carrier"); 29 C.F.R. § 782.2(a); *see* 49 U.S.C. §§ 31502(b)(2); 13102(15).

While the ultimate question of whether Defendant was or was not an interstate carrier is a merits determination that need not and should not be reached at this preliminary conditional certification stage,[8] reviewing the basics of this threshold issue demonstrates that *all* of Defendant's truck driver employees are similarly-situated to Plaintiff in connection with Plaintiff's claim that the MCA exemption did not apply to the work of Defendant's truck drivers because Defendant was not a motor carrier.

Specifically, the MCA exemption to the FLSA is contained in 29 U.S.C. § 213(b)(1), which provides that the FLSA's overtime compensation provisions "shall not apply with respect to… any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49."  49 U.S.C § 31502, in turn, provides that the Secretary of Transportation "may prescribe requirements for… qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier."  Further, "49 U.S.C. § 13501(1) limits the jurisdiction of the Secretary to 'transportation by motor carrier' between states, and between 'a

---

[8]    During the conditional certification stage, courts do not consider the merits of the claims, resolve factual disputes, or evaluate credibility. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio. 2011); *see also Lacy v. Reddy Electric Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *3 (S.D. Ohio. Dec. 9, 2011) ("Requiring any more factual support from Plaintiff at this early stage, or weighing [Defendant's] competing factual assertions, would intrude improperly into the merits of the action, essentially imposing a burden upon Plaintiff to prove the factual predicates of her claim as a precondition to obtaining preliminary conditional certification.") (internal citations omitted).

State and another place in the same State through another State.'" *Quartararo v. J. Kings Food Service Professionals, Inc.*, 2021 WL 1209716 (E.D. N.Y. March 31, 2021).[9]

Accordingly, in determining whether the MCA exemption to the FLSA applies, a preliminary issue exists relating to whether or not the employer claiming the exemption is a "motor carrier" operating in interstate commerce.  In this regard, 29 C.F.R. § 782.1 provides that:

> provisions of the Motor Carrier Act which have a bearing on the scope of section 204 include those which define common and contract carriers by motor vehicle, motor carriers, private carriers of property by motor vehicle (Motor Carrier Act, sec. 203(a) (14), (15), (16), (17), 49 U.S.C. sec. 303(a) (14), (15), (16), (17)) and motor vehicle (Motor Carrier Act, sec. 203(a)(13)); *those which confer regulatory powers with respect to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce* (Motor Carrier Act, sec. 202(a)), as defined in the Motor Carrier Act, sec. 203(a) (10), (11), and *reserve to each State the exclusive exercise of the power of regulation of intrastate commerce by motor carriers on its highways*.

*Id.* (emphasis added). Further, an employer must show that it, itself, is an interstate carrier, in addition to showing that the subject employee was involved in interstate commerce, to benefit from the MCA exemption:

> The exemption of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends both on the class to which his employer belongs and on the class of work involved in the employee's job. The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act (*Boutell* v. *Walling,* 327 U.S. 463; *Walling* v. *Casale,* 51 F. Supp. 520; and see Ex parte Nos. MC-2 and

---

[9]      *See also Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869 (3rd Cir. 2015) ("Section 31502(a)(1) applies to transportation 'described in' § 13501, which in turn gives the DOT jurisdiction 'over transportation by motor carrier ... to the extent that passengers, property, or both, are transported by motor carrier ... between a place in ... a State and a place in another State.'"; *Resch* court addresses MCA exemption, but not question of whether the defendant was "a carrier subject to the DOT's jurisdiction" as in *Resch*, the defendant was "authorized to engage in interstate commerce" and thus "subject to Federal Motor Carrier Safety Administration" and "[t]he parties agree[d] that [the defendant was] a 'motor carrier' subject to the DOT's jurisdiction"); *see also* Ct. Doc. 5-1 (Defendant itself noting that "[t]he Secretary of Transportation… has the power to regulate employees of motor carriers… *when interstate shipments are involved*) (emphasis added), *citing* 49 U.S.C. § 31502 and 31501 (in context of Defendant seeking to conflate different interstate commerce tests under the MCA and FLSA to advance Defendant's argument at the time that FLSA coverage of a trucking company meant that FLSA exemption automatically occurred under the MCA exemption to the FLSA).

MC-3, in the Matter of Maximum Hours of Service of Motor Carrier Employees, 28 M.C.C. 125, 132), and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act. *United States* v. *American Trucking Assns.,* 310 U.S. 534; *Levinson* v. *Spector Motor Service,* 330 U.S. 649; Ex parte No. MC-28, 13 M.C.C. 481; Ex parte Nos. MC-2 and MC-3, 28 M.C.C. 125; *Walling* v. *Comet Carriers,* 151 F. (2d) 107 (C.A. 2).

29 C.F.R. § 782.3; *see also* 29 C.F.R. § 782.2(d) ("[t]he limitations… on the regulatory power of

the Secretary of Transportation (as successor to the Interstate Commerce Commission) under

section 204 of the Motor Carrier Act are also limitations on the scope of the [MCA] exemption.

Thus, the exemption does not apply to employees of carriers who are not carriers subject to his

jurisdiction…. (*Boutell* v. *Walling,* 327 U.S. 463; *Walling* v. *Casale,* 51 F. Supp. 520).

Accordingly, where a trucking company registers with the federal government as an

"intrastate only" carrier,[10] and thereby asserts that the employer is *not* engaged in interstate

commerce under the federal Motor Carrier's Act (and thus not subject to federal jurisdiction), the

employer is not a carrier entitled to assert the FLSA's MCA exemption to avoid paying overtime

compensation to its employees. *D'Arpa v. Runway Towing Corp.*, 2013 WL 3010810 (E.D. N.Y.

2013); *see also Quartararo v. J. Kings Food Serv. Prof'ls*, 2021 WL 1209716 at *9 ("[a] company's

compliance with … USDOT regulations, such as vehicle registrations, often weighs in th[e]

---

[10]      Intrastate-only trucking companies are not required by federal law to register with the federal government or obtain a United States Department of Transportation number; however, many states, including Kentucky, require such intrastate companies to obtain a federal DOT number.  See Kentucky Transportation Cabinet "Intrastate Carriers" webpage, attached hereto as Exhibit  2 (also available online at https://drive.ky.gov/motor-carriers/Pages/Intrastate-Carrier.aspx) (last checked August 23, 2021); *see also D'Arpa,* 2013 WL 3010810 at *10 ("in certain states, including New York, 'all registrants of commercial motor vehicles, *even intrastate* and non-Motor Carrier registrants, are required to obtain a USDOT Number as a necessary condition for commercial vehicle registration") (emphasis that of *D'Arpa* court), citing FMCSA website; *Do I Need a USDOT Number?*, FMCSA, U.S. Dept. of Transportation (available online at  https://www.fmcsa.dot.gov/registration/do-i-need-usdot-number; copy of last version checked online (of July 5, 2021) also attached hereto as Exhibit 3) ("[a]part from federal regulations, some states require their intrastate commercial motor vehicle registrants to obtain a USDOT Number. These states include… Kentucky"). Accordingly, to meet the requirements of state law, a trucking company may apply to the federal government for a US DOT number, but may do so while indicating that it is applying as "intrastate only."  See Ct. Doc. 28-4 and 31-2 (Form MSC-150) and footnote 16 below.

analysis" of whether its employees are subject to the MCA exemption; considering that defendant in *Quartararo* was "registered with, and regulated by the FMCSA, a branch of the USDOT, and … *had operating authority to transport goods in interstate commerce*" (emphasis added)).

In *D'Arpa*, the Court had before it in evidence "Company Snapshots" from the Federal Motor Carrier Safety Administration's SAFER system[11] showing that the employer had registered with the FMCSA as an "Intrastate Only" company until 2013, when it registered with the FMCSA as "Interstate." 2013 WL 3010810 at *10. The plaintiffs before the *D'Arpa* court had all worked for the defendant exclusively during the pre-2013 period (i.e., during the period when it had registered with the FMCSA as "Intrastate Only"), *id.* at *5, and the complaint had also been filed during that period. *Id at *3*. Based on this fact, the Court concluded that the Plaintiffs should prevail at the summary judgment stage[12] because the MCA exemption to the FLSA did not apply to the defendant employer, writing that:

---

[11]     The *D'Arpa* court noted that:

> The FMCSA's "Company Snapshot" is "a concise electronic record of a company's identification, size, commodity information, and safety record, including the safety rating (if any), a roadside out-of-service inspection summary, and crash information." Safety and Fitness Electronic Records (SAFER) System, FMCSA, U.S. DEPT TRANSPORTATION, http://safer.fmcsa.dot.gov/companysnapshot.aspx (last visited June 12, 2013). The Company Snapshot is available to the public via the FMCSA's website.

*D'Arpa*, 2013 WL 3010810 at * 10, fn. 25. The FMCSA still provides the same explanation at the same website. See Ct. Doc. 31-3 (same website, last visited August 23, 2021).

[12]     Unlike Defendant here (Plaintiff sought Defendant's agreement to conditional certification, but Defendant did not respond, see, e.g., Ct. Docs. 28-1, 31-10), the defendant in *D'Arpa* had already stipulated to the issue of a notice being sent to similarly-situated employees (conditional certification). *D'Arpa*, 2013 WL 3010810 at * 17. However, the *D'Arpa* court granted, based on the evidence that the defendant had described itself as "intrastate only" the plaintiff's post-discovery motion for a ruling that the plaintiffs were similarly-situated (in effect a preemptive motion for denial of any motion for de-certification, which the Court noted was "unusual in that the second inquiry [regarding whether employees are similarly-situated in an FLSA case] is 'generally precipitated by a defendant's motion for decertification'"). *Id.* at * 17, fn. 33, *quoting Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D 363, 367 (S.D. N.Y. 2007). The court also granted the plaintiffs' class certification under Rule 23 of their claims under state law. *Id.* at *18-22. In the present case, evidence that Defendant, like the employer in *D'Arpa*, itself certified to the FMCSA that it was "intrastate only" will be relevant in later summary judgment and state law class certification proceedings. However, it is important to recall that this case is only at the conditional certification stage. At this preliminary stage, Plaintiff here need only meet a "modest showing" at this conditional certification stage that a similar policy applied to the employees. *Lewis v. Huntington Nat. Bank*, 789 F.Supp.2d 863, 867 (S.D. Ohio 2011).

Defendants' only evidence[13] in support of the interstate transportation requirement is its own representations to DOT during the period it employed Plaintiffs. These representations were that its operations involved *intrastate* transportation only. Accordingly, I find the motor carrier exemption to be inapplicable to Defendants and deny summary judgment to Defendants on Plaintiffs' FLSA overtime claim on this ground.

*Id.* at *11 (emphasis that of *D'Arpa* court).

Here, like the employer in *D'Arpa*, Defendant has certified to the FMCSA that its entire operation is "Intrastate Only." See Ct. Doc. 31-4 (Company Snapshot for Defendant); 28-2 (same);[14] Ct. Doc 31-1 (proposed Second Amended Complaint) at ¶ 44 (and, more generally, ¶¶ 20-50). This is in stark contrast to the representations made by DC Trucking, Inc. and DC Transport, Inc, companies under common ownership with, and with the same officers and principal office address of, Defendant.[15] Skinner Dec. at ¶¶ 1-4. Each of DC Trucking, Inc. and DC Transport, Inc. represented to the FMCSA that they were engaged in "Interstate" operations. Ct. Doc 31-1 (proposed Second Amended Complaint) at ¶¶ 46-48; Ct. Doc. 31-5 (DC Trucking, Inc. Company Snapshot); Ct. Doc. 28-3 (same); Ct. Doc. 31-6 (DC Transport, Inc. Company Snapshot).

Moreover, the SAFER system "Company Snapshot" information did not appear from thin air. Instead, FMCSA inputs the "company's identification" from information holders of U.S.

---

Defendant's policy of not paying overtime based on its belief that the MCA exemption applied, while at the same time certifying to the FMCSA that it was an "intrastate only" operation not subject to federal jurisdiction, is more than sufficient to meet this minimal burden, and notice should promptly issue to the similarly-situated employees.

[13]    It is worth recalling that the burden of establishing the applicability of (and thus the facts underlying) an exemption to the FLSA is on the employer. *Timberline South*, 925 F.3d at 850.

[14]    This information is also available free of charge online on the FMCSA SAFER website. See footnote 11 above; http://safer.fmcsa.dot.gov/companysnapshot.aspx (last visited August 23, 2021).

[15]    The Kentucky Secretary of State information for Defendant, DC Transport, Inc. and DC Trucking, Inc. is attached hereto as Exhibits 4, 5 and 6. DC Transport, Inc. and DC Trucking, Inc both list the same principal place of business and list Dallas Jones (Defendant's namesake, registered agent, and President) as President and Registered Agent. *Id.*

Department of Transportation numbers are required to submit on a specific document: FMCSA Form MCS-150.  Ct. Doc. 31-3; Ct. Doc. 28-4 (FMCA Form MCS-150); Ct. Doc. 31-2 (same); Ct. Doc. 31-1 (proposed Second Amended Complaint) at ¶¶ 42-43.  Specifically, FMCSA provides a combined document consisting of both instructions and a form for applying for a new U.S. Dept. of Transportation number or bi-annual renewal of an existing number.  Ct. Doc. 31-1 at ¶ 24; Ct. Doc. 31-2 (form of MCS-150 and instructions); Ct. Doc. 28-4 (same). [16]

On or about April 19, 2021, while this litigation was pending, Defendant used this form of Form MCS-150 to submit a Form MCS-150 to FMCSA.  Ct. Doc. 31-4 (Company Snapshot for Defendant); 28-2 (same); Ct. Doc. 31-1 at ¶¶ 27-28.[17]  The Form MCS-150 was submitted under

---

[16]      This form is also online at the FMCSA website at the following address (last visited August 23, 2021): https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2021-06/MCS-150%20Form%2012-14-20%20exp%20508.pdf

[17]      Plaintiff has requested Defendant's Form MCS-150 from FMCSA pursuant to the Freedom of Information Act; FMCSA has responded that the form MCS-150 will be produced in "up to 5 months."  See FMCSA FOIA Act Request Acknowledgement, attached hereto as Exhibit 7.  Under these circumstances, given the content of the Company Snapshot, that Plaintiff has alleged upon information and belief that Defendant submitted a form MCS-150 containing the information in the Company Snapshot, and that conditional certification may be based on the allegations of the complaint alone (*see Pritchard v. Dent Wizard Int'l Corp.*, F.R.D. 591, 595-596 (S.D. Oh. 2002); *Belcher v. Shoney's, Inc.*, 927 F. Supp 249, 251 (M.D. Tenn. 1996), the Court should find the MCS-150 was submitted in accordance with the Company Snapshot and the allegations of the Second Amended Complaint (Ct. Doc. 31-1), especially if Defendant, who has a copy of this form, chooses not to produce it in response to this motion.  Indeed, if Defendant fails to provide its Form MCS-150 documents, the Court appropriately should find that the "missing evidence" rule provides additional evidence in Plaintiff's favor supporting the "modest factual showing" necessary for conditional certification, as

> The failure to bring before the tribunal some circumstances, document, or witness, when either the party himself of his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party.

2 J. Wigmore, Evidence, § 285 (3d Ed. 1940); *see also Smith v. U.S.*, 128 F. Supp 2d 1227, 1232 (E.D. Ark. 2000); *UAW v. NLRB*, 459 F. 2d 1329, 1339 (D.C. Cir. 1972).  Stated another way,

> If a party fails to produce evidence that is under that party's control and reasonably available to that party and not reasonably available to the adverse party, then [a finder of fact] may infer that the evidence is unfavorable to the party who could have produced it and did not.

3 Kevin O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions § 104.27 (5th Ed. 2000).

penalty of perjury.  Ct. Doc. 31-1 at ¶ 31;  Ct. Docs. 28-4 and 31-2 (FMCA Form MCS-150) at last page, ¶ 31 (Certification Statement).

In doing so, Defendant first received and review the instructions.  Ct. Doc. 28-4 and 31-2 at PDF pages 1 through 8 (numbered-at-the-bottom-of-the-page pages i through viii); Ct. Doc. 31-1 at ¶ 29.  Those instructions expressly state that Defendant should "check" or "select" "all that apply" from among the list of categories of "Company Operations" shown in Section 22, which included a category of "Interstate Carrier" and a separate category of "Intrastate Non-Hazmat Carrier".  Ct. Doc. 31-1 at ¶ 31; Ct. Doc. 28-4 (FMCA Form MCS-150) at instructions page iii[18] (instructions for § 22), Form MCS Page 1,[19] § 22; Ct. Doc. 31-2.

The instructions to Section 22 of Form MCS-150 expressly stated that Defendant should check "Interstate Carrier" under the following circumstances:

A.      Interstate Carrier – The company is an Interstate Carrier if any part of its operation transports property or passengers in support of interstate commerce, i.e., the property or passengers cross State lines either before the company received them, while the company is transporting them, or after the company has transferred the property or passengers.  The transportation of the property or passengers may include transport by plane, train, or boat in addition to the company's commercial motor vehicle.  For example: if the origination and destination indicated on the bill of lading – when one exists – are not in the same State, then the shipment is interstate and the company needs to be registered as an Interstate Carrier.

The company is also considered to be an Interstate Carrier if the property or passengers being transported will ever do ANY of the following:

- Cross State lines (including a place outside the United States)
- Move from the United States or a U.S. territory to a foreign country, or vice versa
- Have origination and destination points within a State, but pass through another State or foreign country during transport.

---

[18]      Page ID # 556.
[19]      Page ID # 562.

Ct. Doc. 31-1 at ¶ 35; Ct. Doc. 28-4 (FMCA Form MCS-150) at instructions page iii[20] (instructions for § 22); Ct. Doc. 31-2.

Defendant included on the MCS-150 a check in Section 22 to the box labelled "Intrastate Non-Hazmat Carrier"; **Defendant did not check "Interstate Carrier."**  Ct. Doc. 31-4 (Company Snapshot for Defendant); 28-2 (same); Ct. Doc. 31-1 at ¶¶ 36-37.   Further, Defendant listed a number of drivers (specifically, 28) only under the "Intrastate" column of section 27 of the Form MCS-150, and included no number of drivers or a zero under the "Interstate" column of section 27.

In other words, upon information and belief, Defendant represented to FMCSA under penalty of perjury that Defendant itself and each and every one of its drivers were **not** involved in interstate commerce.  It has submitted similar forms prior to and throughout the time Plaintiff was employed with Defendant.   Ct. Doc. 31-1 at ¶ 26; Ct. Doc. 28-4 (FMCA Form MCS-150) at instructions page i (biennial completion of Form MCS-150 required).

By registering with the federal government as "intrastate only," Defendant avoided the requirements applicable to carriers registered as interstate with the federal government, including being subject to federal DOT audits, *see*, e.g., *Walters v. American Coach Lines of Miami, Inc.*, 576 F.3d 1221, 1227 (11th Cir. 2009), being required to have drivers pass an initial federal DOT drug test and be subject to random testing thereafter, to pay a DOT-required medical examination every two years, perform DOT-mandated inspections, pass a DOT-required road test, pass a DOT written examination, and maintain (while driving) DOT-required logs, *See, e.g., Guyton v. Schwan Food Co.*, 2004 WL 533942 (D. Minn. 2004).

---

[20]         Page ID # 556.

In short, Defendant wants to have it both ways.  When it registered with the federal government, it told the federal government that Defendant was "intrastate only" so that Defendant would not have to comply with federal regulations in connection with its Kentucky-based business.[21]  At the same time, its owners had DC Trucking, Inc. and DC Transport, Inc. register as "interstate" so that the profit associated with any interstate business (if it was substantial enough to justify that separate company complying with federal regulations) would not be missed and could be steered to those companies.[22]

Now, however, when Plaintiff, who worked solely for Defendant (and not for DC Trucking, Inc. or DC Transport, Inc.)[23] has filed suit seeking overtime compensation on behalf of himself and other employees, Defendant has asserted, contrary to its representations to the FMCSA, that it is an interstate carrier with employees operating in interstate commerce and thus can assert the MCA exemption to the FLSA.[24]

---

[21]     Consistent with the representations on the MCS-150, Defendant's management acknowledged to an employee that Defendant did not have permits or insurance to engage in interstate commerce trucking, and only had to follow Kentucky regulations, not federal regulations. Skinner Dec. at ¶¶ 12, 16.

[22]     Plaintiff alleged in his Amended Complaint, based on his understanding at the time, that Defendant had other drivers driving in interstate commerce.  See Amended Complaint, Ct. Doc. 7, at ¶ 31.   Defendant denied this allegation, Ct. Doc. 23 at response to ¶ 31, and Plaintiff now believes (in light of Plaintiff's discovery that Defendant held itself out to FMCSA as "intrastate only" and after discussions with an employee who worked intrastate for Defendant and interstate for DC Transport, Inc.) that his initial understanding of the assignment of interstate work to other driver employees of Defendant was mistaken; specifically, it appears (especially given the FMCSA representations) that instead of assigning Defendant's own employees to run interstate routes, Defendant's management, consistent with Defendant's "Intrastate Only" representation to the FMCSA, assigned all interstate work to employees of the separate, non-defendant "interstate" DC Trucking, Inc. and DC Transport, Inc.  See Ct. Doc. 31; Skinner Dec. at ¶ 1-5, Plaintiff Dec. at ¶¶ 20-24.  In this regard, it should be noted that Plaintiff does not and has never sought conditional certification as to employees of DC Trucking, Inc. or DC Transport, Inc. for the employees' work for those entities.

[23]     Plaintiff could not perform interstate work for DC Trucking, Inc. or DC Transport, Inc. because of his particular license situation.  See Section VI below.  Drivers who worked for both Defendant and one or more of DC Trucking, Inc. or DC Transport, Inc are similarly-situated to Plaintiff with respect to their work for Defendant.

[24]     Indeed, even if Defendant could show (contrary to the factual allegations of the Amended Complaint) that it had its drivers operate in interstate commerce without being legally authorized to do so (a merits decision which the Court should not reach at this conditional certification stage), Defendant should be held to be estopped from benefiting from the MCA exemption by claiming in this action that its employees operated in interstate commerce.  The reason Defendant should be so estopped is that Defendant has consistently represented to the federal government that it and

The Court does not need to determine at this preliminary stage whether or not Defendant's representation to the FMCSA (that it is "Intrastate Only") is conclusive of its ability to claim, during the later, merits phase of the proceedings, that it is an interstate carrier entitled to the MCA exemption. However, Defendant, in reliance upon the MCA exemption,[25] decided not to pay Plaintiff and its other truck driver employees overtime compensation. Since Defendant's own representations to FMCSA, if true, would make all of Defendant's drivers entitled to overtime compensation (and would make the MCA exemption wholly inapplicable), the Court should find based on these facts alone that Plaintiff has sufficiently alleged and identified a common-amongst-all-employees violation of the FLSA by Defendant. Defendant's own representations under penalty of perjury are for more than the "modest factual showing" needed at this stage. Thus, notice is justified to all employees so that they can be aware of this action and their right to opt-in to the action, should they so desire.

## V.     Defendant's Employees Are Similarly-Situated Because They In Fact Did Not Drive in Interstate Commerce.

Further, setting aside Defendant's own status (and its representations regarding their own status), Plaintiff and the other drivers of Defendant are similarly-situated because they did not drive in interstate commerce, and a driver "is not exempt if his job never involves transportation

---

its employees are *not* operating in interstate commerce, thereby avoiding the federal regulatory scrutiny associated with interstate carriers. Having obtained that benefit from the regulator by saying (under penalty of perjury, no less) it *is not* an interstate carrier, Defendant should not now be permitted to argue that it *is* an interstate carrier and therefore protected by the MCA exemption. *Schultz v. Hydro-Gear Ltd. P'ship*, 202 WL 3527068 (W.D. Ky 202) (the doctrine of judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship"), *quoting Browning v. Levy*, 283 F. 3d 761, 776 (6th Cir. 2002). However, whether or not judicial estoppel applies is, like the underlying question of whether any of Defendant's employees operated in interstate commerce contrary to Defendant's representations, a merits determination that should be reserved for later decision.

[25]     Defendant itself has asserted that it is a "small company" and that it considers that its theories about the MCA exemption apply to "Defendant's drivers," not merely to Plaintiff alone. Ct. Doc. 17 at 5, Ct. Doc. 14-1 at 6 ("Defendant's drivers qualify for the MCA exemption as a matter of law").

in interstate or foreign commerce within the meaning of the Motor Carrier Act." *49 C.F.R. 782.3(b),* citing 49 C.F.R §§ 782.2 (d) and (e), 782.7, and 782.8; *see also Mazzarella v. Fast Rig Support, LLC,* 823 F.3d 786, 789-790 and 792 (3d Cir. May 23, 2016) (finding employer did not meet burden of showing driver employees drove in interstate commerce when they transported water used at oil "fracking" wells despite employer's own status as having obtained[26] "certificate issued by the [U.S.] Department of Transportation authorizing [the employer] to 'engage' in transportation as a common carrier… in interstate… commerce,'" noting that "[t]he DOT certificate merely authorizes Defendant to engage in interstate commerce.  It provides no information about whether Defendants' drivers actually drove across state lines or otherwise engaged in interstate commerce").

Here, Plaintiff and other driver employees of Defendant drove products solely in Kentucky. Plaintiff's Dec. at ¶¶ 1-12; Skinner Dec. at ¶¶ 4(A), 19-20.  Employees were never called upon to drive coal outside of Kentucky.  Plaintiff's Dec. at ¶ 2; Skinner Dec. at ¶ 20.

Further, the materials being transported was not in a solely-Kentucky leg of a larger interstate-commerce trip; to the contrary, the materials originated in Kentucky and were destined for Kentucky destinations.  Plaintiff's Dec. at ; Skinner Dec. at ¶¶ 21-22.  Examples include (a) transportation of coal from a Kentucky coal mine to a Kentucky coal-fired power plant (see Ct. Doc. 31-1 at ¶ 63; Plaintiff's Dec at ¶ 67; Skinner Dec at ¶ 19); (b) driving coal from a Kentucky coal mine to a barge facility to be loaded later into a nearby Kentucky coal-powered power plant using its barge coal-intake equipment plant (see Ct. Doc. 31-1 at ¶ 67; Plaintiff's Dec at ¶ 8;

---

[26]     Here, of course, unlike the employer/defendant in *Mazzarella*, Defendant did not obtain authorization from the U.S. Department of Transportation to engage in interstate commerce.  See Section IV above.  However, the point is noted to illustrate that the exemption is also unavailable for the separate, equally exemption-depriving fact that none of the employees in question actually drove in interstate commerce.

Skinner Dec at ¶ 21), (c) driving coal from a coal mine to a facility where it was mixed with other grades or layers of coal (Skinner Dec. at ¶ 19) and (d) transportation of the after-product of a Warren County, Kentucky wastewater treatment facility[27] to a landfill in White Plains, Kentucky. Plaintiff's Dec. at ¶ 12.

These facts sufficiently allege that Defendant misclassified its employees because those employees did not drive in interstate commerce.   Notably, Defendant bears the burden of establishing that an exemption to the FLSA applies, and, thus, where an employer contends employees operated in interstate commerce and were subject to the MCA exemption, the employer bears the burden of establishing that the freight being moved was moving in the stream of interstate commerce.  *Mazzarella v. Fast Rig Support, LLC*, 823 F.3d 786 (3d Cir. May 23, 2016) (upholding finding at trial that drivers who drove *intra*state transporting water to and from fracking wells within Pennsylvania not covered by the motor carrier exemption).

Moreover, because conditional certification precedes the completion of discovery, Defendant's denials nevertheless would not negate that Plaintiff has made a modest factual showing (even setting aside and in addition to Defendant's own representations to the federal Department of Transportation, [28] discussed in Section IV above) that Plaintiff and the similarly-situated engaged in truck driving work that did not constitute work in interstate commerce.

---

[27]    This "product" was not in commerce at all, but was certainly not in interstate commerce.

[28]    Plaintiff respectfully submits that, if Defendant asserts in this action it operated in interstate commerce, the Department of Transportation should investigate Defendant's contrary assertions, as such allegations in this case and the representations to the Department of Transportation simply cannot both be true.  To be clear, Plaintiff contends in this action that Defendant's representations to the Department of Transportation (that it and its drivers were not involved in interstate commerce) were correct; however, to the extent Defendant takes the opposite position and prevails in this action, it should have to answer to the Department of Transportation regarding its representations to the Department of Transportation and failure to comply with federal regulations in connection with its operation.

Accordingly, the Court should authorize notice to be sent to all of Defendant's truck driver employees.  A proposed notice is submitted herewith as Exhibit 8.  A proposed form of consent is attached hereto as Exhibit 9.

### VI.      All of the Employees of Defendant Who, Like Plaintiff, Had Medical Waivers Permitting Work in "Intrastate Commerce Only" are Similarly-Situated to Plaintiff.

In the alternative,[29] to the extent the Court finds that Defendant's own assertion that its entire operation is "intrastate commerce only", along with Plaintiff's other evidence that all truck driver employees drove only in intrastate commerce, does not sufficiently show or allege at this preliminary stage a common-to-all-employees violation of the FLSA, Defendant's actions toward employees individually licensed for "intrastate commerce only" is certainly common to all such employees.

Specifically, following his diabetes diagnosis, Plaintiff lost his medical certification that allowed him to drive commercial motor vehicles in interstate commerce.  However, he was able to submit an application to the Kentucky Transportation Cabinet for a state medical waiver under Kentucky's medical waiver program developed specifically for drivers who do not qualify under federal law to drive in interstate commerce. 601 K.A.R. 11:040.

Defendant knew that Plaintiff was applying for a waiver for "Intrastate Commerce Only" because Defendant itself joined in and signed Plaintiff's application.  See Ct. Doc. 31-1 at ¶¶ 80-82 and Ct. Doc. 31-7 (Request for Medical Waiver (Intrastate Operation Only), signed by both

---

[29]      In the event the Court grants conditional certification for all of Defendant's employees for the reasons in Sections IV and V above, the question of the similarities between Plaintiff and other Kentucky "Intrastate Only" Medical Waiver holder employees of Defendant would be moot, as those employees would be part of the group proposed for the reasons in Section IV and V above.  Accordingly, the principal proposed notice (Exhibit 8) does not address the Medical Waiver theory; Plaintiff proposes that the Medical Waiver theory be included in the notice only if the Court conditionally certifies only those employees of Defendant who, like Plaintiff, had Kentucky "Intrastate Only" medical waivers.

Plaintiff and Defendant).   And the waiver, when issued, specifically notes that it is valid "in Intrastate Commerce Only."  Ct. Doc. 7-2.

Other employees of Defendant were, like Plaintiff, not legally authorized to drive in interstate commerce but able to drive under the Kentucky medical waiver program "in Intrastate Commerce Only."   Plaintiff's Dec. at ¶¶ 17-20.   These persons are known to Defendant and similarly-situated to Plaintiff in that their "Intrastate Only" work was necessarily not work in interstate commerce and thus could not have been covered under the MCA exemption.

On this point, the Court previously noted that "it is not immediately clear that Kentucky's medical exemption regulation, *see* 601 Ky. Admin. Regs. 11:040, tracks the Department of Transportation's definition of 'intrastate commerce.'"  Ct. Doc. 22 at 2, fn. 1.  However, review indicates it does.  601 K.A.R. 11:040, which provides for Kentucky "intrastate only" medical waievrs, contains the following note relating to its "necessity, function and conformity," that:

> The federal requirements for the issuance of a commercial driver's license to a driver operating in interstate commerce include a certification that the driver meets the qualification requirements contained in 49 C.F.R. 391. The Federal Highway Administration does not require a person who operates entirely in intrastate commerce to be subject to 49 C.F.R. 391. He is subject however, to Kentucky driver qualification requirements. In 601 KAR 1:005 the Transportation Cabinet adopted the majority of the driver qualification requirements of 49 C.F.R. Part 391 on both an interstate and intrastate commerce basis. However, medical waivers in addition to those allowed in 49 C.F.R. 391.49 are allowed by the Federal Highway Administration for drivers operating exclusively in intrastate commerce. This administrative regulation sets forth the procedure and standards for obtaining an intrastate medical waiver.

In other words, Kentucky provides medical waivers to truck drivers who are "intrastate only" explicitly in reference to those drivers who are *not* subject to 49 C.F.R. 391, that is, those drivers who are not operating in interstate commerce under federal law.[30]

---

[30]      Similarly, federal guidance likewise recognize that state laws are keyed-to and designed to "pick up" where the federal regulations "left off":

Accordingly, if the Court does not authorize notice to all of Defendant's employees based upon Defendant's representations to the federal government that Defendant itself was an "intrastate only" operation, the Court should authorize notice to all persons employed by Defendant with Kentucky medical waivers that restricted them to driving "in Intrastate Commerce Only." If the Court rejects notice to all employees, but approves notice to all employees with Kentucky "Intrastate Only" medical waivers, a proposed form of notice for that purpose is attached hereto as Exhibit 11.

## Conclusion

Applying these principles, this Court should find that Plaintiff has met his lenient burden of demonstrating that Plaintiff and all other truck driver employees of Defendant are similarly situated, and order that notice be issued promptly so all individuals have a chance to opt-in to this lawsuit and toll the statute of limitations on their claims. Though the parties have not yet exchanged discovery, the record already contains a sufficient factual basis, as set forth above, to support Plaintiff's allegation of common FLSA violations by Defendant that affect numerous employees.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
P.O. Box 869

---

If you are operating in intrastate commerce only, the Federal hours-of-service regulations do not apply to you. However, most States have regulations that are similar or identical to the Federal regulations. To determine what State safety requirements you must follow, you should contact the appropriate State agency.

Federal Motor Carrier Safety Administration, *Interstate Truck Driver's Guide to Hours of Service*, Exhibit 10 hereto (also available online (last checked August 24, 2021) at https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/Drivers%20Guide%20to%20HOS%202015_508.pdf)

Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date indicated on the Court's CM/ECF notice of filing, this document was filed through the Court CM/ECF filing system.

/s/ Mark N. Foster_____
Mark N. Foster