UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:20-CV-00201-JHM

JOHNNY MCCLURG                                                    PLAINTIFF

V.

DALLAS JONES ENTERPRISES INC.
d/b/a Clay's Trucking                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Certify Class [DN 32], Plaintiff's

Motion to Stay Discovery Pending Ruling on Plaintiff's Motion for Conditional Certification [DN

33], Defendant's Motion to Permit Expedited Discovery Prior to Ruling on Motion for Collective

Certification [DN 43], and Defendant's Motion to Strike Proposed Notice Forms [DN 45].  Fully

briefed, these matters are ripe for decision.

### I. BACKGROUND

According to his Second Amended Complaint, Plaintiff Johnny McClurg is a commercial

truck driver.  [DN 41 ¶ 19].  He was diagnosed with diabetes in 2007.  [*Id*. at ¶ 76].  Federal and

state regulations prevent individuals with diabetes from driving commercial motor vehicles unless

they obtain a medical waiver.  *See* 49 C.F.R. § 391.41(b)(3); 601 Ky. Admin. Regs. 1:005.

McClurg obtained a medical waiver from the Commonwealth of Kentucky but did not obtain a

medical waiver from the federal Department of Transportation.  [DN 7 ¶¶ 78, 79].  McClurg's

Kentucky medical waiver states that it is valid in "Intrastate Commerce only."  [*Id*. at ¶¶ 83–84;

DN 7-2].  Because that is the only medical waiver he obtained, McClurg could only drive in

"intrastate commerce."

After McClurg's diabetes diagnosis, Defendant Dallas Jones Enterprises, a Kentucky-based trucking company, hired McClurg. [DN 7 ¶ 85]. Dallas Jones hired McClurg fully aware of his medical restrictions and that he could only drive in "intrastate commerce." [*Id*. at ¶¶ 84–86]. Dallas Jones only assigned McClurg to routes within the state of Kentucky. [*Id*. at ¶ 88]. McClurg performed this work along with Dallas Jones's other drivers. [*Id*. at ¶¶ 87–88]. Dallas Jones filed Form MCS-150 with the United States Department of Transportation Federal Motor Carrier Safety Administration ("FMCSA") that it and its drivers did not operate in interstate commerce and instead operated "intrastate" only. [*Id*. at ¶¶ 21, 23]. As a result, Dallas Jones is not an interstate carrier and not authorized to operate in interstate commerce. [*Id.*]. Two sister companies of Dallas Jones, specifically DC Trucking, Inc. and DC Transport, Inc., hire drivers that operate in interstate commerce and hired employees of Dallas Jones as well. [*Id.* at ¶¶ 46–49].

Throughout McClurg's employment, Dallas Jones paid him on a "per-ton basis"—a flat fee for every ton of coal transported. [*Id*. at ¶¶ 90–92]. But McClurg would sometimes work more than forty hours in a week, and Dallas Jones did not increase his fee on those deliveries. [*Id*. at ¶¶ 93–94]. Believing he was entitled to overtime when he worked more than forty hours in a week, McClurg sued. His Second Amended Complaint asserts two causes of action: a federal claim for unpaid overtime under the Fair Labor Standards Act ("FLSA") and a state law claim under the Kentucky Wage and Hour Act ("KWHA"). [*Id*. at ¶¶ 95–117]. He also seeks to represent a collective (for the FLSA) and class (for the KWHA) of similarly situated plaintiffs.

McClurg now moves to conditionally certify a collective of truck drivers who worked for Dallas Jones and were subject to the Fair Labor Standards Act, so he can send court-authorized notice to potential plaintiffs and give them an opportunity to opt into the action. [DN 32]. McClurg

also seeks to stay discovery until this motion is ruled upon.  [DN 33].  Dallas Jones not only objects to certification of the collective, but also seeks discovery prior to the Court ruling on the conditional certification [DN 43] and seeks to strike the proposed notice forms tendered by McClurg [DN 45].

## II. STANDARD OF REVIEW

The FLSA permits an employee to bring a collective action on behalf of "similarly situated" employees.  29 U.S.C. § 216(b).  Unlike a Rule 23 class action, however, an FLSA collective action does not provide "opt out" procedures.  *See Rogers v. Webstaurant, Inc.*, No. 4:18-CV-74-JHM, 2018 WL 4620977, at *1 (W.D. Ky. Sept. 26, 2018) ("A collective action under the FLSA permits similarly situated employees to 'opt-in' to the action, unlike the opt-out approach typically utilized under [Rule] 23.").  Instead, any employee that wishes to join the FLSA collective action must opt into the litigation—he or she must give written consent filed with the court.  29 U.S.C. § 216(b).

The FLSA provides limited guidance about the inclusion of opt-in plaintiffs.  The statute requires only that opt-in plaintiffs are "similarly situated" to the lead plaintiff.  *Id*.  In lieu of statutory guidance, the Supreme Court acknowledged that district courts possess broad discretion to manage the joinder of opt-in plaintiffs.  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("We hold that district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs.").  A district court may use that discretion to "authorize notification of similarly situated employees to allow them to opt into the lawsuit."  *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

Before a court may authorize notice to prospective opt-in plaintiffs, it must "consider whether plaintiffs have shown that the employees to be notified are, in fact, similarly situated."

*Comer*, 454 F.3d at 546 (quotation omitted).  The "similarly situated" inquiry requires the court to analyze several factors, many of which require discovery.  *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) (outlining the "similarly situated" factors), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).   Thus, there is understandable tension between a plaintiff's desire to notify other potential plaintiffs early in litigation and the fact-intensive nature of the "similarly situated" inquiry.

District courts developed a two-step certification process to alleviate this tension.  The first step, which occurs at the start of discovery, requires a plaintiff to make a "modest factual showing" that "his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)).  This step is known as "conditional certification."   *White v. Baptist Mem'l Health Care*, 699 F.3d 869, 877 (6th Cir. 2012).  It is a "fairly lenient standard, and typically results in conditional certification of a representative class."  *Comer*, 454 F.3d at 547 (quotation omitted).  The only practical significance of conditional certification is that the plaintiff can notify prospective opt-in plaintiffs.  *See Hall v. Gannett Co.*, No. 3:19-CV-296, 2021 WL 231310, at *2 (W.D. Ky. Jan. 22, 2021) ("The point [of conditional certification] is to inform potential members of the collective action at the outset . . . .").  The second step is final certification; it occurs "after all class plaintiffs have decided whether to opt-in and discovery has concluded."  *White*, 699 F.3d at 877.  At this step, courts "examine more closely the question of whether particular members of the class are, in fact, similarly situated."  *Comer*, 454 F.3d at 547.

Neither statute nor court rule requires a district court to use a two-step certification process. Nor is it required by Sixth Circuit precedent—the Sixth Circuit has recognized, but never required, district courts' use of the two-step procedure.   *See White*, 699 F.3d at 877 ("District courts

determine whether plaintiffs are similarly situated in a two-step process . . ."); *Comer*, 454 F.3d at 546–47 (recognizing that the district court applied the two-step process, but never stating it was required).   Yet two-step certification remains common, both within this district and around the nation.   *See, e.g.*, *York v. Velox Express, Inc.*, 524 F. Supp.3d 679, 685 (W.D. Ky. Mar. 10, 2021); *Hall*, 2021 WL 231310, at *2–4; *Marcum v. Lakes Venture, LLC*, No. 3:19-CV-231, 2020 WL 6887930, at *2–3 (W.D. Ky. Nov. 24, 2020); *Jones v. H&J Rest., LLC*, No. 5:19-CV-105, 2020 WL 759901, at *2–3 (W.D. Ky. Feb. 14, 2020); *Johnston v. J&B Mech., LLC*, No. 4:17-CV-51-JHM, 2017 WL 3841654, at *2–3 (W.D. Ky. Sept. 1, 2017); *Canaday v. Anthem Co*., 441 F. Supp. 3d 644, 653 (W.D. Tenn. 2020).

### III. DISCUSSION

#### A.  Two-Step Certification, *Swales*, and Discovery

As discussed above, two-step certification is the most common method for notifying the collective in FLSA actions.   But Dallas Jones asks the Court to follow a different path.   Rather than decide conditional certification now, Dallas Jones seeks to hold McClurg's motion in abeyance for sixty days while the parties conduct limited discovery.   [DN 43].   At the end of sixty days, Dallas Jones asks the Court to fully analyze whether plaintiffs are "similarly situated." [DN 44].

Two-step certification typically reserves Dallas Jones's full "similarly situated" request for step two of the certification process, after notice is sent, all opt-in plaintiffs have joined, and discovery is complete.   Thus, the substance of Dallas Jones's motion seeks to toss aside two-step certification in favor of one omnibus certification decision *before* McClurg may send court-authorized notice.

The limited guidance provided by the Supreme Court guides the Court's resolution of this

issue.  In *Hoffman-La Roche*, the Supreme Court "confirm[ed] the existence of the trial court's discretion" to facilitate notice of a pending collective action to potential plaintiffs.  *Hoffman-La Roche*, 493 U.S. at 170.  The Court recognized that "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity," but those benefits "depend on employees receiving accurate and timely notice concerning the pendency of the collective action."  *Id*.  Court-authorized notice is desirable to "expedite disposition of the action," avoid multiple lawsuits, and prevent plaintiff's counsel from soliciting collective members with "misleading communications."  *Id*. at 171–72.  The Court noted, however, that district courts must only serve a managerial role and must "avoid even the appearance of judicial endorsement of the merits of the action."  *Id*. at 174.

In the Court's view, two-step certification effectively implements *Hoffman-La Roche*'s guidance.  Providing notice at the beginning of discovery expedites disposition of the case.  It provides the parameters of the litigation early on, which helps courts structure discovery and ensures there will not be duplicative litigation.

Resisting this conclusion, Dallas Jones asks the Court to either adopt the Fifth Circuit's recent decision in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021) or, alternatively, to exercise the Court's discretion to tailor a process "right for the facts of this case, rather than a blanket adoption of" *Swales*.  *Swales* rejected two-step certification and required district courts to make a holistic determination that plaintiffs were "similarly situated" before authorizing notice.  *Id*. at 441.  Despite Dallas Jones's representation that it is not necessarily advocating a blanket adoption of *Swales* which the Court has previously rejected in *Branson v. All. Coal, LLC*, No. 4:19-CV-00155, 2021 WL 1550571, at *3 (W.D. Ky. Apr. 20, 2021), it essentially does so by asking the Court to conduct an expedited 60-day discovery about the character and

6

scope of the proposed collective and then to fully analyze whether the potential plaintiffs are similarly situated.

After a review of Dallas Jones's argument, the undersigned chooses once again not to follow *Swales*.   First, in *Swales*, the parties engaged in "significant discovery" before the conditional certification motion; the plaintiff asked the district court to ignore the discovered evidence for the conditional certification inquiry.   *Swales*, 985 F.3d at 438.   Comparatively, a scheduling order has not been entered in this case.   Second, the district courts within the Sixth Circuit have continued to adhere to the two-tiered approach subsequent to the Fifth Circuit's decision in *Swales*.   *See, e.g., Kleinhans v. Greater Cincinnati Behavioral Health Services*, No. 1:21-CV-70, 2021 WL 5048399, at *4 (S.D. Ohio Nov. 1, 2021); *Jones v. Converse Electric, Inc.*, No. 21-CV-1830, 2021 WL 5027411, at *3 (S.D. Ohio Oct. 29, 2021); *Branson v. All. Coal, LLC*, No. 4:19-CV-00155, 2021 WL 1550571, at *3 (W.D. Ky. Apr. 20, 2021); *Brewer v. All. Coal, LLC*, No. 7:20-CV-0041, 2021 WL 1307721, at *1 (E.D. Ky. Apr. 6, 2021); *York v. Velox Express, Inc.*, 524 F. Supp. 3d 679, 685 (W.D. Ky. Mar. 10, 2021).   Finally, as correctly noted by McClurg, it is Dallas Jones and not McClurg or the potential plaintiffs who have copies of the MCS 150 forms, the haul records, and records of hours worked.   Discovery on the issues proposed by Dallas Jones would only serve to delay conditional certification.   Thus, the two-step certification will govern this case.

Accordingly, Dallas Jones's motion to permit expedited discovery prior to ruling on McClurg's motion for collective certification [DN 43] is **DENIED**.   *See, e.g., Brewer*, 2021 WL 1307721, at *1.

## B.  Conditional Certification

McClurg seeks conditional certification so he can send notice to prospective members of

the following collective: "All persons who were employed by Dallas Jones Enterprises, Inc. (which has done business as "Clay's Trucking") as a truck driver and were not paid overtime compensation for work performed in excess of forty hours in one or more workweeks within the three years preceding this notice."[1]  [DN 32 at 1].  For the Court to grant the motion, McClurg must make a modest factual showing that his "position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47 (quoting *Pritchard*, 210 F.R.D. at 595).  Plaintiffs are similarly situated if they "suffer from a single, FLSA-violating policy, and when proof of that policy . . . proves a violation as to all the plaintiffs," or when their claims are "unified by common theories of defendants' statutory violations." *O'Brien*, 575 F.3d at 585.  At the conditional certification stage, however, "a court 'does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility.'" *York*, 524 F. Supp.3d at 685 (quoting *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016)).

McClurg maintains that the fundamental question in this FLSA claim is whether Dallas Jones may benefit from the Motor Carrier's Act ("MCA") exemption to the FLSA with respect to *all* of its truck driver employees.  As explained in a previous opinion in this case, the FLSA does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service."  29 U.S.C. § 213(b)(1).  This exemption is known as the MCA exemption.  The Secretary of Transportation possesses the power to regulate an employee if (1) the employee works for a motor private carrier that transports property in interstate commerce and (2) the employee's work activities "affect the safety of operation of"

---

[1] Alternatively, Plaintiff seeks to send notice to the following collective: "All persons who were employed by Dallas Jones Enterprises, Inc. (which has done business as "Clay's Trucking") as a truck driver and were not paid overtime compensation for work performed in excess of forty hours in one or more workweeks within the three years preceding this notice and who did not drive in interstate commerce but instead operated solely in intrastate commerce pursuant to a medical waiver from the Kentucky Transportation Cabinet (and/or under a "K" intrastate-only restriction on his or her commercial driver's license)."  [DN 32 at 1–2].

motor vehicles in interstate commerce. *Sec'y of Labor v. Timberline South, LLC*, 925 F.3d 838, 850 (6th Cir. 2019); 29 C.F.R. § 782.2(a); *see* 49 U.S.C. §§ 31502(b)(2); 13102(15).   If the Secretary of Transportation possesses this regulatory power over a particular employee, whether or not it actually exercises the power, the Secretary of Labor lacks jurisdiction and the FLSA (and its overtime provisions) do not apply. *See Barlow v. Logos Logistics, Inc*., 34 F. Supp. 3d 686, 690 (E.D. Mich. 2014); *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021).

In his Second Amended Complaint, McClurg maintains that Dallas Jones has a policy of denying overtime wages to all of its truck drivers who work more than 40 hours per week in violation of the FLSA.  In particular, he asserts that Dallas Jones maintains a company-wide policy of classifying its truck drivers as exempt under the Motor Carrier's Act despite the fact that Dallas Jones strictly operates in intrastate commerce and the truck drivers employed by Dallas Jones are not expected to travel out of state.  [DN 31; DN 31-4; DN 32-1, McClurg Decl.; DN 31-9, Skinner Decl.].

In support, McClurg attaches: (1) his own declaration indicating that he was paid a percentage of Dallas Jones's revenue for each load delivered regardless of the number of hours that he worked, he regularly worked more than 40 hours a week, other truck drivers were paid in the same manner and usually worked the same hours as him, and he and the other truck drivers transported materials that originated in and were destined for Kentucky [DN 32-1]; (2) a declaration of Albert Skinner indicating that Dallas Jones operated only in Kentucky and principally transported coal within the State of Kentucky, he worked for both Dallas Jones and DC Trucking, detailed logs or elogs were not required for the driving he performed for Dallas Jones because it was an "intrastate only" company, he was paid on a percentage-of-load basis, he worked more than 40 hours a week in many weeks for Dallas Jones, and he was not paid overtime wages

[DN 31-9]; and (3) documents indicating that Dallas Jones represented to the FMCSA under penalty of perjury that it and its drivers were not involved in interstate commerce, but instead operated "intrastate only (non-HM)" [DN 31-4].

With this evidence, McClurg has made a "modest factual showing" that his position is similar to other members of the collective in that they were employed by Dallas Jones on an "intrastate only" basis, all truck drivers allegedly worked in excess of 40 hours a week in many weeks for Dallas Jones, were paid on a percentage-of-load basis, and were not paid overtime wages. *See Comer*, 454 F.3d at 546–47. Significantly, the record currently reflects that Dallas Jones is not an interstate carrier, not authorized to operate in interstate commerce, and has affirmatively represented to the federal government that it is not operating in interstate commerce. [DN 31-4]. As a result, Dallas Jones is not an interstate "carrier" eligible to benefit under the MCA exemption to the FLSA. [DN 32 at 2]. Furthermore, both McClurg and Skinner represent that Dallas Jones's employees drove loads solely in Kentucky, all loads were Kentucky-originating, all loads were bound for an ultimate destination in Kentucky, and, thus, the trips were not part of interstate commerce. [DN 32-1, Johnny McClurg Decl.; DN 31-9, Albert Skinner Decl.].

Whether the policy of Dallas Jones violated the FLSA is the ultimate question in this litigation; at this stage, the Court's only consideration is whether all potential opt-in plaintiffs were subject to the same policy. McClurg unquestionably alleges that they were. Thus, McClurg's allegations indicate that Dallas Jones engaged in a single, FLSA-violating policy—a company-wide policy of classifying its truck drivers as exempt under the Motor Carrier's Act despite the fact that Dallas Jones strictly operates in intrastate commerce. [DN 31-4]. As such, upon reviewing McClurg's motion and attached declarations and exhibits, the Court finds that McClurg

has met his burden and conditional certification is appropriate at this stage in the certification process.

Dallas Jones argues that certification should be denied because McClurg has failed to show a likelihood that others will opt into the lawsuit. [DN 44 at 6]. However, "in the Sixth Circuit there is no controlling precedent requiring plaintiffs to show sufficient interest among members of the putative class in joining the litigation." *Loomis v. Unum Grp. Corp.*, No. 1:20-CV-251, 2021 WL 1928545, at *7 (E.D. Tenn. May 13, 2021); *Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-CV-00583, 2019 WL 4242409, at *5 (M.D. Tenn. Sept. 6, 2019); *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *8 (E.D. Mich. Mar. 23, 2012) ("[T]he Court is not persuaded by [the defendant's] argument that [p]laintiffs must provide evidence that other employees wish to opt in before the Court conditionally certifies a collective class.").

Dallas Jones also disputes whether McClurg is similarly situated to the proposed collective employees. [DN 44 at 8]. Dallas Jones complains that rather than focus on the group of truck drivers he allegedly drove with the majority of time over a specific set of routes, McClurg asks the Court to certify a collective that includes other groups of drivers who performed work with sister entities. [*Id.*]. As long as McClurg satisfies the modest factual showing required at the conditional certification stage, this argument can and should be address at the second phase of certification. "If discovery reveals that the class should be limited to a subset of the employees[,] . . . the Court may address that issue on [Dallas Jones's] motion at that time." *Hambrick v. Promevo, LLC*, No. 19-CV-17, 2020 WL 3621315, at *6 (E.D. Ky. July 2, 2020) (quoting *Myers v. Marietta Memorial Hospital*, 201 F. Supp. 3d 884, 896 (S.D. Ohio 2016)).

Additionally, Dallas Jones argues that the proposed collective claim is unmanageable because individual inquiries will be necessary to resolve liability. Dallas Jones asserts that for

11

truck drivers like Skinner, who completed work for sister entities under the same leadership and in the same location, any determination of liability must resolve how much driving any individual performed for each entity and the nature of the interrelationship between the entities.  Dallas Jones also claims that it is not known whether goods actually traveled in interstate commerce, and these questions would have to be answered prior to any liability determination.  [DN 44 at 8–9].

Contrary to Dallas Jones's argument, issues regarding manageability of the collective or how to address individual defenses are generally not addressed during the conditional certification stage of the litigation.  "[A] rigorous inquiry into the merits of Plaintiff's claims is not necessary at this early juncture." *Carter v. Paschall Truck Lines, Inc.*, No. 5:18-CV-041, 2019 WL 1576572, at *3 (W.D. Ky. Apr. 11, 2019) (declining, at the conditional certification phase, to consider defendant's argument that plaintiff has failed to meet his burden because his "theory requires a contractor-by-contractor, workweek-by-workweek analysis of driver hours worked, and the net amount paid"); *see also Shipes v. Amurcon Corp.*, 2012 WL 995362, at *5 (E.D. Mich. Mar. 23, 2013) ("At this first stage, courts do not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations."); *White v. MPW Indus. Serv., Inc.*, 236 F.R.D. 363, 372–373 (E.D. Tenn. 2006) (defendant's assertion that some of the employees to whom plaintiff sought to have notice provided might be subject to the MCA exemption was appropriately decided at the "de-certification" stage, and not the conditional certification stage); *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567 (6th Cir. 2009); *Gomez v. Loomis Armored US, LLC*, No. SA-16-CA-00931, 2017 WL 2999422, at *5 (W.D. Tex. Apr. 3, 2017) ("The facts that Plaintiffs might be exempt from the FLSA due to the MCA . . . and that application of the MCA exemption requires a week-by-week analysis do not preclude conditional certification.").  Additionally, "disparate factual and employment settings of the individual plaintiffs" should be considered at the second

12

stage of analysis.  *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001); *Loomis v. Unum Group Corp.,* No. 1:20-CV-251, 2021 WL 1928545, at *7 (E.D. Tenn. May 13, 2021); *Carter*, 2019 WL 1576572, at *3.

Dallas Jones further contends that the proposed collective claim is unmanageable because individualized inquires will be necessary to resolve damages, including proof regarding if and the amount of hours each collective member worked overtime for Dallas Jones.  [DN 44 at 10].  However, once again, "a rigorous inquiry into these factual differences or the possible differences in damages claims is not necessary at the conditional certification stage."  *Carter* 2019 WL 1576572, at *3 (citing *Burgess v. Wesley Fin. Grp., LLC*, No. 3:16-CV-1655, 2017 WL 1021294, at *4 (M.D. Tenn. Mar. 16, 2017) ("At this stage, the court does not determine whether all potential class members are similarly situated with respect to the damages that they might pursue.")).

For these reasons, the Court grants McClurg's motion to certify the class.

## C.  Content of the Notice

"After determining that conditional certification is warranted, the Court must address the substance of the notice to be sent to similarly situated employees."  *Marcum*, 2020 WL 6887930, at *4.  The Court serves an oversight role to ensure notice is "timely, accurate, and informative," but must "take care to avoid even the appearance of judicial endorsement of the merits."  *Hoffman-La Roche*, 493 U.S. at 172, 174.  "The purpose of notice is simply to inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit."  *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010).

McClurg submitted a proposed notice that he would send to all members of the conditional class informing them of the lawsuit and how to participate.  [DN 32-8; DN 32-9].  Dallas Jones raised numerous objections to the proposed notice.  [DN 44; DN 45].  In response to the objections,

McClurg in some instances modified the proposed notice and in others responded to the objections. [DN 47; DN 49; DN 55].   In its notice-facilitation role, the Court resolves the following disputes regarding notice content. *Hoffmann-La Roche*, 493 U.S. at 172.

### 1. Section II

#### a. Defendant's position section contains inaccuracies

Dallas Jones contends that Section II's description of its position contains inaccuracies, both in the language included and content omitted.   Specifically, Dallas Jones argues that the reference to "many workweeks" suggests a frequency of occurrences that Dallas Jones has not conceded and is not accurate.   [DN 45 at 12].   McClurg agrees to change "many workweeks" to "some workweeks." [DN 47 at 18–19].   This change has been reflected in the revised notice.

Dallas Jones also contends that it has other relevant defenses that should be included, including its position that its compensation method adequately paid truck drivers the money they should have received.   McClurg disagrees construing Dallas Jones's requested content as notifying the potential opt-in plaintiffs that the Court might rule in favor of Dallas Jones even if a violation of the FLSA has been established.   McClurg misconstrues Dallas Jones's objection to this portion of the notice.   Contrary to McClurg's argument, Dallas Jones simply asserts that its denial of the allegations and an explanation of its defenses should be included in the notice.   The Court agrees with Dallas Jones in part.

The United States Supreme Court emphasizes that "[t]he purpose of the notice is to provide potential plaintiffs with a neutral discussion of the nature of the action." *Heaps v. Safelite Sols., LLC*, No. 2:10-CV-729, 2011 WL 1325207, at *9 (S.D. Ohio Apr. 5, 2011).   "Courts frequently approve and even require that the notice include a statement that the defendant denies the allegations and complied with the FLSA in good faith." *Id.*   McClurg's notice must include similar

language.   Notwithstanding, other information regarding the potential defenses possessed by Dallas Jones would be confusing and is not necessary.  *See, e.g., Gomez v. ERMC Mgmt. Co., LLC*, No. 3: 13-CV-01081, 2014 WL 3053210 (N.D. Ohio July 7, 2014) (approving inclusion in notice of statement denying liability but excluding additional information as confusing).  The Court has modified this paragraph accordingly.

### b.  Last two paragraphs

Dallas Jones objects to the inclusion of the last two paragraphs of this section.  It argues that the notice does not need to delve into which party has various burdens of proof.  Additionally, Dallas Jones complains that the final paragraph of the section repeats what has previously been explained and suggests erroneously that if individuals do not opt in, "the lawsuit will not help or hurt" them.  [DN 45 at 12].  McClurg disagrees with Dallas Jones's objections arguing that the recitation of the burden of proof in this case is a correct statement of law and that the last paragraph serves as a transition to the rest of the notice and removal of it would make the notice choppy and less readable.

McClurg offers no case law to suggests that an explanation of the burden of proof in the notice is appropriate at the conditional certification stage.   In fact "this notice is not a communication by or of this Court."  *Hall v. Gannett Co. Inc.*, No. 3:19-CV-296-, 2021 WL 231310, at *4 (W.D. Ky. Jan. 22, 2021).  "Rather, district courts authorize such communications by plaintiffs in order to ensure the proceedings that follow are fair and efficient."  *Id.*  "Courts do so mindful that the current 'stage one' proceedings address only allegations, not proof."  *Id.*  With this in mind, notification of the potential opt-in plaintiffs regarding the burden of proof is not important at this initial stage where the notice addresses basic information regarding allegations and potential plaintiffs' rights.  The Court also agrees with Dallas Jones that the last paragraph in

this section is cumulative and, in parts, confusing.  Despite McClurg's concern regarding the choppiness of the notice, the Court finds that removal of the entire paragraph is warranted.

### 2.  *Right to Choose Counsel*

Dallas Jones suggests the addition of language in the proposed notice that provides prospective plaintiffs the opportunity to join the action and designate another attorney.  "[S]everal courts within the Sixth Circuit have observed that '[p]laintiffs' counsel is counsel of record; and, if any potential plaintiff chooses to opt-in, that plaintiff will be represented by [p]laintiffs' counsel.'"  *Williams v. King Bee Delivery, LLC*, No. 5:15-CV-306, 2017 WL 987452, at \*9 (E.D. Ky. Mar. 14, 2017) (quoting *Fisher v. Michigan Bell Tele. Co.*, 665 F. Supp. 2d 819, 829 (E.D. Mich. 2009)); *see also Johnston v. J&B Mech., LLC*, No. 4:17CV-00051, 2017 WL 3841654, at \*6 (W.D. Ky. Sept. 1, 2017); *Gomez v. ERMC Prop. Mgmt. Co., LLC*, 2014 WL 3053210, at \*2 (N.D. Ohio July 7, 2014) (concluding that the invitation to bring additional counsel into the lawsuit likely would defeat the efficient operation of the litigation) (citing *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007)).

"Because the addition of attorneys in this case would likely diminish the efficiency of the collective action mechanism," and because the proposed notice has been modified to clearly state that potential opt-in plaintiffs may decide not to be included in this lawsuit, may retain their own attorney, and may pursue their own separate cause of action, the Court sees no need to incorporate Dallas Jones's suggested language.  *Williams*, 2017 WL 987452, \*9.  This is sufficient to notify those prospective plaintiffs of their rights under the FLSA.  *But see Heaps*, 2011 WL 1325207, at \*9 ("Informing potential plaintiffs of their right to [choose] their own counsel is an appropriate [notice] element [.]"); *Snide v. Discount Drug Mart, Inc.*, No. 1:11–CV–0244, 2011 WL 5434016,

at *7 (N.D. Ohio, Oct.7, 2011).  The Court has included an additional statement in the notice to clarify that choice.

Additionally, Dallas Jones complains that the Notice purports to authorize an attorney-client relationship between those individuals who opt in and any attorney who McClurg's counsel chooses to associate.  [DN 45 at 13].  In an effort to avoid delay of the notice, McClurg removed this objected-to language in the revised proposed notice and the revised consent form.  [DN 47 at 21–22].

### 3.  Section III.B.i. references "benefits"

Dallas Jones argues that this section presents confusing text that suggest "benefits" of opting-in without equally prominently addressing the risks of doing so.  In response, McClurg points out that it is similar to the language approved by this Court in previous FLSA cases. *Branson v. Alliance Coal,* 4:19-CV-155, DN 172-2 ("if you choose to join this case, you will be bound by any ruling entered by the Court or settlement reached by the parties.").  After a review of other notices approved by the courts in this district, the Court has modified this provision to remove the term "benefits" and clarify the consequences of opting-in to the existing lawsuit.

### 4.  Section III.B.ii affords Plaintiff and counsel too much authority

Dallas Jones argues that this section goes too far by failing to carve out the sorts of significant decisions as to which counsel and client must confer.  According to Dallas Jones, there is no reference in the notice to what decisions will be left to each individual to make with counsel. Dallas Jones maintains that the notice should not require individuals to authorize away their right to make significant decisions in their own litigation of their own individual claims because the individuals who opt in are additional plaintiffs.  [DN 45 at 14].  McClurg disagrees arguing that courts regularly approve language in notices and opt-in consents explaining that the opt-in plaintiff

17

is, by opting-in, designating the named plaintiff as a decision-making representative.  [DN 47 at 24].

McClurg is not required to amend the notice to exclude reference to McClurg as the "class representative."  "Defendants properly argue that collective actions are mass actions where the workers act as a collective without a specific representative who controls the litigation." *Gonzalez v. Diamond Resorts Int'l Mktg., Inc.*, No. 2:18-CV-979, 2019 WL 3430770, at *4 (D. Nev. July 29, 2019) (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018)).  However, courts have recognized that "that workers in a collective action may separately agree to the designation of a class representative." *Gonzalez*, 2019 WL 3430770, at *4 (citing *Campbell*, 903 F.3d at 1105 ("A collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases—capitalizing on efficiencies of scale, but without necessarily permitting a specific, named representative to control the litigation, except as the workers may separately so agree.") (emphasis in original). Here, McClurg has "crafted the notice in a manner that permits potential opt-in plaintiffs to agree to the designation." *Gonzalez*, 2019 WL 3430770, at *4.[2]  Such decision is appropriate as long as it is clear that the proposed plaintiffs can pursue their own action separate from the collective.

### 5. Section IV references "attorneys"

Dallas Jones complains that this section references plural "attorneys," rather than a singular attorney.  McClurg changed this phrase to the defined term "Plaintiff's Counsel" in the revised

---

[2] *See also Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 230 (3d Cir. 2016); *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-CV-8410, 2021 WL 4460632, at *2 (S.D.N.Y. Sept. 28, 2021); *Stephens v. Sopapillas, LLC*, No. 3:18-CV-296, 2019 WL 1460878, at *6 (M.D. Tenn. Apr. 2, 2019); *Hood v. Uber Techs., Inc.*, No. 1:16-CV-998, 2019 WL 93546, at *3 (M.D.N.C. Jan. 3, 2019); *Rogers v. The Webstaurant Store, Inc.*, Case No. 4:18-CV-74 at DN 14; *Perez v. El Torazo Mexican Rest., Inc.*, No. 3:16-CV-545, 2017 WL 6344624, *4 (W.D. Ky. 2017); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996); *Iriarte v. Redwood Deli & Catering, Inc.*, No. 07-CV-5062, 2008 WL 2622929 (E.D.N.Y. June 30, 2008).

18

proposed notice.

### 6. *Section VI.B improperly interjects the issue of retaliation and fishes for complaints*

Dallas Jones argues that this section impermissibly suggests that it may retaliate against individuals who join the lawsuit.  According to Dallas Jones, this reference amounts to a bell that cannot be un-rung.  Additionally, Dallas Jones contends that this language invites anyone who fears potential retaliation to discuss it with McClurg's counsel—"yet another unjustified and impermissible boon."  [DN 45 at 15].

Contrary to Dallas Jones's argument, anti-retaliation provisions on FLSA notice forms are common and appropriate.  *See Perez v. El Torazo Mexican Rest., Inc.*, 3:16-CV-545, 2017 WL 6344624, *4 (W.D. Ky. 2017); *Rogers v. The Webstaurant Store, Inc.*, Case No. 4:18-CV-74, DN 44; *Hardesty v. Litton's Mkt. & Rest., Inc.,* No. 3:12-CV-60, 2012 WL 6046743, at *6 (E.D. Tenn. Sept. 28, 2012).  The Court altered the proposed notice language to the language utilized by the Court and the parties in *Branson*.  *See Branson v. All. Coal, LLC, et al*, Case No. 4:19-CV-155, DN 172-2.

Additionally, the Court finds that the notice should be amended to remove the bold emphasis on the anti-retaliation paragraph.  *See Ganci v. MBF Inspection Services, Inc.*, No. 2:15-CV-2959, 2016 WL 5104891, at *7 (S.D. Ohio Sept. 20, 2016) ("The Court finds bolding, underlining, italicizing or other emphases to be unhelpful and potentially prejudicial.").

### 7. *Statute of Limitations*

Finally, while Dallas Jones did not object to the three-year notice proposed by McClurg, the Court notes that FLSA violations typically have a two-year statute of limitations. 29 U.S.C. § 255(a).  But the limitation period extends to three years if the violation is willful. *Id*. "Whether

Defendant's alleged FLSA violations are 'willful' is a question better suited for a later stage of the litigation." *Rogers v. Webstaurant, Inc.*, No. 4:18-cv-74-JHM, 2018 WL 4620977, at *4 (W.D. Ky. Sept. 26, 2018) (quotation omitted). Here, McClurg's proposed three-year notice is therefore acceptable at this stage of litigation. But that "does not guarantee that each opt-in plaintiff's claims will be considered timely" when received. *See York*, 524 F. Supp.3d at 691. If McClurg cannot prove willful FLSA violations, the statute of limitations will only extend back two years.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1.       Plaintiff's Motion to Certify Class [DN 32] is **GRANTED**, Defendant's Motion to Permit Expedited Discovery Prior to Ruling on Motion for Collective Certification [DN 43] is **DENIED**, Plaintiff's Motion to Stay Discovery Pending Ruling on Plaintiff's Motion for Conditional Certification [DN 33] is **DENIED AS MOOT**, and Defendant's Motion to Strike Proposed Notice Forms [DN 45] is **DENIED**. The Court has modified both the proposed notice and proposed consent form. The additional language is designated in red font.

2.       The Court directs Defendants to deliver to Plaintiff by email, within ten (10) days of this Order, a spreadsheet in Microsoft Excel Format containing the following information for all potential FLSA collective members: (a) last name, (b) first name, (c) last known email address, and (d) last known mailing address.

3.       Within ten (10) days of Plaintiff's receipt of the information from Defendant, Plaintiff shall disseminate the approved notice and consent form documents to all putative members of the collective via United States mail and email. The approved notice form and consent form are attached to this Memorandum Opinion and Order. Plaintiff shall insert the applicable

dates, as contemplated in the sections indicated by brackets in the approved forms, and replace the red font to black font.  Plaintiff shall concurrently send a copy of the Notice to Defendant.

4.      Within two (2) business days of the sending of the Notice, Defendant shall post the Notice at conspicuous-to-truck-driver-employee locations at all facilities operated by Defendant, including the facility at 3326 Merle Travis Highway, Beechmont, Kentucky, 42323.  Defendant shall keep the Notice so posted until 60 days following the sending of the Notice.

5.      The email shall be from Plaintiff's counsel's email address and shall have the title "Court Approved Notice in *Johnny McClurg v. Dallas Jones Enterprises, Inc., doing business as Clay's Trucking.*"  The email shall state the employee's name (e.g., "Mr. Smith:"), and shall then state "Attached to this email is a Notice which has been approved by the United States District Court for the Western District of Kentucky and which is being sent to you as a current or former employee of Dallas Jones Enterprises, Inc., doing business as Clay's Trucking.  Please review the attached Notice."  This language shall be followed by Plaintiff's counsel's email signature block, which shall be as follows:

> Mark N. Foster
> Law Office of Mark N. Foster, PLLC
> P.O. Box 869
> Madisonville, KY 42431
> (270) 213-1303
> MFoster@MarkNFoster.com

The email shall attach a PDF format copy of the Notice (the title of the PDF document shall be "Court Approved Notice") and shall also separately attach a PDF copy of the Consent Form (the title of the PDF document shall be "Consent Form").

6.      If the United States Postal Service returns notices to Plaintiff's counsel indicating that the United States Postal Service cannot deliver the mailing, as addressed, and Plaintiff's counsel has not received email communication from the employee in response to any email sent

to the employee, the following shall occur:

(a)    Plaintiff's counsel shall within three days inform Defendant by email that the mailing has been returned.  Defendant shall then review its information for the employee at issue and Defendant's counsel shall then, within three days of Plaintiff's email, notify Plaintiff's counsel of any other address or addresses that Defendant has for the person in question or notify Plaintiff's counsel that the address previously provided is the only address Defendant has for the person in question.  Plaintiff's counsel shall, if Defendant identifies one or more address for the person in question, re-send the Notice to said new address within three days of receiving the new address from Defendant and shall inform Defendant's counsel by email within three days of such re-sending that Plaintiff's counsel has done so.

(b)    If the notation from the United States Postal Service indicates another address which may be used to send mail to the person in question, Plaintiff shall re-send the notice to said address within three days of receiving the mailing back from the United States Postal Service and shall inform Defendant's counsel that by email within three days of such re-sending that Plaintiff's counsel has done so.

(c)    If Defendant states that Defendant has no other address for the person in question and the notification from the United States Postal Service does not include any other address which may be used to send mail to the person in question, Plaintiff may, within ten days of receiving such mailing back from the United States Postal Service, resend the mailing to such additional address as Plaintiff is able to determine utilizing internet searching and/or person location information services, and shall inform Defendant's counsel by email within three days of such re-sending that Plaintiff's counsel has done so.

(d)    In the event that the initial mailing and a subsequent mailing are returned

with respect to a particular person, Plaintiff's counsel and Defendant's counsel shall confer in good faith to determine whether there are other possible and reasonable methods for Plaintiff to provide the Notice to such individuals and, if so, utilize such methods.   If the parties, after conferring, cannot agree on whether a particular method should be used, either party may file a motion relating to the disputed issue.

7.      Plaintiff shall file all Consent Forms received from members of the conditionally certified collective promptly upon receipt by Plaintiff's counsel, and, in any event, within five days of receipt.

Joseph H. McKinley Jr., Senior Judge

United States District Court

December 3, 2021

cc:     Counsel of Record

## NOTICE OF COLLECTIVE ACTION LAWSUIT

TO: All persons who were employed as a truck driver by Dallas Jones Enterprises, Inc. (which has done business as "Clay's Trucking" and is hereafter referred to as "Clay's Trucking") and were not paid overtime compensation for work performed in excess of forty hours in one or more workweeks since [date 3 years prior to date of sending of notice] (including both current and former employees).

## THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS;
## PLEASE READ THE ENTIRE NOTICE CAREFULLY.

### I.      Introduction

The purpose of this Notice is to inform you of the existence of a collective action lawsuit brought against Clay's Trucking in the United States District Court for the Western District of Kentucky pursuant to the Fair Labor Standards Act ("FLSA").  The lawsuit may affect the rights of any person employed (or formerly employed) by Clay's Trucking as a truck driver who worked in excess of forty (40) hours in one or more weeks in the last three years.  Although the Court has authorized this notice to be sent to you, the Court has taken no position regarding the merits of the case.  Instead, this Notice is for the purpose of informing you of your rights and to instruct you how to join the lawsuit between now and [date 60 days from mailing of notice, in bold font], should you decide to do so.

### II.      Description of Lawsuit

Johnny McClurg, who is a former employee of Clay's Trucking, filed the lawsuit against Clay's Trucking on December 7, 2020 in the United States District Court for the Western District of Kentucky.  The proceedings in the lawsuit have been assigned case number 4:20-CV-00201-JHM-HBB in that court.

Mr. McClurg contends that Dallas Jones Enterprises, Inc. violated the FLSA by failing to pay overtime compensation to employees who worked in excess of forty (40) hours per workweek.  He alleges that truck driver employees were misclassified by Clay's Trucking as being "exempt" from receiving overtime compensation.  Mr. McClurg contends Clay's Trucking classified its truck driver employees as exempt from receiving overtime under the "Motor Carrier's Act exemption" to the FLSA, which applies to truck drivers who drive in interstate commerce.  Mr. McClurg alleges that this classification was incorrect because Clay's Trucking's truck drivers did not drive in interstate commerce and that, therefore, they should have been paid overtime compensation.

Clay's Trucking denies Mr. McClurg's allegations.  Clay Trucking acknowledges that truck drivers worked more than forty hours in some workweeks, but maintains that the Motor Carrier's Act exemption to the FLSA applied to its truck driver employees.  Clay Trucking contends that its truck driver employees have been, and continue to be, properly paid under federal law.

### III.    Rights and Obligations of Additional Plaintiffs

#### A.    Right to be Represented

If you choose to become an additional plaintiff in this lawsuit, you will be represented by Mr. McClurg's counsel, Law Office of Mark N. Foster, PLLC ("Plaintiff's Counsel"). Plaintiff's Counsel will represent you in all matters in the case.  The contact information, including address, telephone/text number, and email address for Plaintiff's Counsel firm appears in Section "VI" of this Notice so that you may contact Plaintiff's Counsel, if you wish.  You have the option to retain an attorney of your own choice and file a separate cause of action at your own cost.

If you "opt in" to this lawsuit, Plaintiff's Counsel will represent you on a contingency fee basis.  This means that, if you recover money from Clay's Trucking (either through a successful result through litigation or through a settlement) Plaintiff's Counsel will seek to be paid attorney's fees from the recovery.  The fees will be awarded by or approved by the Court. If there is no recovery (i.e., if this lawsuit does not result in you recovering money from Clay's Trucking), you will owe Plaintiff's Counsel nothing.

Similarly, Plaintiff's Counsel has agreed to advance the expenses relating to this lawsuit. Plaintiff's Counsel will seek reimbursement of expenses from any recovery from Clay's Trucking, but you will owe Plaintiff's Counsel nothing for expenses advanced if there is not a recovery.

#### B.    Other Rights and Obligations

i.   If you join the lawsuit, you will become a plaintiff in this lawsuit.  You will not be able to file your own separate lawsuit concerning these matters in the future. You will be bound by the judgment of the Federal court on all issues.  If the Federal court finds in favor of Plaintiff, you may receive a money payment.  If the Federal court finds in favor of Defendant, you will receive nothing.

ii.  By joining this lawsuit, you designate the collective action representative/Plaintiff (Johnny McClurg) as your representatives to make decisions concerning the manner and method of conducting this litigation.  The decisions and agreements made by Johnny McClurg in consultation with Plaintiff's Counsel will be binding on you.

iii. If there is a recovery and you receive payment(s) from Clay's Trucking, you may be required to provide information needed for Clay's Trucking to correctly report the payment(s) for tax purposes, and you will need to determine in consultation with your tax adviser how you yourself should report such payments (neither Clay's Trucking nor the Plaintiff's Counsel will provide you with tax advice).

iv.  You should also understand that, as a party to this lawsuit, you may be asked to provide information regarding your compensation and hours worked while employed by Clay's Trucking, as well as other information relating to your

claims.  You may also be asked or required to appear to give deposition and/or trial testimony in this case.

    v.    So that you can be kept informed of events in the lawsuit, you will be required to keep Plaintiff's Counsel advised of your current address, email address (if applicable) and telephone numbers.

### IV.    How to "Opt In" to this Lawsuit, If You Choose to Do So.

If you worked for Clay's Trucking at any time since [date three years prior to mailing of notice] and believe Clay's Trucking did not pay you the full amount of overtime pay due, you have the right until [date 60 days after mailing of notice] to "opt in" and participate in this collective action lawsuit.

You should carefully review the rights and obligations of members of the collective action lawsuit set out above, including the terms of compensation of counsel and the binding effect of any judgment or settlement before making your choice regarding whether or not you wish to "opt in" to this lawsuit.  The statute of limitations continues to run against any claims you may have until you become a plaintiff by either "opting in" to this lawsuit or filing a separate lawsuit of your own.

**If you wish to "opt in**," you must complete the enclosed **"Consent to Become Party Plaintiff"** form included with this Notice, also referred to as a consent form.  The completed consent form should be returned to the attorney for Plaintiff listed below; the attorney will then file the consent form with the Court.  A postage pre-paid envelope addressed to the attorney is enclosed for your convenience. Completed consent forms may also be delivered to attorney Mark Foster's office in Madisonville or emailed to the attorney (if emailed, a scanned, sufficiently- legible version of the consent form should be attached).  If you need another consent form or envelope, Plaintiff's Counsel will send those upon request.  Plaintiff's Counsel's contact information is below.

THE CONSENT FORM MUST BE SIGNED AND DELIVERED TO THE ATTORNEY  IN TIME FOR IT TO BE FILED WITH THE COURT BY [date 60 days after mailing of notice, in bold, all-caps font].

**If you do not wish to be included** in this lawsuit, you do not have to do anything.  If you do nothing and do not opt in, you will retain the right to pursue your own claim or lawsuit at your own cost and with your own counsel.

## V.   No Opinion Expressed as to Merits of the Case

**The Court has directed that this Notice be sent to you because Clay's Trucking identified you as an employee who worked as a truck driver on or after [date three years prior to sending notice].  Therefore, you may be affected by the litigation and outcome of the case.  The Court has not yet ruled on the merits of any of the claims or defenses raised by either side, and this Notice should not be interpreted as an indication of how the Court may rule in the future.  The Court does not express any opinion about whether you should or should not join the collective action lawsuit.**

## VI.   Additional Information

A.   The documents filed in this case are a matter of public record, filed with the Clerk of the Court for the United States District Court for the Western District of Kentucky, Owensboro Division.  You may review the case filings at the Clerk's office located at 423 Frederica Street, Suite 126, Owensboro, Kentucky 42301-3013; (270) 689-4400.

B.   Federal law prohibits Clay Trucking from discharging or in any other manner retaliating against any employee because that employee joins this lawsuit.

C.   Any questions that you may have concerning this Notice should not be directed to the Court, but should instead be directed to the legal representative of your choosing, which may include Plaintiff's Counsel listed below.  Additionally, if you wish to communicate with Plaintiff's Counsel for any other reason, you may do so by email, telephone or text messaging at:

Mark N. Foster
(270) 213-1303
MFoster@MarkNFoster.com

You may also communicate in writing with Plaintiff's Counsel by sending mail

to: Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY
42431

Finally, additional consent forms are available at Plaintiff's Counsel's office at 113 E. Center St., Suite B in Madisonville (across Center Street from the new courthouse).

**CONSENT TO BECOME PARTY PLAINTIFF**

I was employed as a truck driver by Dallas Jones Enterprises, Inc., doing business as Clay's Trucking during one or more workweeks in the last three years.

I consent to become a party plaintiff in the lawsuit styled *Johnny McClurg v. Dallas Jones Enterprises, Inc., doing business as Clay's Trucking*, United States District Court for the Western District of Kentucky, No. 4:20-CV-00201-JHM-HBB.

By joining this lawsuit, I designate the plaintiff named in the complaint, Johnny McClurg, as my representative, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, the method and manner of conducting and resolving the litigation, and all other matters pertaining to this lawsuit and litigation.

I understand I have the right to choose other counsel and to file a separate action of my own, but I choose to be represented in this matter by Law Office of Mark N. Foster, PLLC. I understand that this firm will seek court approval of an award of attorney's fees in the event of a recovery (and only in the event of a recovery) in accordance with a contingency fee agreement Johnny McClurg has executed, and agree to be bound by the terms of that agreement.

Print Name: _____     Date signed: _____

Signature: _____     Phone Number: _____

Address: _____     Email Address: _____

Address: _____