UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:20-CV-00201-JHM**

**JOHNNY MCCLURG**                                                                             **PLAINTIFF**

**V.**

**DALLAS JONES ENTERPRISES INC.**
**d/b/a Clay's Trucking**                                                  **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Plaintiff Johnny McClurg for judgment on the pleadings on Defendant Dallas Jones Enterprises, Inc.'s affirmative defenses of "Failure to Exhaust Administrative Remedies" and "Statutory Caps" [DN 60] and on a motion by Plaintiff for judgment on the pleadings that Defendant is judicially estopped from asserting that employees are exempt under the Fair Labor Standards Act's Motor Carriers Act Exemption [DN 61]. Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

According to his Second Amended Complaint, Plaintiff Johnny McClurg is a commercial truck driver. [DN 41 ¶ 19]. He was diagnosed with diabetes in 2007. [*Id.* at ¶ 76]. Federal and state regulations prevent individuals with diabetes from driving commercial motor vehicles unless they obtain a medical waiver. *See* 49 C.F.R. § 391.41(b)(3); 601 Ky. Admin. Regs. 1:005. McClurg obtained a medical waiver from the Commonwealth of Kentucky but did not obtain a medical waiver from the federal Department of Transportation. [DN 7 ¶¶ 78, 79]. McClurg's Kentucky medical waiver states that it is valid in "Intrastate Commerce only." [*Id.* at ¶¶ 83–84; DN 7-2]. Because that is the only medical waiver he obtained, McClurg could only drive in "intrastate commerce."

After McClurg's diabetes diagnosis, Defendant Dallas Jones Enterprises ("Dallas Jones"), a Kentucky-based trucking company, hired McClurg. [DN 7 ¶ 85]. Dallas Jones hired McClurg fully aware of his medical restrictions and that he could only drive in "intrastate commerce." [*Id*. at ¶¶ 84–86]. Dallas Jones only assigned McClurg to routes within the state of Kentucky. [*Id*. at ¶ 88]. McClurg performed this work along with Dallas Jones's other drivers. [*Id*. at ¶¶ 87–88]. Dallas Jones filed Form MCS-150 with the United States Department of Transportation Federal Motor Carrier Safety Administration ("FMCSA") that it and its drivers did not operate in interstate commerce and instead operated "intrastate" only. [*Id*. at ¶¶ 21, 23]. As a result, Plaintiff alleges that Dallas Jones is not an interstate carrier and not authorized to operate in interstate commerce. [*Id.*]. Two sister companies of Dallas Jones, specifically DC Trucking, Inc. and DC Transport, Inc., hire drivers that operate in interstate commerce and hired employees of Dallas Jones as well. [*Id.* at ¶¶ 46–49].

Throughout McClurg's employment, Dallas Jones paid him on a "per-ton basis"—a flat fee for every ton of coal transported. [*Id*. at ¶¶ 90–92]. But McClurg would sometimes work more than forty hours in a week, and Dallas Jones did not increase his fee on those deliveries. [*Id*. at ¶¶ 93–94]. Believing he was entitled to overtime when he worked more than forty hours in a week, McClurg sued. His Second Amended Complaint asserts two causes of action: a federal claim for unpaid overtime under the Fair Labor Standards Act ("FLSA") and a state law claim under the Kentucky Wage and Hour Act ("KWHA"). [*Id*. at ¶¶ 95–117]. He also sought to represent a collective (for the FLSA) and class (for the KWHA) of similarly situated plaintiffs. The Court conditionally certified a collective of truck drivers who worked for Dallas Jones and were subject to the Fair Labor Standards Act. [DN 59].

Five days after the Court conditionally certified the action, McClurg filed two motions for judgment on the pleadings arguing that two of Dallas Jones's affirmative defenses should be stricken and that Dallas Jones is judicially estopped from asserting the Motor Carriers Act Exemption. [DN 60, DN 61].

## II. STANDARD OF REVIEW

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) applies the same standards that govern motions to dismiss under Rule 12(b)(6)." *Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 737 (E.D. Mich. 2017); Fed. R. Civ. P. 12(c); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001). "'The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true.'" *Martin*, 265 F. Supp. 3d at 737 (quoting *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001)). Although not typical, a plaintiff may bring a motion under this Rule. *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 172 (E.D. Mich. 2006), aff'd in part, remanded in part, 511 F.3d 554 (6th Cir. 2007) (citing *Ramsey v. Amfac*, 960 F.Supp. 1424, 1426 (N.D. Cal. 1997)).

On the other hand, under Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Although the Sixth Circuit has not addressed the subject, the rigorous pleading rules applicable to complaints as outlined in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), generally do not apply to pleading affirmative defenses." *Martin*, 265 F. Supp. 3d at 737. "'An affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense.'" *Id.* (quoting

5 Wright & Miller, Federal Practice and Procedure § 1274); *see also Creative Lifting Servs., Inc. v. Steam Logistics, LLC*, No. 1:20-CV-337, 2022 WL 136727, at *7 (E.D. Tenn. Jan. 13, 2022). Thus, "[i]t appears that Rule 12(f) is more suited to a challenge to the sufficiency of affirmative defenses." *Martin*, 265 F. Supp. 3d at 737. "A motion to strike should be granted if 'it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings.'" *Id.* (quoting *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991))).

### III. DISCUSSION

#### A. Failure to Exhaust Administrative Remedies Affirmative Defense

McClurg argues that the third affirmative defense of "failure to exhaust administrative remedies" [DN 46 at 19, ¶ 3] is not applicable to the FLSA and the KWHA claims and should be stricken from the answer. [DN 60 at 2–4]. McClurg maintains that that neither the FLSA or the KWHA requires a plaintiff to exhaust administrative remedies or contains any time limits for a plaintiff to pursue required administrative remedies. Under either Act, a plaintiff may proceed directly to the Court without pursuing any administrative remedies. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).

Dallas Jones disagrees arguing that this issue remains open at least under Kentucky law. According to Dallas Jones, the Kentucky Supreme Court's holding that courts have jurisdiction to adjudicate KRS § 377.055 claims without the need for exhaustion of remedies is dicta. *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354 (Ky. 2005). Therefore, Dallas Jones contends that there has not been a definitive ruling foreclosing arguments to the contrary. [DN 69 at 2–4].

Despite Dallas Jones's argument, the Court finds that *Parts Depot* settles the issue of whether the Court can exercise jurisdiction to hear McClurg's statutory wage claim pursuant to KRS § 337 without exhaustion of administrative remedies. *Oaks v. 3M Co.*, 453 F.3d 781, 783 (6th Cir. 2006). As noted by the Sixth Circuit,

> *Parts Depot* settles the issue of whether the district court erred in determining it lacked jurisdiction to hear Oaks's statutory wage claim pursuant to Ky. Rev. Stat. § 337. *Parts Depot* held that section 337.385(1) "unambiguously authorizes an uncompensated or undercompensated employee to sue the employer in 'any court of competent jurisdiction' for the amount due and unpaid, plus liquidated damages, costs, and attorney fees." 170 S.W.3d at 358. *Parts Depot* held that a plaintiff may file a wage claim in district court. Accordingly, the district court here erred in concluding that it lacked jurisdiction to hear Oaks's Ky. Rev. Stat. § 337 claim.

*Oaks*, 453 F.3d at 783; *see also Bowman v. Builder's Cabinet Supply Co.*, No. 04–201–DLB, 2006 WL 2460817 at *9 (E.D. Ky. Aug. 23, 2006); *England v. Advance Stores Co. Inc.*, 263 F.R.D. 423, 438 (W.D. Ky. 2009).

Based on the discussion above, the Court finds that the affirmative defense of "failure to exhaust administrative remedies" is not applicable to McClurg's FLSA and KWHA claims as a matter of law and is stricken pursuant to Federal Rule of Civil Procedure 12(f).

**B. Statutory Caps Affirmative Defense**

McClurg also argues that the eighteenth affirmative defense of "statutory caps" should be stricken from the answer. [DN 60 at 4–5]. McClurg contends that neither the FLSA nor the KWHA provides any statutory damage cap; instead, under both statutes, a defendant is liable for the unpaid wages, plus liquidated damages in an additional equal amount, plus attorney's fees. KRS § 337.385; 29 U.S.C. § 216. According to McClurg, neither statute limits recoveries as does "reform legislation" which "caps" or "reduces" tort recoveries for emotional distress damages.

In Dallas Jones's answer, it asserts that "any damages awarded to Plaintiff and those individuals he seeks to represent should be reduced by any applicable statutory caps." [DN 46 at

5

¶ 18]. Dallas Jones maintains that McClurg's argument reflects a misunderstanding about the term "statutory caps" as utilized in its defense. Dallas Jones represents that it is not referencing a "reform legislation" mechanism, but instead it is referencing a statutory limitation on damages of any sort, such as in the FLSA's statutory framework. 29 U.S.C. § 260 (liquidated damages). [DN 69 at 4–5].

Both parties appear to be in agreement that the amount of damages for an FLSA action is governed by 29 U.S.C. § 216(b) and that liquidated damages are subject to the good faith exception outlined in 29 U.S.C. § 260. In light of those understandings, "the Court sees no need to strike the 'defense,'" *Solis v. Bruister*, 4:10CV77-DPJ-FKB, 2012 WL 776028, at *7 (S.D. Miss. Mar. 8, 2012), or spend valuable judicial resources resolving the parties' dispute on the meaning of the term "caps." Therefore, McClurg's motion to strike this affirmative defense is denied.

### C. Motor Carriers Act Exemption

McClurg argues that Dallas Jones should be judicially estopped from arguing that he or any other member of the collective is exempt from the overtime requirements of the FLSA or the KWHA under those acts' Motor Carriers Act exemptions. McClurg maintains that such an argument contradicts Dallas Jones's prior signed MCS-150 forms[1] submitted to the FMCSA, which reflect that it was involved in "intrastate only" trucking. [DN 61, DN 61-1]. Representatives from Dallas Jones signed the MCS-150 reports declaring "under penalty of

---

[1] An MCS–150 is a United States Department of Transportation registration form for vehicles transporting passengers or hauling cargo in interstate commerce. http://www.fmcsa.dot.gov; 49 U.S.C. § 13902. "If the Secretary determines that a registrant under this section does not meet, or is not able to meet, any requirement [of this section] . . . , the Secretary shall withhold registration." 49 U.S.C. § 13902(a)(4). Furthermore, if motor carriers fail to "register their operations as required by this section or that operate beyond the scope of their registrations," 49 U.S.C. § 13902(e), the FMCSA "may order the motor carrier operations out-of-service" until they meet those requirements, 49 U.S.C. § 13902(e)(1). *See* Fed. Proc. Forms § 66:118. "Subsequent to the issuance of the out-of-service order, the Secretary will provide an opportunity for review to occur not later than 10 days after issuance of such order." *Id.*

perjury" "that the information entered on this report is, to the best of my knowledge and belief, true, correct, and complete." [DN 61-1].

In support of his argument, McClurg cites to multiple cases in which a party was estopped from taking a position contrary to earlier sworn statements made to regulators, which resulted in the regulator accepting the statement made for purposes of its regulatory functions. [DN 61 at 4–5]; *U.S. Bank Nat'l Ass'n v. Windstream Servs., LLC*, No. 17-CV-7857, 2019 WL 948120, at *16 (S.D.N.Y. Feb. 15, 2019) (citing *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997) ("[n]umerous decisions have approved the application of judicial estoppel where the prior statements were made in administrative or quasi-judicial proceedings" and "[a]scertaining the truth is as important in an administrative inquiry as in judicial proceedings"); *Kelly v. Land O'Frost, Inc.*, No. 4:19CV-00103-JHM, 2020 WL 1812220, at *3 (W.D. Ky. Jan. 8, 2020) (dismissing, at employer's request, employee's wrongful termination lawsuit without deciding its merits solely because the employee did not disclose the wrongful termination claim in an intervening bankruptcy); *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810 (E.D. N.Y. 2013) (employee entitled to summary judgment on MCA exemption defense when employer asserted it was "Intrastate only" during applicable time period). McClurg maintains that since Dallas Jones gained a regulatory advantage for years by asserting, under penalty of perjury, that the FMCSA should not regulate it, the company should not be heard to argue in this Court that it has throughout the same period been subject to Department of Transportation regulation and, therefore, entitled to use the MCA exemption to the FLSA.

The purpose of the doctrine of judicial estoppel is "to protect the integrity of the judicial process." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-CV-1509, 546 F. Supp. 3d 679, 690 (S.D. Ohio June 28, 2021) (quoting *Edwards v. Aetna*

*Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982)). "The doctrine of judicial estoppel prevents a party who successfully assumed one position in a prior legal proceeding from assuming a contrary position in a later proceeding." *Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). "Even the decision not to apply judicial estoppel is based on protecting the essential functions of judicial institutions; judicial estoppel is applied cautiously 'because the doctrine precludes a contradictory position without examining the truth of either statement,' thus impeding 'the truth-seeking function of the court.'" *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 546 F. Supp. 3d at 690 (quoting *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020)). Accordingly, "judicial estoppel is applicable to quasi-judicial administrative and agency proceedings." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 546 F. Supp. 3d at 691 (citing *Edwards*, 690 F.2d at 599 (considering whether judicial estoppel precluded claims based on a plaintiff's prior benefit claims before the Veterans Administration)). However, "[a]s the label implies, judicial estoppel arises only from a position taken in an adjudicatory proceeding. Inconsistent positions taken in other contexts must be measured by other theories." § 4477 Preclusion of Inconsistent Positions—Judicial Estoppel, 18B Fed. Prac. & Proc. Juris. § 4477 (2d ed.).

      Applying that standard here, the Court finds that Dallas Jones is not judicially estopped from presenting evidence that the MCA exemption applies because the initial MCS-150 form is not part of a judicial, quasi-judicial, or administrative adjudicative process. Here, a representative from Dallas Jones signed the MCS-150 form under oath, and it was submitted to the Department of Transportation ("DOT") with no additional follow-up or investigation by the DOT. The DOT did not withhold the registration, did not find that Dallas Jones failed to file the registration as

8

required or operated beyond the scope of its registration, did not suspend or revoke the operating authority ("out-of service order"), and did not conduct a hearing subsequent to the issuance of the out-of-service order. This was simply an administrative filing, not an adjudicative proceeding. "[T]he mere fact that an administrative agency can do further fact finding, that could possibly put a party under oath in a hearing, does not make the initial filing a 'quasi-judicial' proceeding." *Wendel v. Int'l Real Est. News, LLC*, No. 19-21658-CIV, 2020 WL 8458855, at *6 (S.D. Fla. July 24, 2020) (rejecting defendant's argument that a PERM application signed under oath is adjudicatory because the Department of Labor regulations allow for the possibility of more review by the administrative agency), report and recommendation adopted in part, rejected in part on other grounds, No. 19-21658-CIV, 2021 WL 193752 (S.D. Fla. Jan. 20, 2021).

Additionally, McClurg has not provided, and the Court cannot find, any law suggesting that the MCS-150 forms tendered to the DOT are an adjudicative proceeding that might warrant the application of judicial estoppel. The two most relevant cases relied upon by McClurg are *U.S. Bank Nat'l Ass'n v. Windstream Servs., LLC* and *D'Arpa v. Runway Towing Corp.* However, these cases do not support McClurg's position.

First, unlike the present case, the regulatory proceeding discussed in *U.S. Bank Nat'l Ass'n v. Windstream Servs., LLC*, 2019 WL 948120, at *16 (S.D.N.Y. Feb. 15, 2019), involved (1) a petition by Windstream Services to transfer certain assets to its subsidiaries in which the Windstream entities made explicit representations to nine state regulatory bodies that the Transferor Subsidiaries would transfer ownership of the Transfer Assets and then "lease them back [to Windstream] on an exclusive, long-term basis," (2) sworn testimony from general counsel of the Windstream entities in response to interrogatories propounded by certain state public service commissions in the regulatory proceeding, and then (3) the issuance of orders from the state public

9

service commissions adopting the representations made by the Windstream entities in approving the transaction. *Id.* at 3–16. The approval of the asset transfer was an adjudicative proceeding. In fact, the parties in *Windstream* agreed that the approval of the asset transfer was a regulatory-adjudicative proceeding. The disagreements in *Windstream* were whether the prior statements made by the Windstream entities were inconsistent with their current position and whether the plaintiff actually faced an unfair advantage in light of the fact that it was not a party to the prior regulatory proceeding. *Id.* Given the non-adjudicative nature of the MCS-150 form in the present case, the Court finds this case inapplicable.

Second, while McClurg cites to *D'Arpa v. Runway Towing Corp.*, 2013 WL 3010810 (E.D. N.Y. 2013), in support of the use of judicial estoppel in the present case, the Court finds this case acknowledges that the MCS-150 forms are evidence to be considered at summary judgment. For instance, in denying the defendants' motion for summary judgment on the plaintiff's FLSA overtime claim, the Court found that the defendants failed to meet their burden that they—the employers—were involved in interstate transportation. The Court concluded that the *only* evidence to support the interstate transportation requirement was the defendants' representations on the MCS-150 forms that they were "intrastate only" during applicable time period. The court also noted that:

> Defendants have failed to meet their burden of establishing the applicability of the motor carrier exemption in a number of other respects (beyond the interstate transportation requirement). Defendants have not, for example, offered evidence establishing the interstate character of the activities of each Plaintiff. In other words, they have not shown that interstate travel "was shared indiscriminately by the drivers and was mingled with the performance of other like driving services rendered by them otherwise than in interstate commerce." *Morris [v. McComb]*, 332 U.S. [442], 433 [(U.S. 1947)]; *Dauphin [v. Chestnut Ridge Transp., Inc.]*, 544 F. Supp. 2d [266], at 276 [(S.D.N.Y. Mar. 26, 2008)] ("The record . . . does not disclose how [interstate] runs were assigned and whether they were shared among all . . . drivers."). Moreover, Defendants do not address the interstate character of the activities performed by the non-driver Plaintiffs, Fallas (dispatcher) and Shao

> (secretary and office assistant). Defendants have also not offered evidence establishing whether interstate travel "was part of [each] plaintiff's job duties during the entire period at issue in this litigation," preventing the Court from "determin[ing] whether the motor carrier exemption applies to them for all the relevant workweeks." *Dauphin*, 544 F. Supp. 2d. at 276.

*D'Arpa*, 2013 WL 3010810, at *11 n.26. In *D'Arpa*, the MCS-150 forms were merely one component of evidence considered by the court in summary judgment. *Id.* The Court finds *D'Arpa* persuasive.

Accordingly, the Court believes Dallas Jones's prior statements contained within the MCS-150 forms should not be the subject of judicial estoppel, but should be analyzed under traditional summary judgment principles. Furthermore, Dallas Jones also raises the argument that its MCS-150 forms were potentially incorrect because of management's mistake or a misunderstanding of the nature of its operations which could separately negate the application of judicial estoppel. *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478, 481 (6th Cir. 2010) (judicial estoppel does not apply if the omission "resulted from mistake or inadvertence.").

For these reasons, the Court denies McClurg's motion for judgment on the pleadings on the issue of whether Dallas Jones operated in interstate commerce.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Plaintiff Johnny McClurg for judgment on the pleadings on Defendant Dallas Jones Enterprises, Inc.'s affirmative defenses of "Failure to Exhaust Administrative Remedies" and "Statutory Caps" [DN 60] is **GRANTED IN PART AND DENIED IN PART**. Defendant's affirmative defense of "failure to exhaust administrative remedies" is not applicable to Plaintiff's FLSA and KWHA claims as a matter of law and is stricken pursuant to Federal Rule of Civil Procedure 12(f).

**IT IS FURTHER ORDERED** that the motion by Plaintiff for judgment on the pleadings that Defendant is judicially estopped from asserting that employees are exempt under the Fair Labor Standards Act's Motor Carriers Act Exemption [DN 61] is **DENIED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

March 3, 2022

cc: counsel of record