UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:20-CV-00201-JHM

**JOHNNY MCCLURG** *o/b/o*
*Himself & All Others Similarly Situated*                                                                **PLAINTIFF**

**V.**

**DALLAS JONES ENTERPRISES INC.**
*d/b/a* **CLAY'S TRUCKING, et al.**                                                                 **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's motion styled "Motion to Compel and for Order Deeming Defendant to Have Waived Defendant's Objections to Plaintiff's Second Set of Discovery Requests" (DN 95). Defendant responded in opposition (DN 105) and Plaintiff replied (DN 116).

## NATURE OF THE CASE

The Court's recent Memorandum Opinion and Order (DN 147) summarizes the posture of the case as derived from Plaintiff's third amended complaint (DN 84):

> Plaintiff Johnny McClurg is a commercial truck driver. [DN 84 ¶ 78]. He was diagnosed with diabetes in 2007. [*Id.* at ¶ 79]. Federal and state regulations prevent individuals with diabetes from driving commercial motor vehicles unless they obtain a medical waiver. *See* 49 C.F.R. § 391.41(b)(3); 601 Ky. Admin. Regs. 1:005. McClurg obtained a medical waiver from the Commonwealth of Kentucky but did not obtain a medical waiver from the federal Department of Transportation. [DN 84 ¶¶ 82, 83]. McClurg's Kentucky medical waiver states that it is valid in "Intrastate Commerce only." [*Id.* at ¶¶ 85–88; DN 7-2]. Because that is the only medical waiver he obtained, McClurg could only drive in "intrastate commerce."

> After McClurg's diabetes diagnosis, Defendant Dallas Jones Enterprises, a Kentucky-based trucking company, hired McClurg. [DN 84 ¶ 89]. Dallas Jones Enterprises hired McClurg fully aware of his medical restrictions and that he could only drive in "intrastate

> commerce." [*Id.* at ¶¶ 88–90]. Dallas Jones Enterprises only assigned McClurg to routes within the state of Kentucky. [*Id.* at ¶ 91]. McClurg performed this work along with Dallas Jones's other drivers. [*Id.* at ¶¶ 89–91]. Dallas Jones Enterprises filed Form MCS-150 with the United States Department of Transportation Federal Motor Carrier Safety Administration ("FMCSA") stating that it and its drivers did not operate in interstate commerce and instead operated "intrastate" only. [*Id.* at ¶¶ 25–32]. As a result, McClurg maintains that Dallas Jones Enterprises is not an interstate carrier and not authorized to operate in interstate commerce. [*Id.*]. Two sister companies of Dallas Jones Enterprises, specifically DC Trucking, Inc. and DC Transport, Inc., hire drivers that operate in interstate commerce and hired employees of Dallas Jones as well. [*Id.* at ¶ 64 n. 3].
>
> Throughout McClurg's employment, Dallas Jones Enterprises paid him on a "per-ton basis"—a flat fee for every ton of coal transported. [*Id.* at ¶¶ 95–97]. But McClurg would sometimes work more than forty hours in a week, and Dallas Jones Enterprises did not increase his fee on those deliveries. [*Id.* at ¶ 96]. Believing he was entitled to overtime when he worked more than forty hours in a week, McClurg sued. He asserts two causes of action against Dallas Jones Enterprises: a federal claim for unpaid overtime under the Fair Labor Standards Act ("FLSA") and a state law claim under the Kentucky Wage and Hour Act ("KWHA"). [*Id.* At ¶¶ 126–165]. He also continues to seek to represent a collective (for the FLSA) and class (for the KWHA) of similarly situated plaintiffs.

(DN 147, pp. 1-2).

## PLAINTIFF'S MOTION

McClurg styles his motion as both a motion to compel and a motion for a ruling deeming Defendant to have waived objections in the discovery responses (DN 95). Insofar as the motion is described as a motion to compel, it is a misnomer as McClurg acknowledges that Defendant served discovery responses (Id. at p. 2).

The substance of McClurg's motion is that Defendant failed to provide the responses within the thirty days called for under Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A) (Id. at pp. 14-16). McClurg states that he served the discovery requests by both e-mail and postal mail on March 2,

2022 (Id. at p. 3). Allowing three additional days for service by mail under Rule 6(d), the responses would have been due on April 4, 2022 (Id.). The responses, however, were not provided until May 6, 2022—32 days beyond the deadline established by the Rules (Id. at p. 9). As sanction for the delay, McClurg asks that Defendant be deemed to have waived any objections set forth in the discovery responses (Id. at p. 16). Plaintiff further seeks an award of attorney fees for bringing the motion (Id. at p. 17).

## DEFENDANT'S POSITION

Defendant explains that the discovery requests were extensive and required the review and copying of thousands of documents, which required the services of an outside copying vendor (DN 105, pp. 2, 6). Defendant acknowledges that its discovery responses were tardy and that it failed to move for an extension of time in which to file them (Id. at p. 7). Defendant explains that, during the pendency of its discovery productions, it engaged in discussions with Plaintiff regarding both the timing and the scope of the discovery requests and asked for additional time to respond (Id. at pp. 2-4, 6-8). Defendant notes that, while FED. R. CIV. P. 33(b)(4) provides that an objection is not stated in a timely manner is deemed waived, it also provides that the court may excuse the failure to timely object for good cause (Id. at p. 5). It points to its efforts to coordinate an extension with Plaintiff in light of the burden it faced in production as satisfying good cause (Id. at pp. 7-8). It identifies the following as demonstrating that it acted with diligence:

> Specifically as to diligence, Clay's Trucking relies on (1) its apprising Mr. McClurg multiple times of the challenges and need for extra time, (2) Defendant's request for an extension from Mr. McClurg that he frustrated by seeking concessions and litigation advantage in response, (3) Clay's Trucking's identification of numerous potentially discoverable documents and service of Responses and an interim partial Production of more than 9,000 pages; and (4) Defendant's further identification of documents, resulting in approximately 47,000 pages of potentially discoverable

3

>material, and retention of a third party vendor at a cost of more than $11,000 to ensure thorough professional handling of the material.

(Id. at p. 8).

In the alternative, Defendant asserts that application of an excusable neglect standard supports denying Plaintiff the relief he requests (Id. at pp. 9-10). The factors of this standard are "(i) the danger of prejudice to the nonmoving party; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay; (iv) whether the delay was within the reasonable control of the moving party; and (v) whether the late-filing party acted in good faith." (Id. at p. 9) (quoting KY Closeouts, LLC v. Eagle Trace, Inc., 1:20-CV-00212-GNS-HBB, 2021 WL 5142774, *2 (W.D. Ky. Nov. 3, 2021). Defendants argue that Plaintiff suffers no prejudice as a scheduling order is not in place at this time, the delay was only 32 days, and it has no material impact on the litigation as the delay resulted from the breadth of the discovery requests and which was not within its control and that it acted in good faith in gathering the information for production (Id. at pp. 9-10).

Finally, should the Court find waiver of objections and the application of Rule 37, it argues against an award of attorney fees because its action was substantially justified in that it attempted to negotiate an extension of time with Plaintiff (Id. at pp. 11-12).

## DISCUSSION

FED. R. CIV. P. 33(b)(4) provides that where an objection to a discovery request is untimely, the objection is deemed waived. Rogers v. Webstaurant Store, Inc., No. 4:18-CV-00074-JHM, 2018 U.S. Dist. LEXIS 215885, *7 (W.D. Ky. Dec. 20, 2018). The rule also provides that this waiver may be excused where the court finds good cause for the tardy objection. Sullivan v. Family Dollar Stores, No. 3:19-CV-00846-DJH, 2021 U.S. Dist. LEXIS 253355, *9 (W.D. Ky. Oct. 7, 2021). In making this determination, the Court must examine the circumstances of each

case, including the reason for tardy compliance, prejudice to the opposing party, and facial propriety of the discovery requests to determine if enforcement of the waiver is equitable. Suri v. Equifax Info. Servs., LLC, No. 21-10866, 2022 U.S. Dist. LEXIS 83442, at *8-9 (E.D. Mich. May 9, 2022); Palombaro v. Emery Fed. Credit Union, No. 1:15-CV-792, 2017 U.S. Dist. LEXIS 6365, *10 (S.D. Ohio Jan. 17, 2017).

Here, Defendant has explained that the delay was due to the need to gather and copy a large number of documents (*see* DN 105, p. 6). Defendant also notes that the time its legal team could devote to the responses was compromised by one counsel's medical issue, another counsel's extensive business travel and otherwise dealing with significant peripheral issues in the case (Id. at pp. 2-3). Plaintiff has not identified any prejudice resulting from the delay (*see generally* DN 95, 116). Given the impact of extensive class-certification discovery and dispositive motion pleadings, a full-litigation scheduling order has not yet been entered. Where there is no prejudice, a complete waiver of objections may represent a disproportionately harsh result. Rulo v. Ricoh Ams. Corp., No. 15-CV-00736-HSG(JSC), 2015 U.S. Dist. LEXIS 145741, *7 (N.D. Cal. Oct. 17, 2015) (citing Karr v. Napolitano, No. C 11-02207 LB, 2012 U.S Dist. LEXIS 75709, at *18 (N.D. Cal. May 31, 2012)). Both of these factors weigh in favor of finding good cause for the delay. As to the facial propriety of the discovery requests, no argument has been made in that regard, so it weighs against good cause.

Another factor which the Court may take into consideration is a party's efforts to alert the opposing party that the response to discovery would be delayed. *See* Palombaro, 2017 U.S. Dist. LEXIS 6365, at *11. Prior to the due date for the discovery responses, Defendant reached out to Plaintiff and requested an extension of time to April 18, 2022, as it was "taking slightly longer than expected due to the amount of documents and opt-ins at issue" (DN 105-2, p. 2). Plaintiff

responded with a lengthy e-mail questioning why the response was being delayed and addressing a number of unrelated matters (Id. at p. 1). Thereafter, communications between the parties became enmeshed in argument over a variety of matters, only some of which were related to the timing of the discovery responses.

The determination of waiver is within the sound discretion of the Court. Scott v. Abernathy Motorcycle Sales, No. 1:18-CV-01077-STA-egb, 2018 U.S. Dist. LEXIS 237780, *6 (W.D. Tenn. Jan. 18, 2019). Defendant has candidly admitted that the better course of action would be for it to have filed a motion for an extension of the time for responding to the discovery requests and that some of its communications with Plaintiff were not as timely as it would hope. Nonetheless, Defendant communicated with Plaintiff that it anticipated a delay in responding to the discovery requests and has provided reasonable explanations for why the discovery responses were not timely filed. Defendant appears to have made a good faith attempt at compliance and its conduct does not rise to the level of "foot-dragging or a cavalier attitude toward following court orders and the discovery rules. . . ." justifying a finding of waiver. Palombaro, 2017 U.S. Dist. LEXIS 6365 at *12. Given that the Court finds good cause for the delay, an award of attorney's fees is unjustified.

**WHEREFORE**, Plaintiff's motion (DN 95) is **DENIED**.

H. Brent Brennenstuhl
United States Magistrate Judge

August 18, 2022

Copies:      Counsel of Record