**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| JOHNNY McCLURG, on Behalf of Himself and All Others Similarly-Situated, | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | CASE NO.    4:20-CV-201-RGJ-HBB |
| DALLAS JONES ENTERPRISES INC, d/b/a CLAY'S TRUCKING, DANA PORTER, BROCK PORTER, And ALFREDA JONES (as Executrix Of the Estate of Dallas Jones) | ) ) ) ) ) ) | **JURY DEMANDED** |
| *Defendants.* | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT PURSUANT TO FED. R. CIV. P. 23**

Plaintiff respectfully submits this memorandum of law in support of his Motion for Final Approval of Class Action Settlement.[1] A proposed Final Approval Order is submitted with the Motion.

## I.    INTRODUCTION

After five years of contested litigation, the Parties have reached an agreement to settle this Action on a class basis as set forth in the Settlement Agreement, which encompasses a non-reversionary cash fund for the benefit of the Settlement Class of $480,000.00. The Parties reached the Settlement after extensive litigation, well-informed and arms'-length settlement negotiations

---

[1] Unless otherwise stated, all capitalized terms herein are as defined in the Parties' Settlement Agreement, dated June 11, 2025 (DN 242-1 and the "Settlement" or "Settlement Agreement"). All "S.A. ¶ __" references are to paragraphs in the Settlement Agreement. In further support of the Motion, attached as <u>Exhibit 1</u> is the Declaration of Mark N. Foster ("Foster ¶ __").

by experienced counsel on both sides, exhaustive discovery concerning the claims and defenses at issue, and two separate full-day judicial settlement conferences before the Magistrate Judge.

On June 27, 2024, the parties entered into their initial Settlement Agreement at the conclusion of the second settlement conference; thereafter, they negotiated the exhibits thereto and filed the agreement with the Court. DN 235-1. Thereafter, following the Court's May 16, 2025 Order (DN 241), the Parties entered into a revised Settlement Agreement on June 11, 2025. *See* DN 242-1. The Court granted preliminary approval on July 10, 2025 (DN 245), and notice of the Settlement was thereafter disseminated to seventy-five (75) Class Members.

By the time the Settlement was reached, Plaintiff and Plaintiff's Counsel were aware of the strengths and weaknesses of the claims and defenses, and each made an informed evaluation of the contingent risks of continued litigation balanced against the significant and certain monetary recovery provided by the proposed Settlement. The proposed Settlement is not only in the best interests of the Settlement Class, but is an excellent negotiated result considering the risks, uncertainties, and delay that continued litigation would bring, which might then result in a smaller recovery or no recovery at all if Defendants prevailed.

As detailed below, the Settlement is fair, reasonable, and adequate under the factors set forth in Fed. R. Civ. P. 23(e) and applicable case law. Accordingly, Plaintiff requests that the Court enter a Final Approval Order (i) granting final class certification of the Settlement Class; (ii) finding dissemination of the Settlement Notices was accomplished as directed and met the requirements of due process; (iii) granting final approval of the settlement as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e); (iv) directing that the Settlement funds be distributed in accordance with the terms of the Settlement Agreement; and (v) directing implementation and performance of all terms of the Settlement Agreement and the Court's Final Approval Order.

## II.    FACTUAL AND PROCEDURAL HISTORY[2]

The factual and procedural history of this case as well as the terms of the Settlement were previously stated in the Parties' Preliminary Approval Motion, which is incorporated herein by reference. (DN 242-3 at 2–4).

On June 12, 2025, the Parties filed a Joint Motion for Preliminary Approval of Class Action Settlement (DN 242). On June 26, 2025, the Court held an in-person hearing on the Motion, and on June 27, 2025, the Court issued an Order (DN 243) directing the Parties to file a revised Notice of Class Action Settlement. On July 2, 2025, the Parties filed a revised Notice of Class Action Settlement (DN 244-1). On July 10, 2025, the Court entered an Order granting the motion (DN 245) ("Preliminary Approval Order"). In addition to granting preliminary approval of the Settlement pursuant to Fed. R. Civ. P. 23, the Court directed that Notice be sent to the members of the Settlement Class. The Court also set the Final Approval Hearing for October 23, 2025.[3]

In accord with the terms of the Settlement Agreement and the Preliminary Approval Order, Plaintiff's Counsel disseminated the Notice to Settlement Class Members. The deadline for Settlement Class Members to submit either a Request for Exclusion from the Settlement or to Object to the Settlement was September 13, 2025. ***There are zero objections and zero opt outs.***[4]

---

[2]    *See* Foster ¶¶ 7–13.

[3]    DN 245.

[4]    *See* Foster Decl. ¶ 21.

### III.    NOTICE PROCESS AND REMAINING SETTLEMENT ADMINISTRATION

#### A.    The Notice Process Has Been Effectuated Pursuant to the Terms of the Settlement Agreement

The Settlement includes the Gross Settlement Amount of $480,000.00 for the Settlement Class. S.A. ¶ 12(J). The Settlement is on behalf of the Settlement Class, which includes the Named Plaintiff, Opt-In Plaintiffs, and all individuals who worked for one or more of the Defendants as a truck driver for any period of time from December 7, 2015 to June 27, 2024. S.A. ¶ 12(Y).[5] The identified Settlement Class included seventy-five (75) members.

Following the Court's July 10, 2025 Order granting preliminary approval of the Settlement, the Parties worked to effectuate the notice provisions of the Settlement Agreement.  Defendants provided contact information for the Settlement Class Members.  S.A. at ¶ 21.  On July 30, 2025, Plaintiff's Counsel mailed the Class Notice to the seventy-five (75) Settlement Class Members. *See* Foster ¶ 20.  The deadline to object or opt out of the Settlement was September 13, 2025. *Id*. ¶ 13. As of the date of this filing, ***there are no objections and no requests for exclusions***. Foster ¶ 21.

#### B.    The Gross Settlement Amount and Release of Claims[6]

The Gross Settlement Amount will cover, subject to the Court's approval: (a) Settlement Payments to Settlement Class Members who did not opt out; (b) Class Counsel's attorneys' fees of up to one-third of the Gross Settlement Amount, to compensate Class Counsel for all work performed in this action to date, plus all work remaining to be performed, securing final Court approval, ensuring the Settlement is fairly administered and implemented, and obtaining dismissal; (c) reimbursement of Class Counsel's reasonable out-of-pocket costs (including administration

---

[5]    This time period is referred to herein as the "Applicable Class Period."

[6]    *See* Foster ¶¶ 15-21.

costs) not to exceed $2,000; and (d) a service award of $15,000 to Named Plaintiff for his service to the Settlement Class in bringing and prosecuting this action. S.A. ¶ 12(B), 12(J), 35-36. The Gross Settlement Amount excludes Employer Payroll Taxes, to be paid by Defendants *in addition to the Gross Settlement Amount*, thus increasing the Settlement's total value. S.A. ¶ 30.

After attorneys' fees and costs, Administration Costs, and service awards, as approved by the Court, are subtracted from the Gross Settlement Amount, the remainder ("Net Settlement Amount") will be distributed to Settlement Class Members who did not opt out. S.A. ¶ 12(O), 28. The amounts distributed shall be calculated pursuant to an objective formula based on tenure (*i.e.*, workweeks) during the Applicable Class Period. *Id.* at 28. The formula also takes into account whether each Settlement Class Member was an Opt-In Plaintiff, and whether he or she worked in each of three time periods for which different weighting was assigned based on different facts developed through discovery relating to such periods. *Id.*

If the Settlement is approved, the estimated average payment to a Settlement Class Member is approximately $4,040. Foster ¶ 17[7]. The results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation. There is no claims process, and a Settlement Class Member need not take any action in order to receive a Settlement Award. Significantly, none of the funds from the Gross Settlement Amount will revert to Defendants. S.A. ¶¶ 12(J), 28, 34.

---

[7]    This estimated average payment is for the Court's reference, and does not take into account applicable workweeks or points for respective individual Settlement Class Members. *See* Foster ¶¶ 16-17. The exact amount each Settlement Class Member would receive from the net settlement, if the Court approves the fee, expense, and named plaintiff award provided for in the settlement and sought, was provided to each Settlement Class Member in a list attached to the Notice. Foster ¶ 17; DN 242-1 at Page ID # 4541-4542. The amounts vary, based on the application of the objective formula, from $35.12 to $13,396.23

In exchange for the Settlement Payments, Plaintiff, Opt-In Plaintiffs, and Settlement Class Members will release only wage and hour claims through June 27, 2024, including:

> any and all known and unknown, asserted and non-asserted, wage and hour claims under federal and state law, including but not limited to, all unpaid overtime claims based upon the allegations made in the Lawsuit of not being paid overtime premium compensation for overtime work performed hours worked, including overtime compensation, claims of off the clock work, and claims under any theories for breach of an employment agreement/contract for failure to pay owed wages (including wage payment and collection law or similar claims), and including, without limitation, liquidated damages and all other penalties available; this release is for all such claims accruing from the beginning of time until June 27, 2024. This release includes a release of any and all federal and state law wage and hour claims described above, timing of wage payment, gap time, and unjust enrichment or similar claims that could have been brought by any Settlement Class Member based upon the facts and circumstances alleged in the Lawsuit.

S.A. at ¶ 38.

### C.    Distribution of Settlement Payments[8]

Settlement Payments will be negotiable for 90 days from the date of issuance ("Acceptance Period"). S.A. ¶ 32. Within thirty days after the Effective Date, Class Counsel will distribute all Settlement Checks with an accompanying letter in the form attached as Exhibit C to the Agreement, explaining that checks must be cashed during the Acceptance Period. *Id*. During the last twenty days of the Acceptance Period, Plaintiff's Counsel will mail reminders in the form attached as Exhibit D to the Agreement to those who have not yet cashed or deposited their Settlement Check. *Id*. During the Acceptance Period, Defendants will stop payment on a lost check and issue a new check, if necessary. *Id*.

If at the conclusion of the Acceptance Period (plus sixty days) there are any monies remaining from the Net Settlement Amount as a result of uncashed Settlement Checks, those funds will be will be sent to the Kentucky State Treasurer, Unclaimed Property Fund. S.A. ¶ 34; Foster

---

[8]    *See* Foster ¶¶ 23-24.

¶ 24. Also following the Acceptance Period, the Parties will file a joint Notice, notifying the Court that the Acceptance Period has concluded. S.A. ¶ 33. Once the Notice is filed, and following the parties' Rule 41 dismissal of certain claims, the Court will dismiss the case with prejudice. *Id.*

## IV. THE SETTLEMENT SHOULD BE FINALLY APPROVED

### A. Legal Standard for Final Approval

Courts have long recognized that there is an "especially strong" presumption in favor of voluntary settlements "in class actions ... where substantial judicial resources can be conserved by avoiding formal litigation." *Mullins v. Data Mgmt. Co.*, No. 1:20-cv-214, 2021 WL 2820560, at *4 (S.D. Ohio June 21, 2021) (citing *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *see also* NEWBERG ON CLASS ACTIONS §§ 11.41 ("The compromise of complex litigation can be encouraged by the courts and favored by public policy.").

Approval of a class action settlement involves two-stages: 1) "The judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing"; and 2) "If so, the final decision on approval is made after the hearing." *Elliott v. LVNV Funding, LLC*, No. 3:16-cv-00675-RGJ, 2019 WL 4007219, at *7 (W.D. Ky. Aug. 23, 2019) (citations omitted). At the final approval stage, a court can only approve a settlement if it is fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2). To assess a settlement's fairness, reasonableness, and adequacy, a court must review two sets of factors. First, a court must analyze factors set forth in Federal Rule of Civil Procedure 23(e). Second, it must examine the factors outlined by the Sixth Circuit in *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). While assessing the Sixth Circuit factors, courts respect that "[o]nce preliminary approval has been granted, a class action settlement is presumptively reasonable." *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

**B.    The Settlement Satisfies Rule 23(e)**

Under the Rule 23(e)(2) factors, a settlement is "fair, reasonable, and adequate" if: (A) the class representatives and class counsel adequately represent the class; (B) the proposal was negotiated at arm's length; (C) the relief for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including as to processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of same; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Here, as discussed above, the proposed Settlement Class Representative and Class Counsel have adequately represented the class, and the proposed Settlement was negotiated at arm's length with the assistance of the Magistrate Judge during two judicial settlement conferences. Foster ¶¶ 9, 26-27, 36-37. The relief provided for the Settlement Class is more than adequate considering the costs, risks, and delay in continued litigation. *Id.* ¶¶ 6, 27, 38.[9] Also, while a request for attorneys' fees and costs was addressed by a separate motion (DN 246), the proposed award of attorney's fees of one-third of the Gross Settlement Amount is well within the range of approval, and under the Settlement, payment would be made after the Effective Date of the Settlement. *See Wilson v. Anthem Health Plans of Ky., Inc.*, No. 3:14-cv-743, 2019 WL 6898662, at *4 (W.D. Ky. Dec. 18, 2019) ("Fee awards typically range from 20 to 50 percent of the common fund."). Also,

---

[9]    Moreover, "class members are not required to 'submit claim forms or other documents to participate in the recovery.'" *In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act & Wage & Hour Litig.*, No. 3:14-cv-290-DJH, 2024 WL 5362024, at *4 (W.D. Ky. Dec. 23, 2024) (citation omitted). As such, "payments will be made automatically to class members who did not timely opt out" and "no portion of the settlement amount will revert to Defendants." *Id.* ("[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." NEWBERG ON CLASS ACTIONS § 13:53.

the Parties have confirmed that there are no other agreements required to be identified under Rule 23(e)(3). *See* DN 242-3 at 8; Foster ¶ 25.

Finally, the allocation for the Settlement proceeds treats class members equitably relative to each other, pursuant to a common formula based on their applicable workweeks and claims.[10] S.A. ¶ 28; Foster ¶ 16, 30. In determining whether to approve a settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Burnham v. Papa John's Paducah, LLC*, No. 5:18-cv-112-TBR, 2020 WL 2065793, at *4 (W.D. Ky. Apr. 29, 2020) (citation omitted). "Neither the Federal Rules of Civil Procedure nor the Supreme Court requires that settlements offer a *pro rata* distribution to class members; instead the settlement need only be fair, reasonable, and adequate." *Id.* (quoting *Int'l Union, United Auto.*, 497 F.3d at 628); *accord Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 534 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) (holding that "[t]he law does not require pro-rata distribution"). "A plan for allocating settlement funds need not be perfect, and need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Vasquez v. A+ Staffing LLC*, 746 F. Supp. 3d 26, 57 (E.D.N.Y. 2024) (citation omitted).

Here, there were relevant differences in the strength of the various claims asserted that were properly accounted for in the settlement distribution formula above. For example, the filing of a complaint does not toll the statute of limitations for the FLSA claims of potential opt-ins.

---

[10]    The proposed formula also takes into account the strengths of various claims asserted, including: (a) the risk of Rule 23 class certification not being granted; (b) the risk of the Court not permitting the matter to proceed as an FLSA collective certification; and (c) differences in facts based on Defendant's customer (a coal mine) selling coal to different customers in different locations during different time periods. S.A. ¶ 28. *See also* DN 242-3, Preliminary Approval Brief at 14-16.

Foster ¶ 30. Accordingly, class members who filed consents have asserted an additional claim beyond the claims held by class members who did not file consents, who may have allowed their FLSA claim to become time-barred. *See* 29 U.S.C. § 256(b); *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011)); *see also Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 219 (E.D. Mich. 2010) ("[U]nlike class actions under Rule 23, conditional certification of a collective action under § 216(b) of the FLSA does not toll the statute of limitations for potential plaintiffs."). Also, by signing their respective consent forms, each Opt-In Plaintiff participated in the case, was available and required to submit to deposition testimony or respond to written discovery and assert their own claim, and was not a mere passive observer or absent class member. *See, e.g., Canaday v. Anthem Cos. Inc.*, 9 F.4th 392, 394 (6th Cir. 2021) ("opt-in plaintiffs enjoy party status as if they had initiated the action" for FLSA purposes). They thereby bound themselves to the determination and disposition of this action, including settlement. Further, in the event this action had not settled, Defendants were prepared to move for decertification. If the Settlement were not approved and decertification was granted, Opt-In Plaintiffs would have risked dismissal of any FLSA claims and (unlike class members who allowed their FLSA claim to become time-barred) borne the risk of having the opportunity to file and prosecute individual FLSA actions if they wished to continue to litigate such claims, including in federal court. Foster ¶ 32.

Moreover, courts have noted that individuals who opt into an FLSA lawsuit, unlike Rule 23 class members, may be subject to a general fear of retaliation when joining as an opt-in plaintiff or filing an individual claim regarding their wages. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) ("[A]n employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA rights.").

Discovery in this action was also extensive. This Court permitted individualized discovery

as to all Opt-In Plaintiffs. [DN 164]. All of the depositions were of Named Plaintiff and Opt-In Plaintiffs. Foster ¶ 33.

The allocations in the Agreement are reasonable, in light of these legal and factual considerations.[11]

### C.    The Settlement Is Fair, Reasonable, and Adequate

The Sixth Circuit also applies a seven-factor test to assess whether a class action settlement is "fair, reasonable, and adequate" under Rule 23(e). *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (citing *Int'l Union, United Auto.*, 497 F.3d at 620). Those factors include: (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest." *Id.* Here, the above factors firmly support final approval of the Settlement.[12]

---

[11]     *Accord, e.g.*, *Lackie v. U.S. Well Servs., Inc.*, No. 2:15-cv-695, 2017 WL 784815, at *2 (S.D. Ohio Mar. 1, 2017), *report and recommendation adopted*, 2017 WL 951479 (Mar. 10, 2017) (awards using relative weighting among plaintiffs, opt-ins, and class members: "method of allocation is fair to all, while recognizing the additional risks and commitment undertaken by the Plaintiffs and Opt-Ins in bringing the case or affirmatively opting in"); *Florece v. Jose Pepper's Rests., LLC*, No. 20-cv-2339-ADM, 2021 WL 5042715, at *2 (D. Kan. Oct. 29, 2021) (multiplier to certain claims based perceived legal strengths of the claims); *Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452-NT, 2021 WL 3852720, at *9 (D. Me. Aug. 27, 2021) ("It may be reasonable to give [workers] who filed claims earlier and may have preserved more of their FLSA claims than those filing later claim forms a larger slice of the settlement pie.") (citing *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *2 (S.D. Ohio Nov. 25, 2019) (equitable to divide settlement fund to class members based on "(1) when they opted into the case and (2) how many hours they worked"); *Smith v. Kaiser Found. Hosps.*, No. 18-cv-780-KSC, 2020 WL 5064282, at *14 (S.D. Cal. Aug. 26, 2020) ("plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable").

[12]     "The Sixth Circuit does not appear to have addressed the current version of Rule 23(e)(2). Since the rule's 2018 amendment, courts within the Circuit have applied both sets of factors" listed in subsection B and C of this brief, although acknowledging that the two sets of factors overlap. *In re Amazon.com*, 2024 WL 5362024, at *3.

a.    **Risk of Fraud or Collusion**

The approval analysis often focuses on whether the settlement is the product of arms'-length negotiations. The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir. 1986). Courts have also held that "absent evidence of fraud or collusion, the Court may presume none exists." *Love v. Gannett Co. Inc.*, No. 3:19-cv-296-BJB-RSE, 2021 WL 4352800, at *2 (W.D. Ky. Sept. 24, 2021).

Here, the Settlement resolves highly-contested litigation that has spanned five years, during which the Parties engaged in extensive fact discovery, motion practice, and expert discovery. The Settlement was only reached through the efforts of the Magistrate Judge conducting two judicial settlement conferences and arms'-length negotiations. Foster ¶¶ 9. Accordingly, this factor weighs in favor of approval.

b.    **Complexity, Expense, and Likely Duration of the Litigation**

Similar to *Lott v. Louisville Metro Gov't*, "[t]his matter has been pending [for more than four years], and it may be years before the case goes to trial. The Parties have already spent considerable time and expense on this case. If forced to litigate this case further, the Parties would continue to engage in costly litigation and motion practice." No. 3:19-cv-271-RGJ, 2023 WL 2562407, at *5 (W.D. Ky. Mar. 17, 2023). *See also, e.g., Southard v. Newcomb Oil Co., LLC*, No. 3:21-cv-607-DJH-CHL, 2024 WL 4263639, at *2 (W.D. Ky. Sept. 23, 2024) ("This case has been litigated for nearly six years, with discovery throughout, and counsel on both sides have extensive experience in similar cases.") (citing *Does 1-2*, 925 F.3d at 899). Moreover, the Agreement here conserves judicial resources by resolving the claims of many employees. *Accord*

*Does 1-2*, 925 F.3d at 898 (approving settlement of consolidated lawsuits). This factor is satisfied.

### c.    Amount of Discovery Engaged in by the Parties

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure "counsel had an adequate appreciation of the merits of the case before negotiating." *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019). Here, the proposed Settlement was reached only after: (1) very substantial discovery and motion practice, including depositions, interrogatories, document review, and data analysis; (2) informal interviews of Plaintiff and Opt-In Plaintiffs; and (3) two separate full-day, in-person judicial settlement conferences, and extensive arms'-length negotiation before and after the conferences. Foster ¶ 9. Further, the Parties have taken depositions of Plaintiff and Opt-in Plaintiffs, and Plaintiff has taken a deposition of Defendant's main customer's logistics representative in a related action. *Id.* The Parties have produced tens of thousands of pages of documents and appeared for court hearings many times. *Id*. This factor is satisfied.

### d.    Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co.*, 636 F.3d at 235 (*quoting In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Courts have held that they "cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754–55 (6th Cir. 2013) (quoting *Int'l Union, United Auto.*, 497 F.3d at 631).

While Plaintiff continues to believe in the strength of his claims, Defendants assert numerous defenses that present risk as they could possibly defeat Plaintiff's ability to obtain or

sustain any judgment, let alone a judgment on a class basis. For example, Defendants dispute that drivers were entitled to overtime compensation at all (Defendants contend the drivers are exempt under the Motor Carriers Act exemption). Foster ¶¶ 7, 27. The Settlement avoids the risks to establishing liability and recovering damages, and provides an immediate, certain, and meaningful cash recovery of alleged unpaid wages and overtime, which is not only a strong result in itself but especially in view of the defenses at issue. This Settlement was vigorously negotiated based on substantial investigation by Class Counsel, and the analysis of documents produced by Defendants in preparation for mediation. *Id.* ¶ 9. Moreover, "[r]ather than facing the prospect of costly litigation and no recovery, the class members in this case will instead 'obtain the immediate and certain benefit of a cash settlement.'" *Thompson v. Seagle Pizza, Inc.*, No. 3:20-cv-16-DJH-RSE, 2022 WL 1431084, at *7 (W.D. Ky. May 5, 2022) (citation omitted). This factor is satisfied.

e.    **Opinions of Class Counsel and Settlement Class Representative**

The Settlement reflects what Class Counsel believe to be a fair and reasonable settlement of disputed claims given the risks that Plaintiff would face if the case proceeded in litigation. Foster ¶¶ 6, 27, 38; *see also* DN 246-1 (declaration of Class Counsel). The Agreement affords the Settlement Class Members with "significant and meaningful financial benefits." Foster ¶¶ 11, 18, 28; *Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960, 968 (E.D. Mich. 2021).[13] Moreover, Plaintiff has indicated his support, including by signing the Settlement Agreement. Foster ¶ 35; *see also* DN 246-3 (declaration of Plaintiff). This factor is also satisfied.

---

[13]    "[T]he value of the benefit to class members is significant, considering "that success [on the merits] is not guaranteed." *Southard*, 2024 WL 4263639, at *4. As often observed, "the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "'[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *UAW v. Gen. Motors Corp.*, No. 05-cv-73991-DT, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)). Here, the cash recovery will be certain, immediate, and meaningful.

**f.**      **Reaction of Absent Settlement Class Members**

Here, there are no objections to the Settlement Agreement and no requests for exclusion out of seventy-five (75) Class Members, which bolsters the Settlement's adequacy. "[T]he fact that not one class member objected to the settlement agreement .... weighs heavily in favor of final approval." *Southard*, 2024 WL 4263639, at *5 (quoting *Ditsworth v. P & Z Carolina Pizza*, No. 1:20-cv-00084-GNS, 2021 WL 2941985, at *4 (W.D. Ky. July 13, 2021)). *Accord In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2018 WL 7108016, at *6 (E.D. Mich. Nov. 6, 2018) ("There were no objections to any of the Settlements and few opt-outs. This is remarkable because there are often at least a few objections to class settlements.").[14] This factor is also satisfied.

**g.**      **Public Interest**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Id.* (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). Here, the Settlement will fairly resolve protracted litigation and avoid uncertainties and risks of continued litigation. The Settlement provides members with substantial recovery for unpaid wages and overtime they may have otherwise been unable to recover. All Settlement Class Members who did not opt out will receive a Settlement Payment. S.A. ¶ 28. The amount each Settlement Class Member would receive was included on a list attached to the notice sent to Settlement Class Members, DN 242-1 at Page ID # 4541-4542, Foster ¶ 17, and no Settlement

---

[14]      Also, the Notice in this case was adequate under Fed. R. Civ. P. 23 and the standards of due process. "It was directed in a reasonable manner to all prospective class members who would be bound by the Settlement Agreement. Moreover, it fairly apprised the prospective class members of the terms of the proposed Settlement Agreement and their options with respect to their decision whether to join the class." *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 293 (W.D. Ky. 2014).

Class Member opted out or objected following the sending of the notice. Foster ¶ 21.

For all these reasons, the Settlement should be approved as 'fair, reasonable, and adequate.'" *In re Amazon.com*, 2024 WL 5362024, at *8.

### D.    The Rule 23 Settlement Class Should Be Certified

Rule 23(a) imposes requirements of "numerosity, commonality, typicality, and adequacy of representation." *Elliott*, 2019 WL 4007219, at *3. Together with the Rule 23(a) prerequisites, the moving parties "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." *Id.* Here, each requisite is readily satisfied for purposes of settlement approval.

#### 1.    Numerosity Is Satisfied

The first requirement for certification is that the members of the proposed classes are so numerous that joinder is impracticable. FED. R. CIV. P. 23(a)(1). Although the Rule provides no firm number, the Sixth Circuit has found that a class of 35 was sufficient to meet the numerosity requirement. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) (citing *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir. 1974)). Here, the Settlement Class of seventy-five (75) workers easily satisfies numerosity for purposes of settlement approval.

#### 2.    Commonality Is Satisfied

The second Rule 23(a) prerequisite is that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "'Although Rule 23(a)(2) speaks of 'questions' in the plural ... there need only be one question common to the class.'" *Elliott*, 2019 WL 4007219, at *3 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). *Accord Estes v. Willis & Brock Foods, Inc.*, No. 6:18-cv-00197-GFVT, 2022 WL 697976, at *5 (E.D. Ky. Mar. 8, 2022) ("The class's claims share commonality because they suffered the same injury[.]").

Here, there are numerous issues of fact and law that are common among the members of the Settlement Class. For example, Plaintiff alleged Defendants utilized a uniform practice of

failing to pay compensation based on a common classification of all drivers as exempt. Plaintiff further alleged that Defendant Dallas Jones Enterprises, Inc.'s own characterization of itself and the drivers in filings with the Federal Motor Carrier Safety Administration as "intrastate only" is both binding on Defendant and common proof of the non-applicability of the Motor Carriers Act exemption. Drivers drove coal for Defendant's main customer, a large coal mine, and factual issues relating to the ultimate destination of that customer's coal (as being either inside or outside Kentucky) would have been litigated by the parties and applicable to all of the drivers who drove for that customer. These common questions of law and fact apply uniformly to all class members and satisfy the commonality requirement for purposes of settlement approval. *See*, *e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 460 (2016); *Morris v. US Foods, Inc.*, No. 8:20-cv-105-SDM-CPT, 2021 WL 2954741, at *5 (M.D. Fla. May 17, 2021), *report and recommendation adopted*, 2021 WL 6125575 (M.D. Fla. July 14, 2021) (commonality existed where all employees spent time donning and doffing safety equipment even though amount of time each employee took differed).

### 3.    Typicality Is Satisfied

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "'A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Elliott*, 2019 WL 4007219, at *4 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). "'[F]or the district court to conclude that the typicality requirement is satisfied, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.'" *Id.* (citation omitted). Here, Plaintiff's claims and those of the Settlement Class all arise out of the same alleged policies and course of conduct of Defendants. As such, the typicality requirement is satisfied for purposes of settlement

17

approval.

### 4.    Adequacy Is Satisfied

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "'There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Elliott*, 2019 WL 4007219, at *4 (citation omitted). Here, the damages in unpaid wages and overtime alleged by the Plaintiff are "substantially the same as the injuries accruing" to the Settlement Class. *Id.* As such, Plaintiff shares "common interests" with the unnamed members and has no identified conflicts with the settlement class. *Id.*; *see also* Foster ¶ 36. Plaintiff is wholly adequate to serve as the Settlement Class Representative.

Under the second prong of Rule 23(a)(4), the Court must also look to the adequacy of the representative plaintiff's representation "to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Elliott*, 2019 WL 4007219, at *4 (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)). Here, proposed Class Counsel is experienced and has successfully acted as representative counsel in numerous wage and hour collective and class actions.[15] DN 246-2 at ¶¶ 4-7. Class Counsel's independent investigation and analysis of this case, zealous prosecution of the claims asserted, good faith participation in the ADR process, and achievement of the Settlement is wholly indicative of adequacy to serve. Foster ¶ 26; DN 246-2 at ¶¶ 4-7. Class Counsel have demonstrated the ability and dedication to serve the

---

[15]    Class Counsel is defined as Law Office of Mark N. Foster, PLLC. S.A. ¶ 12(D). *See* Foster ¶ 2.

interests of the Settlement Class, throughout this litigation.

As shown above, the adequacy requirement is satisfied for purposes of settlement approval.

### 5.    Predominance and Superiority Are Satisfied

After satisfying Rule 23(a), a class action may be maintained if 'the court finds that questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The predominance requirement "parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *Elliott*, 2019 WL 4007219, at *5 (citation omitted). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *Id.* (citation omitted). "Common questions need only predominate: they need not be dispositive of the litigation." *Id.*

Here, for purposes of settlement approval, and based on the Plaintiff's allegations of Defendants' common practices and management, common questions of law and fact predominate over any potential individual issues. As Plaintiff contends, common proof would be offered at trial to demonstrate that Defendants' alleged common course of conduct and the common damages that were suffered by the truck drivers affected. Plaintiff further contends that those damages can be measured on a class basis using objective data, including Defendants' own testimony and records.[16]

---

[16]    Defendants have and continue to vehemently deny any wrongdoing or that Plaintiff is owed any unpaid wages or overtime, and if litigation were to continue Defendants would challenge not only the merits of Plaintiff's claims but also the certification of any class or collective, among other things.

Class treatment of Plaintiff's claims is the superior method for fairly and efficiently adjudicating the controversy, particularly where "the amount of damages incurred by individual class members likely cannot justify pursuing individual actions, making a class action a valuable tool for all class members." *Elliott*, 2019 WL 4007219, at *6 (citing *Pfaff v. Whole Foods Mkt. Grp. Inc.*, No. 1:09-cv-02954, 2010 WL 3834240, at *7 (N.D. Ohio Sept. 29, 2010) ("[T]he most compelling rationale for finding superiority in a class action is the existence of a 'negative value suit,' ... [where] costs of enforcement in an individual action would exceed the expected individual recovery.")). As such, the predominance and superiority requirements are satisfied. Accordingly, as demonstrated above, the requirements of Rule 23 certification are met for purposes of settlement approval.

## V.    THE COURT SHOULD APPOINT CLASS COUNSEL

"[A] court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g). "In making that determination, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Elliott*, 2019 WL 4007219, at *6 (citing FED. R. CIV. P. 23(g)(a)).

Here, Plaintiff's Counsel has worked over the past five years to develop, discover, litigate, and ultimately settle the claims of the Plaintiff and the drivers he seeks to represent. Foster ¶ 9, DN 246-2 (detailing the work of Plaintiff's Counsel). In undertaking this representation, Plaintiff's Counsel has expended in excess of five hundred (500) hours of attorney time. DN 246-2. To date, Plaintiff's Counsel has received no compensation for professional time, nor reimbursement of any actual out-of-pocket litigation expenses. *Id*. In addition, Plaintiff's Counsel is experienced in wage and hour class actions. DN 246-2 at ¶¶ 4-7. Respectfully, the undersigned Plaintiff's Counsel

should be appointed to serve as Class Counsel.

## VI.    THE COURT SHOULD APPOINT PLAINTIFF TO SERVE AS SETTLEMENT CLASS REPRESENTATIVE

In appointing class representatives, a court should ensure that the proposed representatives "will adequately represent that class." *Davis v. Omnicare, Inc.*, No. 5:18-cv-142-REW, 2021 WL 1214501, at *7 (E.D. Ky. Mar. 30, 2021) (citing *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013)). Here, Plaintiff is proposed to serve as the Settlement Class Representative.

Plaintiff contributed personally to the vigorous prosecution and ultimate successful resolution of this hard-fought wage and hour litigation. Throughout the litigation, Plaintiff worked with Class Counsel to: prepare complaints and amended pleadings; actively participate in an extensive discovery process which included searching for and producing documents, responding to discovery requests, preparing for deposition, and attending deposition; consulting with counsel throughout this litigation; and reviewing and approving the global settlement that was only reached after two separate judicial settlement conferences before the Magistrate Judge. Plaintiff's efforts and very substantial time contributions are documented in his sworn declaration submitted in support of Plaintiff's Motion for Attorneys' Fees, Litigation Expenses, and Service Award (DN 246-3; see also DN 246-2 at ¶ 15).

Indeed, Plaintiff has demonstrated his commitment to pursuit of this litigation and the collective interests of the Settlement Class. His efforts have been critical, and his commitment to see this litigation through on behalf of his fellow truck drivers has been unwavering. Foster ¶ 37. Without his efforts, this litigation would not exist nor would the excellent result for the Settlement Class have been achieved. *Id*. Accordingly, Plaintiff should be appointed as the Settlement Class Representative for purposes of settlement approval.

## VII.    THE PROPOSED DISTRIBUTION OF UNCASHED CHECKS SHOULD BE APPROVED

The Parties have agreed, subject to the Court's approval in the Final Approval Order, that any funds remaining as a result of uncashed checks will be sent to the Kentucky State Treasurer, Unclaimed Property Fund. S.A. ¶ 34.  This is intended to mirror the process that would occur under state law for uncashed paychecks, and to provide Settlement Class Members a process to attempt to retrieve funds, if they do not timely cash their checks, while also removing any incentive for Defendant to benefit from a Settlement Class Member not cashing his or her check. The Parties included information regarding this proposed distribution in the notice of Settlement (DN 244-1 at 4), and there are no objections to this proposed distribution mechanism.

Settlement checks will be valid and negotiable for a period of ninety (90) days from the date of their issuance. S.A. ¶ 12(A). Only after the Acceptance Period plus sixty (60) days has expired will uncashed checks be paid to the Kentucky State Treasurer, Unclaimed Property Fund. S.A. ¶ 12(A), 34.

## VIII.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant the Motion for Final Approval and enter the proposed Final Approval Order. In this regard, and without limiting the requested relief specifically set forth in this Motion and the proposed Final Approval Order, Plaintiff respectfully requests the Court enter the Final Approval Order, including approving the Settlement Agreement and certifying the Settlement Class for purposes of settlement pursuant Rule 23; retain jurisdiction over the administration, consummation, and enforcement of the Settlement Agreement; and thereafter, following the parties' Notice regarding the conclusion of the Acceptance Period and the parties' voluntary dismissal with prejudice of alleged FLSA claims pursuant to Fed. R. Civ. P. 41, dismiss this case with prejudice.

Respectfully submitted,


/s/Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
Tel.: (270) 213-1303
Mfoster@MarkNFoster.com
*Attorney for Plaintiff, the Collective,
and the Proposed Class*[17]


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on the date indicated on the Court's electronic filing receipt.

/s/Mark N. Foster

---

[17]   Plaintiff files the Motion on October 13, 2025 to comply with the Court's Preliminary Approval Order, which called for a motion for final approval to be filed ten days prior to the scheduled October 23, 2025 fairness hearing. DN 245. Defendants have requested two additional days' time to review and file the proposed Joint Motion for Final Approval, the draft of which tracked the Motion except that it was to be filed by the parties, instead of by Plaintiff. Plaintiff intends to join in filing a joint motion with Defendants as soon as possible, but files this motion on October 13, 2025 in an abundance of caution to ensure that any class member or other person reviewing the Preliminary Approval Order (DN 245) and the filing on CM/ECF would not be confused or misled by the absence of a motion for final approval filed by October 13, 2025.