## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| JOHNNY McCLURG,<br>on Behalf of Himself and All<br>Others Similarly-Situated,<br><br>　　　*Plaintiff,*<br><br>v.<br><br>DALLAS JONES ENTERPRISES<br>INC, d/b/a CLAY'S TRUCKING,<br>DANA PORTER, BROCK PORTER,<br>And ALFREDA JONES (as Executrix<br>Of the Estate of Dallas Jones)<br><br>　　　*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.　　4:20-CV-201-RGJ-HBB<br><br>**JURY DEMANDED** |

### DECLARATION OF MARK N. FOSTER IN SUPPORT OF
### MOTION FOR FINAL APPROVAL OF CLASS ACTION
### SETTLEMENT PURSUANT TO FED. R. CIV. P. 23

I, Mark N. Foster, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.　　I am over eighteen (18) years of age and am competent to make this Declaration and testify to the matters stated herein.

2.　　I practice law at Law Office of Mark N. Foster, PLLC in Madisonville, Kentucky.

3.　　Law Office of Mark N. Foster, PLLC serves as Plaintiff's Counsel in this litigation, and has since it was filed.

4.　　I submit this Declaration in support of the Motion for Final Approval of Class Action Settlement Pursuant to Fed. R. Civ. P. 23, filed concurrently herewith.

5.　　My firm has an extensive background in complex commercial litigation, including

class and collective actions under the federal and state wage laws. I provided a declaration regarding that experience in connection with the fee motion filed in this action (DN 246-2). My experience and that of my firm enabled us to undertake this matter, and to efficiently and successfully prosecute the claims on behalf of the Settlement Class.

6.     I am familiar with the legal and factual arguments asserted by Defendants in this Action, some of which would pose substantial obstacles were the litigation to continue. I believe that the non-reversionary cash recovery provided by the Settlement Agreement is not only fair, reasonable, and adequate, but is an excellent result in the circumstances.

## FACTUAL AND PROCEDURAL HISTORY

7.     Defendant Dallas Jones Enterprises, Inc. has been in business in the trucking industry, including the transportation of coal. The other Defendants are its owners. Plaintiff and the Settlement Class Members were truck drivers who worked for Defendant Dallas Jones Enterprises, Inc. Plaintiff alleges that Defendants are joint employers and violated wage and hour laws when they failed to pay overtime compensation to the Settlement Class Members. Defendants deny Plaintiff's allegations and contend that Plaintiff and the Settlement Class Members were exempt under the Motor Carriers Act exemption to the Fair Labor Standards Act and Kentucky Wages and Hours Act.

8.     Plaintiff filed this action on December 7, 2020.

9.     The proposed Settlement was reached only after very substantial discovery and motion practice, including depositions, interrogatories, extensive document review and data analysis, informal interviews of Plaintiff and Opt-Ins, and the depositions of Plaintiff and three Opt-In Plaintiffs. The Parties have produced tens of thousands of pages of documents, filed over 200 documents in CM/ECF, and appeared numerous times remotely and in person for

court hearings. In addition, Plaintiff's counsel participated in the deposition of a key third party witness in *Back v. Ray Jones Trucking, Inc.*, case 4:22-cv-5 and assessed its applicability in this matter. *See* Ct. Doc. 216-8, 222-2. Further, the Settlement was only reached through the efforts of the Magistrate Judge conducting, not one but two full day settlement conferences, throughout which the parties engaged in arm's-length negotiations.

10. The Parties filed their initial motion for settlement approval on August 1, 2024 (DN 235). Thereafter, following the Court's Order entered on May 16, 2025 (DN 241), the Parties entered into a revised Settlement Agreement on June 11, 2025 (DN 242-1).

11. The Settlement was achieved by Plaintiff's Counsel after nearly five years of hard-fought litigation, and is a class settlement to resolve the overtime wage claims for seventy-five (75) truck drivers. The Settlement will provide a significant and meaningful cash recovery now and avoid the prospect of years of additional litigation with the uncertainties tied to continued litigation, including the very real risk that continued litigation might result in no recovery at all.

12. On June 12, 2025, the Parties filed a Joint Motion for Preliminary Approval of Class Action Settlement (DN 242). On June 26, 2025, the Court held an in-person hearing on the Motion, and on June 27, 2025, the Court issued an Order (DN 243) directing the Parties to file a revised Notice of Class Action Settlement. On July 2, 2025, the Parties filed a revised Notice of Class Action Settlement (DN 244-1).

13. On July 10, 2025, the Court entered an Order granting the motion (DN 245) ("Preliminary Approval Order"). In addition to granting preliminary approval of the Settlement pursuant to Fed. R. Civ. P. 23, the Preliminary Approval Order directed that Notice be sent to the members of the Settlement Class. The Court also set the Final Approval Hearing for October 23, 2025. The deadline for Class Members to submit a Request for Exclusion from the Class

Settlement or to Object to the Class Settlement was September 13, 2025, and this date was stated on the Notice. I did not receive any inquiries asking whether filings or submissions made through September 15, 2025 would be considered timely (since September 13, 2025 was a Saturday).

### *The Settlement Class*

14.     The Settlement includes the non-reversionary Gross Settlement Amount of $480,000.00 for the Settlement Class. S.A. ¶ 12(J). The Parties reached a settlement on behalf of the Settlement Class, which includes the Named Plaintiff, Opt-In Plaintiffs, and all individuals who worked all individuals who worked for one or more of the Defendants as a truck drivers for any period of time from December 7, 2015 to June 27, 2024. ¶ 12(Y).[1] Defendants have identified seventy-five (75) Settlement Class Members.

### *Gross Settlement Amount and Release of Claims*

15.     The Gross Settlement Amount will cover, subject to the Court's approval: (a) Settlement Payments to Settlement Class Members who did not opt out; (b) Class Counsel's attorneys' fees of up to one-third of the Gross Settlement Amount, to compensate Class Counsel for all work performed in this action to date, plus all work remaining to be performed, including documenting the Settlement, securing Court approval, ensuring the Settlement is fairly administered and implemented, and obtaining final approval and dismissal; (c) reimbursement of Class Counsel's reasonable out-of-pocket costs not to exceed $2,000; and (d) a service award of $15,000 to Named Plaintiff for his service to the Settlement Class in bringing and prosecuting this action. S.A. ¶¶ 12(B), 12(J), 35-36. The Gross Settlement Amount excludes Employer Payroll Taxes, to be paid by Defendants *in addition to the Gross Settlement Amount*, thus increasing the Settlement's total value. S.A. ¶ 30.

---

[1]     This time period is referred to herein as the "Applicable Class Period."

16.     After attorneys' fees and costs and service awards, as approved by the Court, are subtracted from the Gross Settlement Amount, the remainder ("Net Settlement Amount") will be distributed to Settlement Class Members who do not opt out. S.A. ¶ 28. The amounts distributed shall be calculated pursuant to an objective formula based on tenure (*i.e.*, workweeks) during the Applicable Class Period. The formula takes into account whether each Settlement Class Member was an Opt-In Plaintiff, and whether he or she worked in each of three time periods for which different point weighting was assigned based on different facts developed through discovery relating to such periods.  *Id.* The total number of settlement points for all Settlement Class Members will be added together, and the resulting sum will be divided into the Net Settlement Amount to reach a per-point dollar figure. That figure will then be multiplied by each Settlement Class Member's number of settlement points to determine the Settlement Class Member's Settlement Award.

17.     If the Settlement is approved, the average payment to a Settlement Class Member is approximately $4,040.00. The exact amount each Settlement Class Member would receive from the net settlement, if the Court approves the fee, expense, and named plaintiff award provided for in the settlement and sought, was provided to each Settlement Class Member in a list attached to the Notice.  The amounts vary, based on the application of the objective formula, from $35.12 to $13,396.23.

18.     The results obtained represent a significant, certain, and immediate benefit in the face of the many legal and factual risks posed by litigation. There is no claims process, and a Settlement Class Member need not take any action in order to receive a Settlement Award. Significantly, none of the funds from the Gross Settlement Amount will revert to Defendants. S.A. ¶¶ 17(J), 28, 34.

19.     In exchange for their Settlement Payments, the Named Plaintiff, Opt-In Plaintiffs, and Settlement Class Members will release only wage and hour claims through June 27, 2024, including:

> any and all known and unknown, asserted and non-asserted, wage and hour claims under federal and state law, including but not limited to, all unpaid overtime claims based upon the allegations made in the Lawsuit of not being paid overtime premium compensation for overtime work performed hours worked, including overtime compensation, claims of off the clock work, and claims under any theories for breach of an employment agreement/contract for failure to pay owed wages (including wage payment and collection law or similar claims), and including, without limitation, liquidated damages and all other penalties available; this release is for all such claims accruing from the beginning of time until June 27, 2024. This release includes a release of any and all federal and state law wage and hour claims described above, timing of wage payment, gap time, and unjust enrichment or similar claims that could have been brought by any Settlement Class Member based upon the facts and circumstances alleged in the Lawsuit.

S.A. at ¶ 38.

20.     In accord with the the Parties' Settlement Agreement (S.A. ¶¶ 17(S), 21), Plaintiff's Counsel was directed to provide Notice to the Settlement Class. DN 245. On July 30, 2025, my firm mailed the Class Notice to the seventy-five (75) Class Members.

21.     As of September 13, 2025, the deadline for objections and exclusions, my firm had received **zero** Requests for Exclusion from the Settlement, and had received **zero** Objections to the Settlement. To be clear, no exclusions or objections have been received after the deadline, either. I am not aware of any Settlement Class Member who seeks to exclude themselves or object to the Settlement.

### *Notice of Settlement*

22.     The direct dissemination of the Notice included mailing by U.S. First Class Mail the notice to each of the Settlement Class members. S.A. ¶ 21. Defendants indicated that Defendants did not have email addresses, so the Notice was not sent by email. Settlement Class

Members had until September 13, 2025, forty-five calendar days from the date the Notices were initially mailed by Plaintiff's Counsel, to object or opt-out of the Settlement. S.A. ¶ 12(O).

### *Distribution of Settlement Payments*

23.     Settlement Payments will be negotiable for 90 days from the date of issuance ("Acceptance Period"). S.A. ¶ 32. Within thirty days after the Effective Date, Class Counsel will distribute all Settlement Checks with an accompanying letter in the form attached as Exhibit C to the Agreement explaining that checks must be cashed during the Acceptance Period. *Id.* During the last twenty days of the Acceptance Period, Class Counsel will mail (and, if possible, email) reminders in the form attached as Exhibit D to the Agreement, to those who have not yet cashed or deposited their Settlement Check. *Id*. During the Acceptance Period, Defendant has the authority to and will stop payment on a lost check and issue a new check. *Id.*

24.     If at the conclusion of the Acceptance Period (plus sixty days) there are any monies remaining from the Net Settlement Amount as a result of uncashed Settlement Checks, those funds will be distributed to the Kentucky State Treasurer, Unclaimed Property Fund, subject to approval by the Court in its Final Approval Order. S.A. ¶ 34. Also following the Acceptance Period, the Parties will file a joint Notice, notifying the Court that the Acceptance Period has concluded. *Id.* ¶ 33. Once the Notice is filed and following the parties' Rule 41 dismissal of certain claims, the Court will dismiss the case with prejudice. *Id*.

### *No Other Agreements*

25.     Federal Rule 23(e)(3) requires parties to identify any other agreements. The parties have not entered into any other agreement other than the Settlement Agreement (and the predecessor Settlement Agreement which it superseded).

## PLAINTIFF'S COUNSEL'S DUE DILIGENCE AND RECOMMENDATION

26.     I believe that Class Counsel's independent investigation and analysis of this case, zealous prosecution of the claims asserted, good faith participation in the ADR process, and achievement of the Settlement is wholly indicative of adequacy to serve as Class Counsel on behalf of the Settlement Class.

27.     I believe that the Settlement is in the best interests of the Settlement Class, and that the relief provided is fair, reasonable, and adequate, especially when considering the costs, risks, and delay in continued litigation. While Plaintiff continues to believe in the strength of his claims, Defendants have and would continue to assert viable defenses that could defeat Plaintiff's ability to obtain or sustain any judgment, let alone a judgment on a class basis. Among others, Defendants dispute that drivers were entitled to overtime at all, as Defendants contend the Motor Carriers Act exemption applied to all drivers at all times. The Settlement avoids the multitude of risks to establishing liability and recovering damages, and provides an immediate, certain, and meaningful cash recovery of unpaid wages and overtime, which is not only a strong result in itself but especially in view of the defenses at issue. This Settlement was carefully negotiated based on a substantial investigation by Class Counsel, and the review and analysis of documents produced by Defendants in preparation for mediation.

28.     The Settlement Agreement affords the Settlement Class Members with significant and meaningful financial benefits.

29.     The allocation for the Settlement proceeds treats class members equitably relative to each other, pursuant to a common formula based on their applicable workweeks and claims. S.A. ¶ 28.

30.     The proposed formula takes into account the strengths of various claims asserted,

including: (a) the risk of Rule 23 class certification not being granted; (b) the risk of the Court not permitting the matter to proceed as an FLSA collective certification; and (c) differences in facts based on Defendant's customer (a coal mine) selling coal to different customers in different locations during different time periods. S.A. ¶ 28. *See also* DN 242-3, Preliminary Approval Brief at 14-16. Here, there were relevant differences in the strength of the various claims asserted that were properly accounted for in the settlement distribution formula above. For example, the filing of a complaint does not toll the statute of limitations for the FLSA claims of potential opt-ins. Accordingly, class members who filed consents have asserted an additional claim beyond the claims held by class members who did not file consents, who may have allowed their FLSA claim to become time-barred. Further, the formula's different time periods took into account significant facts the parties had explored in discovery and intended to assert had significance at trial, including Defendant's assertion that transportation of coal through January 30, 2020 by driver for Defendant's main customer, with an ultimate destination out-of-state, supported the applicability of the Motor Carrier's Act exemption, and Plaintiff's assertion that Defendant's own designation of itself and its drivers as "intrastate only" prior to May 5, 2022 supported the non-applicability of that exemption.

31.    Also, by signing their respective consent forms, each Opt-In Plaintiff participated in the case, was available and required to submit to deposition testimony or respond to written discovery and assert their own claim, and was not a mere passive observer or absent class member. They thereby bound themselves to the determination and disposition of this action, including settlement.

32.    In the event this action had not settled, Defendants were prepared to move for decertification. If decertification was granted in this action, Opt-In Plaintiffs would have risked

dismissal of any FLSA claims but (unlike class members who allowed their FLSA claim to become time-barred) potentially had the opportunity to file and prosecute individual FLSA actions, including in federal court, if they wished to continue to litigate such claims.

33.    Discovery in this action was also extensive.  This Court permitted individualized discovery as to all opt-in plaintiffs [DN 164]. All Opt-In Plaintiffs were subjected to written discovery. All of the depositions taken in this action were of the Named Plaintiff and Opt-In Plaintiffs.

34.    I believe the allocations in the Agreement are reasonable, in light of the legal and factual considerations.

35.    Plaintiff has indicated his support for the Settlement, including by signing the Settlement Agreement.

36.    Plaintiff is wholly adequate to serve as the Settlement Class Representative as he shares common interests with the unnamed members and has no identified conflicts with the Settlement Class. The damages in unpaid wages and overtime alleged by the Plaintiff are substantially the same as the injuries accruing to the Settlement Class.

37.    Throughout the litigation of this matter, Plaintiff has demonstrated his commitment to this pursuit of this litigation and the collective interests of the Settlement Class. His assistance has been invaluable in pursuing and achieving the Settlement. The specific efforts and very substantial time contributions are documented in the sworn declaration by Plaintiff that were submitted in support of Plaintiff's Motion for Attorneys' Fees, Litigation Expenses, and Service Award (DN 246-3). I whole-heartedly support the appointment of the Named Plaintiff to serve as representative for the Settlement Class.

## CONCLUSION

38.     I believe that the Settlement is in the best interests of the Settlement Class, and that the relief provided is fair, reasonable, and adequate, especially when considering the costs, risks, and delay in continued litigation. While Plaintiff continues to believe in the strength of his claims, Defendants have and would continue to assert viable defenses that could defeat Plaintiff's ability to obtain or sustain any judgment, let alone a judgment on a class basis. Among others, Defendants dispute that truck drivers were entitled to overtime compensation at all (Defendants contend the drivers are exempt under the Motor Carrier's Act exemption), and assert the drivers are not similarly-situated in any event (except for purposes of the Settlement proposed here). The Settlement avoids the multitude of risks to establishing liability and recovering damages, and provides an immediate, certain, and meaningful cash recovery of unpaid wages and overtime, which is not only a strong result in itself but especially in view of the defenses at issue. This Settlement was carefully negotiated based on a substantial investigation by Class Counsel, and the review and analysis of documents produced by Defendants.

Dated this 13th day of October, 2025.

/s/ Mark N. Foster
Mark N. Foster